QUINN EMANUEL URQUHART & SULLIVAN, LLP
David A. Perlson (Ca. Bar No. 209502)
davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David A. Nelson (Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
191 N. Wacker Drive Suite 2700
Chicago, IL 60606
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401

Attorneys for Defendant,
GOOGLE LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPACT ENGINE, INC., | CASE NO. 19-CV-1301-CAB-DEB |
| Plaintiff, | **GOOGLE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RENEWED MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| vs. | |
| GOOGLE LLC, | Hearing Date: August 6, 2021 |
| Defendant. | Hon. Bencivengo, Courtroom: 1510 |
| | PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARTELY ORDERED BY THE COURT |
| | Complaint Filed: July 15, 2019 Trial Date: None Set |

# **TABLE OF CONTENTS**

**Page**

FACTUAL BACKGROUND.........................................................................................2

I.     THE ASSERTED PATENTS ...........................................................................2

II.    AT IMPACT ENGINE'S URGING, THE COURT FINDS THE CLAIMED COMPONENTS ARE KNOWN TO THOSE IN THE ART ..................................................................................................................4

LEGAL STANDARD ..................................................................................................6

    A.     Dismissal under Rule 12(c)....................................................................6

    B.     Ineligible subject matter under 35 U.S.C. § 101 ...................................6

ARGUMENT ...............................................................................................................7

I.     THE CLAIMS AT ISSUE IN THIS MOTION ARE SUBSTANTIALLY SIMILAR.........................................................................7

II.    THE PATENT CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA...............................................................................................................8

    A.     The plain language of the patents shows that they are directed to an abstract idea........................................................................8

    B.     Courts have found similar claims to be directed to abstract ideas.......................................................................................................13

    C.     Impact Engine's Step 1 Arguments Are Without Merit. ......................15

III.   THE CLAIMS AT ISSUE LACK AN INVENTIVE CONCEPT..................19

    A.     Generic Components Cannot Provide an Inventive Concept. ..............19

    B.     Impact Engine's Step 2 Arguments Are Without Merit. ......................24

## <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>Cases</u>

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) ..................................................13, 14

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ..............................................................2

*Aftechmobile Inc. v. Salesforce.com, Inc.*,
  1. No. 19-CV-05903-JST, 2020 WL 6129139 (N.D. Cal. Sept. 2,
  2020) ................................................................................................17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ...................................................................*passim*

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015) ..........................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................6

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012) ..........................................................25

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................6

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ..............................................................................19

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) ............................................7, 8, 14, 25

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ........................................................9, 16

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ............................................................12

*Clear with Computers, LLC v. Altec Indus., Inc.*,
  Nos. 6:14-cv-79 & 6:14-cv-89, 2015 WL 993392 (E.D. Tex. Mar. 3,
  2015),
  *aff'd*, 636 F. App'x 1015 (Fed. Cir. 2016) ..........................................13, 18

*Customedia Techs., LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020) ................................9, 17, 21, 23, 24, 25

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ..............................................................................18

*Elec. Power Grp., LLC v. Alstom S.A.*,
 830 F.3d 1350 (Fed. Cir. 2016)................................................22, 23

*Fast 101 Pty Ltd. V. CitiGroup Inc.*,
 834 F. App'x 591 (Fed. Cir. 2020)..........................................24

*Glasswall Sols. Ltd v. Clearswift Ltd.*,
 754 F. App'x 996 (Fed. Cir. 2018)..........................................23

*GREE, Inc. v. Supercell Oy*,
 1. 834 F. App'x 583 (Fed. Cir. 2020).......................................18

*Greenbroz, Inc. v. Laeger Built, LLC*,
 No. 16-cv-02946, 2017 WL 3622308 (S.D. Cal. Aug. 22, 2017)................6

*Hyper Search, LLC v. Facebook, Inc.*,
 No. CV 17-1387-CFC-SRF, 2018 WL 6617143 (D. Del. Dec. 17,
 2018).................................................................9, 17, 21

*In re Morinville*,
 767 F. App'x 964 (Fed. Cir. 2019)..........................................18

*In re TLI Commc'ns LLC Patent Litig.*,
 823 F.3d 607 (Fed. Cir. 2016)........................................9, 16, 21, 25

*Innovation Scis., LLC v. Amazon.com, Inc.*,
 778 F. App'x 859 (Fed. Cir. 2019)..........................................16

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
 792 F.3d 1363 (Fed. Cir. 2015).............................................13

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
 850 F.3d 1315 (Fed. Cir. 2017).............................................23

*Intellectual Ventures I LLC v. Symantec Corp.*,
 838 F.3d 1307 (Fed. Cir. 2016)..........................................12, 19

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
 No. 13-cv-3777, 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015)................18

*Internet Patents Corp. v. Active Network, Inc.*,
 790 F.3d 1343 (Fed. Cir. 2015).............................................12

*Interval Licensing LLC v. AOL, Inc.*,
 896 F.3d 1335 (Fed. Cir. 2018).............................................20

*LendingTree, LLC v. Zillow, Inc.*,
 656 F. App'x 991 (Fed. Cir. 2016)........................................12, 21

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
 566 U.S. 66 (2012) .....................................................6, 7, 19

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
 837 F.3d 1299 (Fed. Cir. 2016).............................................19

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
811 F.3d 1314 (Fed. Cir. 2016)..................................................................21, 25

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015).................................................................10, 23

*OpenTV, Inc. v. Apple, Inc.*,
No. 14-cv-01622, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015).................23

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*,
161 F. Supp. 3d 325 (D. Del. 2015) ...................................................15, 18, 19

*Quantum Stream Inc. v. Charter Commc'ns, Inc.*,
309 F. Supp. 3d 171 (S.D.N.Y. 2018).......................................................15, 23

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)................................................................10, 25

*Simio, LLC v. FlexSim Software Prod., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)................................................................16, 18

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016)................................................................11, 18

*Talent Broker Tech. LLC v. Musical.ly, Inc.*,
No. CV 17-08532, 2018 WL 3019641 (C.D. Cal. May 22, 2018) ..............20

*Uniloc USA, Inc. v. AVG Techs. USA, Inc.*,
No. 16-cv-00393, 2017 WL 1154927 (E.D. Tex. Mar. 28, 2017) ...............20

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
887 F.3d 1376 (Fed. Cir. 2018)........................................................................21

## **Statutory Authorities**

35 U.S.C. § 101..............................................................................................6

## NOTE ON ASSERTED PATENTS AND CITATIONS

1. References to the patents-in-suit are indicated by column and line number, or by claim number. Unless otherwise noted, all references to the specifications are to the '497 patent. A reference to "3:15," therefore, means column 3, line 15 of the '497 patent.

2. The asserted patents are referred to herein as identified below and collectively as the "Asserted Patents". The claims at issue for this motion are in **bolded underline**.

| **Asserted Patents** | **Claims at Issue in the Case[1]** |
|---|---|
| U.S. Patent No. 7,870,497 (the '497 patent) | **1**, 9 |
| U.S. Patent No. 8,356,253 (the '6,253 patent) | 1 |
| U.S. Patent No. 8,930,832 (the '832 patent) | [1], [12], 14, 18 |
| U.S. Patent No. 9,361,632 (the '632 patent) | [1], [2], 4, [20], 21, 25 |
| U.S. Patent No. 10,068,253 (the '8,253 patent) | 1, [6], 7, 12 |
| U.S. Patent No. 10,565,618 (the '618 patent) | **14, 16, [22], 23** |
| U.S. Patent No. 10,572,898 (the '898 patent) | **30** |

3. The Court's Claim Construction Order, Dkt. 148, is referred to as "CC Order."

4. The transcript of the proceedings held on 12/12/19 regarding Google's Motion to Dismiss, Dkt. 42, is referred to as "101 Tr."

5. The slides Impact Engine used at the 12/12/19 proceeding, which were filed as Dkt. 157-3 with Google's prior motion, are referred to as "IE 101 Slides."

---

[1] Bracketed claims are not directly asserted, but remain at issue due to asserted dependent claim(s).

6. The transcript of the claim construction proceedings held on 01/14/2021, Dkt. 147, is referred to as "2nd CC Tr."

7. The transcript of the claim construction proceedings 04/28/2021, attached as Ex. A, is referred to as "3rd CC Tr."

8. The Court's Supplemental Claim Construction Order, Dkt. 205, is referred to as "Supp. CC Order."

In opposing Google's First Motion to Dismiss under 35 U.S.C. § 101 (Dkt. 21), Impact Engine ("IE") argued that the claims' incorporation of a "project builder" constituted both "particular improvements in the functioning of earlier computer-based systems" under *Alice* step 1 and "inventive concepts" under *Alice* step 2. Dkt. 28, 12–13, 22–23. The Court referred to both arguments in denying Google's motion without prejudice, but stated that Google's § 101 motion could be revisited should IE contend that "project builder" is not "limited in any way to the various different limitations that are in the specification." 101 Tr. 31:2–25. IE not only did just that, but it asserted that ***every*** hardware and/or software component Google identified for construction was "a known program construct that would be familiar to one of skill in the art." Dkt. 87-1, 44, 51, 54, 59; Dkt. 87-4, 28, 42, 43, 45–46, 58-59, 70, 83, 85, 86, 87, 93–94. The Court largely agreed. CC Order 6, 9.

In light of these constructions, Google renewed its Motion to Dismiss under Rule 12(c). In opposing Google's motion, IE again touted the project builder as a critical part of its argument, but argued for the first time that the "project viewer" present in the representative claim being considered in that motion was also inventive, contrary to its claim construction position that project viewers were conventional, known software. Dkt. 177, 10, 20. After finding "project viewer" subject to § 112, ¶ 6 and limited to the structure recited in Col. 4:27 through Col. 9:19 in the specification (Supp. CC Order 6), the Court denied Google's Renewed Motion to Dismiss because "Google's motion assumes [] 'project viewer' [] was a known generic program construct." Dkt. 206, 1–2. Accordingly, Google does not bring this motion as to any claims that contain "project viewer," but instead to the balance of the remaining claims: '497 claim 1; '618 claims 14, 16, and 23; and '898 claim 30.[2]

---

[2]   As will be detailed in Google's forthcoming motion for summary judgment of noninfringement, IE's Supplement Final Infringement contentions flout the Court's

The Court has expressly found or IE has conceded that all non-"project viewer" components were conventional tools known to those skilled in the art:



**Project Builder**: "server-side software and hardware" which "would be tools familiar to one of skill." CC Order, 9.

**Compiler**: "commonly understood [] in the computer arts at the time the patent was filed." *Id*. at 6-7.

**Media Repository**: "tool[] familiar to one of skill in the art." *Id*. at 9.

**Distribution Program**: "existed at the time of filing of the application and would be familiar to one of skill in the art." *Id*. at 6.

**Sharing Program**: "a known program construct that would be familiar to one of skill in the art." Dkt. 87-4 at 86.

Such conventional, known components cannot comprise "particular improvements" or "inventive concepts" under *Alice* steps 1 and 2. Indeed, the Court noted that without the "project viewer," the asserted claims have a "101 problem." 3rd CC Tr. 18:4–12; *see also id.* at 14:14–15:10 ("'project viewer' [] is somewhat at the heart of this whole invention"). Google's renewed motion should be granted.

## **FACTUAL BACKGROUND**

## I.   **THE ASSERTED PATENTS**

All Asserted Patents are entitled "Multimedia Communication System and Method," share the same specification, and claim priority to the same provisional application (No. 60/671,170, filed April 13, 2005) as well as to each other. The "Background" of the Asserted Patents states that the purported invention "automates the process of creating and distributing professional quality, media-rich communications" by replacing a process that "is usually contracted out to a

construction of "project viewer" by not even attempting to demonstrate that the accused products contain the required detailed structure in the specification.

GOOGLE'S MPA'S IN SUPPORT OF ITS RENEWED MOTION TO DISMISS

professional graphic designer." 1:12–26. As the Court found, "[t]he systems and methods disclosed [in the Asserted Patents] are intended to replace the 'prior art' practice of contracting a professional graphic design or advertising agency to create works." CC Order 2. Figures 6–16 show a graphical user interface enabling a user to build such computer communications through a series of interview questions. The Court described the components of the patents as follows:

> Broadly the patent describes a system in which a client user interacts with the system components through a **graphical user interface** connected over the Internet. The system includes a **media repository** that stores templates and media assets, such as music, artwork and graphics. The user interacts with the system using a **project builder** component which enables the user to select templates and assets from the repository to create a communication, such as an advertisement. A **project viewer** renders or serializes the selections made by the user to render and playback the communication as configured by the user. The system's **compiler** then integrates the selections into a final communication that is stored in the repository. The system also includes a **sharing program** that enables the communication to be shared and edited by designated users. The system further includes a **distribution program** that formats the communication into one or more formats selected by the user and electronically delivers the formatted communication to the user's selected audience. [Id., Col. 2:65-Col. 3:29, Col. 11:36-Col. 12:37; Figs. 1-5.]

*Id*. (emphasis added). The independent claims at issue in this motion recite various combinations of these same components, with the exclusion of the "project viewer":

- '497 claim 1: reciting "media repository" and "project builder"

- '618 claim 14: reciting a server containing a "media repository," "project builder," "compiler," "formatter," and "distribution program," and "recipient-specific database" for selecting media asset (which IE asserts corresponds to "sharing program" and "distribution program" disclosures, Dkt. 157-4, 47)

- '618 claim 22: reciting a server containing a "media repository," "compiler," "formatter," and "distribution program"

- '898 claim 30: reciting a "media repository," "communication system server," "advertisement generation system" (same as project builder, advertisement builder), "compiling engine," "formatting engine," and "distribution engine"

(same as "distribution program").[3]

The specification states that these components can be implemented using any software or hardware. 12:38–14:9. For example, the patents disclose that "the functional operations described in this specification can be implemented" by "digital electronic circuitry, or in computer software, firmware, or hardware, including the structures disclosed in this specification and their structural equivalents, or in combinations of them." 12:38–43; *see also* 12:63–13:2; Dkt. 21-1, 2–3. In addition, the invention is not limited to any specific "database architectures." 14:26–34.

## II.   AT IMPACT ENGINE'S URGING, THE COURT FINDS THE CLAIMED COMPONENTS ARE KNOWN TO THOSE IN THE ART

In response to Google's previous Motions to Dismiss under § 101, IE argued that the "project builder" recited in the claims was a "novel improvement[]" not directed to an abstract idea and also provided an inventive concept. Dkt. 28, 10–12; Dkt. 177, 10, 20. The Court denied Google's first motion finding the server-based components of the claims, especially the "project builder," rendered the patents non-abstract. 101 Tr. 31:12–25, 32:8–12. The Court also found on the record before it that a "project builder" was "something that was not known necessarily in the art" and thus potentially an inventive step. *Id.* at 30:19–31:1. When Google expressed its belief that IE would construe "project builder" very broadly such that it could not

---

[3]   Given that IE's constructions and arguments as to the unconstrued terms "advertisement generation engine" and "distribution engine" are the same as "project builder" and "distribution program" (Dkt. 87-4, 43, 83), Google proposed that the parties stipulate that the Court's constructions apply to these terms respectively, while preserving Google's ability to appeal these constructions. Ex. B at 3–4. IE refused to stipulate unless Google agreed to unrelated conditions. *Id.* at 1.  But as relevant here, IE did not, and has not, asserted these terms should be construed differently than "project builder" and "distribution program." Nor did IE retract its prior position that "advertisement generation engine" and "distribution engine" were conventional tools known to one in in the art.  Thus, even though these specific terms have not yet been construed, they do not raise any claim construction issues that either have not already been addressed by the Court or precluded by IE's stated positions.

save abstractness or provide an inventive step, the Court responded that Google could bring its motion again should IE do so. *Id*. at 31:6–12.

IE did just that. It asserted that project builder was not limited to the structures in the specification, but instead was "a known program construct that would be familiar to one of skill in the art." Dkt. 87-1, 44. IE further contended that all other identified components in the claims were *also* each "a known program construct that would be familiar to one of skill in the art." Dkt. 87-1, 51–61; Dkt. 87-4, 28–97. The Court largely agreed as follows:

- "**Project builder**" / "**advertisement builder**": construed as "server-side software and hardware that obtains user information, selects appropriate template(s) and asset(s) and obtains user formatting and transmission information," and that *"[s]uch program constructs to provide this function of the system would be tools familiar to one of skill."*

- "**Distribution program**": adopted IE's contention that such programs *"existed at the time of filing of the application and would be familiar to one of skill in the art."*

- "**Compiler**" / "**compiling engine**": construed as "back-end processing of source code into machine or object code," the "commonly understood meaning in the computer arts at the time the patent was filed."

- "**Formatting engine**": adopted IE's contention that such programs *"existed at the time of filing of the application and would be familiar to one of skill in the art."*

CC Order 6–7, 8–9 (emphasis added). The Court also noted that a "**graphical user interface** and [] select[ing] from the **media repository** database appropriate templates and assets would be tools *familiar to one skilled in the art*." *Id*. at 9 (emphasis added). The Court later reaffirmed that "software applications to perform the functions of the Project Builder component would be sufficiently recognized by the functions claimed and were known in the computer industry at the relevant time." Supp. CC Order, 5. Accordingly, *every* component of the claims at issue in this motion have been found by the Court or conceded by IE to be known and/or conventional.

# LEGAL STANDARD

### A.   Dismissal under Rule 12(c)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Stating a plausible claim for relief under Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The court is "not bound to accept as true a legal conclusion couched as a factual allegation," "allegations that contradict exhibits attached to the Complaint[,] or . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Greenbroz, Inc. v. Laeger Built, LLC*, No. 16-cv-02946, 2017 WL 3622308, at *1 (S.D. Cal. Aug. 22, 2017) (Bencivengo, J.) (cleaned up).

### B.   Ineligible subject matter under 35 U.S.C. § 101

To be patent eligible, a patent must claim a "new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Section 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable" because they are "the basic tools of scientific and technological work." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (internal quotation marks and citations omitted).

*Alice* established a two-step test for determining patent eligibility. 134 S. Ct. at 2355. First, the court must "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id.* If so, the Court must proceed to *Alice* step two, where the Court must consider whether the claims include additional elements, *i.e.,* an inventive concept, sufficient to "'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). An inventive concept cannot be supplied by limiting an abstract idea "to a particular technological environment"

or adding "well-understood, routine, conventional activities previously known to the industry." *Id.* at 2358–59 (internal quotation marks omitted). The court is not required to accept "legal conclusions as true, even if couched as factual allegations," such as "repeated characterization of [ ] inventions as 'technical innovations.'" *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 894 (Fed. Cir. 2019). Instead, an inventive concept is "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 566 U.S. at 73).

## ARGUMENT

## I.    THE CLAIMS AT ISSUE IN THIS MOTION ARE SUBSTANTIALLY SIMILAR.

As the Court noted, the patents-in-suit "are variations on a theme." Ex. E, 05/20/2021 Hearing Tr, 4:8–9. The Court observed that the alleged invention is directed toward a system and method that uses a **graphical user interface**, **media repository**, **templates**, **project builder**, **compiler**, **sharing program**, **distribution program**, and in some claims, not at issue in this motion, a project viewer. CC Order 2. For example, claim 14 of the '618 patent recites all of these components except the project viewer:

14. A multimedia communication system for generating an online advertisement in an electronic distribution format to accommodate targeted broadcasting over an Internet based on recipient specific data received from a user of a recipient computing device, the system comprising:

a server having a connection to the Internet to communicate with a user of a recipient computing device via a **graphical user interface** displayed by the recipient computing device, the server comprising:

a recipient specific database for storing qualitative and/or quantitative data received from a user of the recipient computing device;

a **media repository** for storing a plurality of online advertisement **templates** and a plurality of media assets;

a **project builder** for accessing the recipient specific database as well as the media repository, and for selecting a media asset for integration with an

advertisement template, the media asset being selected based on qualitative or quantitative data received from the recipient computing device;

a **compiler** associated with the project builder, the compiler for integrating the selected media asset with the online advertisement template to generate an online advertisement;

a **formatter** for selecting and formatting the online advertisement in an electronic distribution format; and

a **distribution program** for performing the targeted broadcasting of the online advertisement over the Internet to the recipient computing device.

The remaining independent claims at issue recite using some or all of the same components to create communications or advertisements. '497 claim 1 (using a graphical user interface, media repository, template, and project builder); '618 claim 22 (using a server, graphical user interface, media repository, template, compiler, formatter, and distribution program); '898 claim 30 (using a server, media repository, template, advertisement generation engine, compiling engine, formatting engine, and distribution engine). Thus, the Court has found or IE has conceded that all of the components in the non-project viewer claims are known and used in conventional ways. None are patentably distinct.[4]

## II.   THE PATENT CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA.

### A.   The plain language of the patents shows that they are directed to an abstract idea.

In determining whether claims are directed to an abstract idea, a court must look at the "focus of the claims," and "consider the claims in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Bridge & Post,* 778 F. App'x at 886 (cleaned up). Here, the claims subject to this motion are directed to the abstract idea of creating computer communications. The patents specifically state that their claims automate the existing process that professional agencies and designers used to create computer communications using

---

[4]   IE filed terminal disclaimers because the Examiner found each patent was not patentably distinct from *every* patent preceding it. Dkt. 36 Ex. 1, 3; *id.* Ex. 2, 3; *id.* Ex. 3, 3; *id.* Ex. 4, 3; *id.* Ex. 5, 3; *id.* Ex. 6; Ex. C at 26–28; Ex. D at 51.

existing Flash tools. *Supra*, Background; 1:12–26, 1:44–51; IE 101 Slides, 12–17; 2nd CC Tr. 49:1–5 ("It's all about people did all these things. And you're replacing people with software."); 3rd CC Tr. 20:23–21:2 (if "I've just got picking and creating and distributing at a very high level with known program constructs," then "all you're doing is using a computer to replace people"). But "[i]f a claimed invention only performs an abstract idea on a generic computer, the invention is directed to an abstract idea at step one." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018) (citing *Alice*, 134 S. Ct. at 2355–57).  In particular, "patents directed to using templates to collect or generate documents, such as web pages, are abstract ideas." *Hyper Search, LLC v. Facebook, Inc.*, No. CV 17-1387-CFC-SRF, 2018 WL 6617143, at *6 (D. Del. Dec. 17, 2018); 3rd CC Tr. 20:14–16 ("replacing people with computers [] runs into a 101 software program").

Here, at IE's urging, the Court found that the functions in the claims at issue in this motion are performed on generic and known computer systems and tools. The Court construed "project builder" as "server-side software and hardware that obtains user information, selects appropriate template(s) and asset(s) and obtains user formatting and transmission information," and found that "[s]uch program constructs to provide this function of the system would be tools familiar to one of skill." CC Order 9; Supp. CC Order 5. All other components of the claims, such as the distribution engine and the compiler, have likewise been construed or conceded to be generic hardware and software. *Supra*. Since "generic and functional hardware is insufficient to render eligible claims directed to an abstract idea," the non-"project viewer" claims cannot be patent eligible. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (finding a patent fails *Alice* step 1 because "[t]he specification does not describe a new telephone, a new server, or a new physical combination of the two. The specification fails to provide any technical details for the tangible components, but instead predominately describes

GOOGLE'S MPA'S IN SUPPORT OF ITS RENEWED MOTION TO DISMISS

the system and methods in purely functional terms."); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (finding abstractness when "the claims are exceptionally broad and the computer implementation limitations do little to limit their scope" and "the specification makes clear that this 'programming' and the related computer hardware 'refers to any sequence of instructions designed for execution on a computer system'") (citation omitted). Indeed, *Alice* itself found computer claims abstract because "what petitioner characterizes as specific hardware[] is purely functional and generic." 134 S. Ct. at 2360; *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018) (claims fail *Alice* step 1 because "the specification makes clear that off-the-shelf computer technology is usable to carry out the analysis" that is "the focus of the claims"). For the same reason, IE's prior arguments pointing to generic, well-known computer components such as the "graphical user interface," the "network," and the "media repository" fail. Dkt. 28, 17–18; Dkt. 177, 10–12, 21–22.

That the asserted patents merely purport to "automate" the known process of creating computer communications using tools such as Flash, as the specification acknowledges, is borne out by the claim language. The following hypothetical shows how the recited functions of '618 patent claim 14 could be performed manually by humans at a professional agency:[5]

| 14. A multimedia communication system for generating an online advertisement in an electronic distribution format to accommodate targeted broadcasting over an Internet based on recipient specific data received from a user of a recipient computing device, the system comprising: | A professional agency performing the following steps: |
|---|---|
| a server having a connection to the Internet to communicate with a user of a recipient computing device via a graphical user | communication with clients or other recipients over the Internet |

---

[5] IE has wrongly argued Google did not analyze a claim as a whole. Dkt. 177, 2.

Case No. 19-CV-1301-CAB-DEB

| interface displayed by the recipient computing device, the server comprising: | |
|---|---|
| a recipient specific database for storing qualitative and/or quantitative data received from a user of the recipient computing device; | storage of qualitative and/or quantitative feedback data received from recipients |
| a media repository for storing a plurality of online advertisement templates and a plurality of media assets; | storage of communication templates and media assets in a file cabinet or other storage capacity (*i.e.*, "media repository") accessible to employees interacting with agency clients |
| a project builder for accessing the recipient specific database as well as the media repository, and for selecting a media asset for integration with an advertisement template, the media asset being selected based on qualitative or quantitative data received from the recipient computing device; | a project manager with access to the media repository and feedback information from the recipients used to select the media assert to combine with the advertising template and able to make such selections |
| a compiler associated with the project builder, the compiler for integrating the selected media asset with the online advertisement template to generate an online advertisement; | the project manager integrates the selected media asset with the online advertisement template to generate an online advertisement, |
| a distribution program for performing the targeted broadcasting of the online advertisement over the Internet to the recipient computing device. | the project manager transmits the ad to the recipients. |

*See also* Dkt. 21-1 at 8–9 (similar analysis for '497 claim 1). In response to similar hypotheticals in Google's prior motions, IE argued (contrary to the specification which acknowledges it seeks to automate an existing process) its "claimed process was not 'known.'" Dkt. 28, 18; Dkt. 177, 15 n.5. But "a claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (emphasis in original). And while IE claimed the

1  hypothetical is "bare attorney argument," it did not substantively dispute the analogy

2  to the claims on this **legal** issue. Dkt. 28, 18; Dkt. 177, 15 n.5. IE also

3  mischaracterized Google's argument as being that "any claimed invention adding

4  'automation' is categorically patent ineligible." Dkt. 28, 19; Dkt. 177, 15. Google's

5  actual argument is that adding automation cannot *by itself* make the claims not

6  abstract. "It is well settled, though, that automating conventional activities using

7  generic technology does not amount to an inventive concept."[6] *LendingTree, LLC v.*

8  *Zillow, Inc.*, 656 F. App'x 991, 996 (Fed. Cir. 2016).

9      The abstract nature of the claims is further shown by Figures 6-16: a basic

10  progression of interview questions and options for a user to build computer

11  communications through a graphical user interface. Dkt. 21-1, 9–10. All these steps

12  could be accomplished with a project manager and client going through "interview"

13  questions and presenting and selecting options for multimedia communications,

14  either manually or sitting in front of a computer together. *Intellectual Ventures I*

15  *LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (finding claims

16  abstract where "with the exception of generic computer-implemented steps, there is

17  nothing in the claims themselves that foreclose them from being performed by a

18  human, mentally or with a pen and paper"); *ChargePoint, Inc. v. SemaConnect, Inc.*,

19  920 F.3d 759, 767 (Fed. Cir. 2019) ("the specification may . . . be useful in

20  illuminating whether the claims are 'directed to' the abstract idea"); *Internet Patents*

21  *Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (considering

22  specification to determine if the "character of the claimed invention is an abstract

23

24      [6] IE previously cited *McRO, Inc. v. Bandai Namco Games Am., Inc.* for the
unremarkable statement that "processes that automate tasks that humans are capable

25  of performing are patent eligible if properly claimed." Dkt. 177, 15. *McRO*,
however, involved claims directed to an improvement in computer animation with a

26  **specific algorithm** that improved the operation of the computer itself. 837 F.3d

27  1299, 1307–08, 1313–14 (Fed. Cir. 2016). Here, there is **no** such algorithm in the
claims at issue, as the Court has found at IE's urging. *Supra*.

28

idea"); *Clear with Computers, LLC v. Altec Indus., Inc.*, Nos. 6:14-cv-79 & 6:14-cv-89, 2015 WL 993392, at *4 (E.D. Tex. Mar. 3, 2015), *aff'd*, 636 F. App'x 1015 (Fed. Cir. 2016) (finding patent abstract where "[t]he claims essentially propose that, instead of a human salesman asking customers about their preferences and then creating a brochure from a binder of product pictures and text and using a rolodex to store customer information, a generic computer can perform those functions").

**B.      Courts have found similar claims to be directed to abstract ideas.**

The Federal Circuit has repeatedly found that patent claims involving processes for generating customized or tailored computer communications based on user information, like those asserted here, are directed to an abstract idea. For example, in *Intellectual Ventures I LLC v. Capital One Bank (USA)*, the Federal Circuit found that a patent claiming a system for tailoring web content based on user information was directed to an abstract idea. 792 F.3d 1363, 1369–70 (Fed. Cir. 2015). The claim recited "[a] system for providing web pages accessed from a web site in a manner which presents the web pages tailored to an individual user" involving "an interactive interface configured to provide dynamic web site navigation data to the user" and "a display depicting portions of the web site visited by the user as a function of the user's personal characteristics." *Id*. at 1369. Similarly, the claims here describe assembling content, including web pages (1:36–40), tailored to an individual user based on "user preferences" ('497 claim 1), "data received from a user of the recipient computing device" ('618 claim 14),  "data received from one or more of the recipient computing device and/or third-party database" ('618 claim 22), or "user data" ('898 claim 30). *See also*, Dkt. 53, ¶ 55 ("With the benefit of these systems and methods, advertising communication templates are available to receive inputs from data sources (*e.g.*, keywords and data) and be customized with media-rich assets (*e.g.*, words, images, and videos) to create an advertisement **uniquely tailored** to each ad viewer . . . .") (emphasis added).

In *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, the court found that patent

claims describing a "system and method to communicate targeted information" to handheld wireless devices with a "network based media managing system that maintains a library of content," "graphical user interface," and "network based delivery resource" were directed to the abstract idea of "delivering user-selected media content to portable devices." 838 F.3d 1266, 1267–69 (Fed. Cir. 2016). The court explained that "[t]his court . . . has held that 'customizing information based on . . . information known about the user' is an abstract idea," and "the basic concept of customizing a user interface is an abstract idea." *Id.* at 1271 (quoting *Intellectual Ventures I LLC*, 792 F.3d at 1369). The court also found that the "level of generality" of the claims did "no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Id.* at 1269. In particular, the court found that the recited "network based media management system" and "graphical user interface" elements were "simply generic descriptions of well-known computer components," and that the recitation of a "customized user interface" did not save the representative claim from abstraction. *Id.* at 1270–71.

As in *Affinity Labs*, the claimed processes use information collected from a user to customize content, an abstract idea. Here too, the claims merely recite a desired function or outcome (*e.g.*, creation of customized communications) and conventional and generic computer components (*e.g.*, "project builder," "compiler," "distribution program," "formatter") for a well-known business practice (creating customized communications). And, just like the plaintiff in *Affinity Labs*, IE "makes no claim that it invented any of those components or their basic functions[.]" *Id.* at 1270. Nor could it, given the Court's constructions, IE's concessions, and the specification's repeated disclosure of the use of generic computer components to practice the patents. *E.g.* 12:38–14:9.

Further, in *Bridge & Post,* the Federal Circuit found that method claims involving collecting information about a user, storing that information, and using it

to produce customized content were directed to the abstract idea of "the use of persistent identifiers to implement targeted marketing": a "form of 'tailoring information based on [provided] data,' which we have previously held is an abstract idea." 778 F. App'x at 887 (quoting *Intellectual Ventures I LLC*, 792 F.3d at 1369) (alternations in original); *see also Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F. Supp. 3d 171, 184 (S.D.N.Y. 2018) (claims were directed to abstract idea of "custom advertising based upon consumer qualities or other data"); *Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 330 (D. Del. 2015) (claims were "directed to the abstract idea of using personal information to create a customized presentation").

## C.   Impact Engine's Step 1 Arguments Are Without Merit.

Prior to claim construction, IE argued the "project builder" constituted "particular improvements in the functioning of earlier computer-based systems" under *Alice* step 1. Dkt. 28, 12–13, 16–17 (cleaned up); Dkt. 177, 10, 20. As Google's counsel previewed at the 101 hearing (101 Tr. 31:6–10), IE then argued at claim construction that the project builder could be met merely by generic software on a generic server that performs the claimed function. Dkt. 116, 3. But IE's claimed project builder cannot simultaneously be both a specific and particular innovation sufficient to elide 101, and a generic and conventional component well known to people of skill in the art. Likewise, because all other hardware and software elements of the claims at issue in this motion have been construed by the Court or conceded by IE to be defined by their functions using generic hardware and software, they cannot recite any specific structural elements.

IE also asserted that "server-side positioning" of the hardware/software elements render the claims non-abstract. Dkt. 28, 12–13, 16–17; Dkt. 177, 10, 20. But here again, all "server-positioned" elements in the claims in this motion have been construed or conceded to be comprised of generic hardware and/or software, and "the specification makes clear that the recited physical components merely

-15-

1   provide a generic environment in which to carry out the abstract idea." *TLI*

2   *Commc'ns*, 823 F.3d at 611; *see also id.* at 612 ("The specification does not describe

3   [] a new server . . . . The specification fails to provide any technical details for the

4   tangible components, but instead predominately describes the system and methods

5   in purely functional terms."). When a "server is described simply in terms of

6   performing generic computer functions" and "the functions of the server are

7   described in vague terms without any meaningful limitations," then the server

8   cannot render the claims non-abstract. *Id.* at 612–13. Where, as here, "[t]he

9   recitation of servers [] serves to 'limit the field of use of the abstract idea to a

10  particular existing technological environment,' [] it 'does not render the claims any

11  less abstract.'" *Innovation Scis., LLC v. Amazon.com, Inc.*, 778 F. App'x 859, 863

12  (Fed. Cir. 2019) (quoting *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d

13  1253, 1259 (Fed. Cir. 2016)); *see also BSG Tech*, 899 F.3d at 1287 ("a claim is not

14  patent eligible merely because it applies an abstract idea in a narrow way").

15       Nor does removing the need for programming knowledge (*c.f.* Dkt. 28, 10–

16  11) make the patents any less abstract. For example, the patent at issue in *Simio,*

17  *LLC v. FlexSim Software Prod., Inc.* "concern[ed] making object-oriented

18  simulation easier and more accessible by letting users build simulations with

19  graphics instead of programming." 983 F.3d 1353, 1356 (Fed. Cir. 2020). The

20  Federal Circuit found that "[s]imply applying the already-widespread practice of

21  using graphics instead of programming to the environment of object-oriented

22  simulations is no more than an abstract idea," *id.* at 1360 (emphasis omitted), and

23  that "the inherent improvement of the experience of a user who cannot (or maybe,

24  would rather not) use programming" cannot impart patent eligibility.[7] *Id.* at 1361.

25  _____

26       [7] IE previously purported to distinguish *Innovation Scis., LLC v. Amazon.com,*
    *Inc.*'s finding that "[t]he recitation of servers [] does not render the claims any less

27  abstract" (778 F. App'x 859, 863 (Fed. Cir. 2019) (cleaned up)) on the basis that in

28  this case, "the claimed server-side functionality [] is a critical advance." Dkt. 177,

*Customedia Techs.* similarly found that "improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality." 951 F.3d at 1365. Likewise, *Aftechmobile Inc. v. Salesforce.com, Inc.* found that claims "directed to the abstract idea of enabling the creation of mobile applications without coding by combining pre-coded software components" failed *Alice* step 1. No. 19-CV-05903-JST, 2020 WL 6129139, at *5 (N.D. Cal. Sept. 2, 2020).

IE has also cited to the supposed novelty of using templates to argue the claims are not ineligible. Dkt. 28, 18–19; Dkt. 177, 18–19. However, courts routinely invalidate patents claiming processes for generating and distributing customized content using "templates." For example, in *Hyper Search,* the asserted patent claims were "directed to the abstract idea of storing a template, creating a document based on that template, and storing the document for access by the public." 2018 WL 6617143, at *6. The court found the asserted patent claims "use[d] a wholly generic computer system to obtain functional results of storing a template, creating a document based on that template, and storing the document, with no technical detail describing how to achieve those results," and thus were abstract. *Id*. (noting that "[o]ther courts have held that patents directed to using templates to collect or generate documents, such as web pages, are abstract ideas").

---

17 n.7 (emph. omitted). But IE's unsupported characterization of a feature as a "critical advance" does not alter the required legal conclusion or this Court's previous findings (at ***IE's*** urging) to the contrary. IE's prior attempt to distinguish *Simio, LLC v. FlexSim Software Prod., Inc*., 983 F.3d 1353, 1356 (Fed. Cir. 2020), as "applying [an] already-widespread practice" (Dkt. 177, 18) ignored that placing computer functionality on servers was ***also*** a wide-spread practice. Dkt. 157-1, 19–21 (collecting cases). And IE selectively quoted *Aftechmobile Inc. v. Salesforce.com, Inc.* to argue its claims are distinguishable because they supposedly "clearly detail the server-side integration of the system components." Dkt. 177, 18. But, like in *Aftechmobile,* the claims "do not describe ***the technical means*** for achieving this purported backend linking or integration." No. 19-CV-05903-JST, 2020 WL 6129139, at *7 (N.D. Cal. Sept. 2, 2020) (emph. added); Dkt. 177, 18.

*GREE, Inc. v. Supercell Oy* similarly found that claims "directed to the abstract idea of creating and applying a template of positions of one or more game contents" failed *Alice* step 1. 834 F. App'x 583, 588 (Fed. Cir. 2020). And *Clear with Computers* found that the claims' recitation of "dynamically building a template" and "fill[ing] in the template to produce the single composite visual output" did not render the patent eligible under § 101. 2015 WL 993392, at *2, 4. Thus, perhaps unsurprisingly, despite arguing that the claimed templates render the claims non-abstract, IE elsewhere asserted that "the Asserted Claims are not merely directed towards creating and applying a template." Dkt. 177, 18–19 (cleaned up).

Further, even assuming that using a "template" or any other function executed by the generic hardware and software of the claims is novel—and it is not—"a *new* abstract idea is still an abstract idea." *Synopsys*, 839 F.3d at 1151; *see also Personalized Media Commc'ns*, 161 F. Supp. 3d at 334 ("[p]racticing an abstract idea in a novel way is still practicing an abstract idea"). "Both the Supreme Court and Federal Circuit have repeatedly emphasized the independence of the inquiries" between novelty and patent eligibility. *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-cv-3777, 2015 WL 1941331, at *14 (S.D.N.Y. Apr. 28, 2015) (citing *Diamond v. Diehr,* 450 U.S. 175, 190 (1981) and *Ultramercial*, 772 F.3d at 715). No supposed computer-based efficiency of the claimed invention can change the fact that the claims at issue in this motion are directed to an abstract idea. *See In re Morinville*, 767 F. App'x 964, 968 (Fed. Cir. 2019) ("computer-based efficiency does not save an otherwise abstract method"); *Simio*, 983 F.3d at 1361 ("claiming the improved speed or efficiency inherent with applying the abstract idea on a computer is insufficient to render the claims patent eligible as an improvement to computer functionality") (internal quotation marks, brackets, and citation omitted).

Finally, IE's prior assertion that its claims are patent-eligible because they do not preempt all methods of generating communications (Dkt. 28, 21; Dkt. 177, 19-20) is wrong as a matter of law: "[w]here . . . claims are deemed only to disclose

patent ineligible subject matter under the *Mayo* framework, as they are in this case, preemption concerns are fully addressed and made moot." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) (there is no *Alice* "step 3" considering preemption); *McRO*, 837 F.3d at 1315 ("the absence of complete preemption does not demonstrate patent eligibility") (internal quotations omitted). And contrary to IE's efforts to limit the purported invention to "media-rich ads" (*e.g.,* 101 Tr. 15:18–17:24, IE 101 Slides, 9–21, 31–41), the purported invention is not generally so limited. '497 claim 1; *see also* 1:36–40. Even if that were not the case, courts have consistently found field of use limitations do not transform a patent-ineligible claim into an eligible claim. *Bilski v. Kappos*, 561 U.S. 593, 612 (2010) ("[L]imiting an abstract idea to one field of use or adding token postsolution components [does] not make the concept patentable."); *Personalized Media Commc'ns*, 161 F. Supp. 3d at 333 ("[I]t is irrelevant to the § 101 analysis that decryption is used to protect programming content; field of use limitations cannot render a claim patent eligible."). Similarly, that the claimed process is performed on the Internet "does not save the idea from being patent-ineligible." *Symantec Corp.*, 838 F. 3d at 1319 ("We have previously determined that performing otherwise abstract activity on the Internet does not save the idea form being patent-ineligible."); *Ultramercial, Inc.*, 772 F.3d at 716 ("the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101"). The claims here are directed to an abstract idea and fail the first *Alice* step.

## III.   THE CLAIMS AT ISSUE LACK AN INVENTIVE CONCEPT.

### A.   Generic Components Cannot Provide an Inventive Concept.

As discussed *supra*, **every** hardware and/or software element of the claims at issue—from the "project builder" to the "distribution program," from the "graphical user interface" to using a "server"—has been construed by the Court or conceded by IE to be known and familiar to those skilled in the art. Accordingly, when considering the claim elements individually or as an ordered combination, there is

1  nothing sufficient to transform the claimed abstract idea into a patent-eligible

2  application. *Alice*, 134 S. Ct. at 2357.

3      Courts routinely find generic computer functions insufficient to add an

4  inventive concept. *Alice*, 134 S. Ct. at 2359 (using a computer to store data is "one

5  of the most basic functions of a computer"); *Interval Licensing LLC v. AOL, Inc.*,

6  896 F.3d 1335, 1347 (Fed. Cir. 2018) ("Interval Licensing does not, and cannot,

7  contend that it is arguably inventive to enable a person to access information over a

8  network through a user interface"); *Intellectual Ventures I LLC*, 792 F.3d at 1368,

9  1370 ("database, a user profile . . . and a communication medium, are all generic

10  computer elements"; "the interactive interface limitation is a generic computer

11  element"); *Affinity Labs*, 838 F.3d at 1271 (generically stated limitations including

12  "network based media managing system," "network based delivery resource," and

13  "customized user interface" did not convert abstract idea into "concrete solution of

14  [a] problem"); *Ultramercial, Inc.*, 772 F.3d at 717 ("[a]ny . . . transfer of content

15  between computers is merely what computers do" and does not add an inventive

16  concept); *Talent Broker Tech. LLC v. Musical.ly, Inc.*, No. CV 17-08532, 2018 WL

17  3019641, at *9 (C.D. Cal. May 22, 2018) ("a client-server network model" is

18  "technology that was undoubtedly well-understood, routine, conventional activity in

19  2011" and "inherent benefits" of this technology could not add an inventive

20  concept) (internal quotation marks and citation omitted); *Uniloc USA, Inc. v. AVG*

21  *Techs. USA, Inc.*, No. 16-cv-00393, 2017 WL 1154927, at *8 (E.D. Tex. Mar. 28,

22  2017) ("client" and "server" were "generic computers . . . set up in a generic client-

23  server arrangement" that did not add inventive concept).

24      The claims at issue merely instruct the practitioner to apply the abstract

25  idea—creating computer communications—in functional terms using what the Court

26  has already found to be known computer tools like project builders, compilers,

27  distribution programs, formatting engines, graphical user interfaces, media

28  repository databases, and the like. *See also* 12:38–14:9. This mirrors the claims in

*Customedia Techs.*, which "recite only generic computer components, including a programmable receiver unit, a storage device, a remote server and a processor. . . . Such generic and functional hardware is insufficient to render eligible claims directed to an abstract idea." 951 F.3d at 1366; *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc*., 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) ("generic computer components such as an 'interface,' 'network,' and 'database' [] do not satisfy the inventive concept requirement"); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1386 (Fed. Cir. 2018) ("The case law has consistently held that these standard [computer] components are not sufficient to transform abstract claims into patent-eligible subject matter."). Similarly, the claims in *Hyper Search* "recite[d] the performance of the abstract idea on well-known computer components and processes" including a "server," "a network," a "template storage means," and "home page creating means." 2018 WL 6617143, at *9. The court found that "these are generic descriptions of the computer components and functions that do not rise to the level of inventive concept." *Id*. They did not transform claims directed to the abstract idea of storing a template, creating a document based on that template, and storing the document for public access into patent eligible subject matter. *Id*. And *Alice* itself noted that "purely functional and generic" hardware does not "offer[] a meaningful limitation beyond generally linking the use of the method to a particular technological environment, that is, implementation via computers." 134 S. Ct. at 2360 (internal quotation marks, brackets, and citation omitted).

Further, it is "well settled . . . that automating conventional activities using generic technology does not amount to an inventive concept." *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991, 996 (Fed. Cir. 2016); *Interval Licensing*, 896 F.3d at 1346 ("[i]t is well-settled that placing an abstract idea in the context of a computer does not 'improve' the computer or convert the idea into a patent-eligible application of that idea"); *TLI Commc'ns*, 823 F.3d at 614 ("[f]or the role of a computer in a computer-implemented invention to be deemed meaningful in the

context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry'"). "[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

Here, there are no specifics as to how the patents create and distribute communications. For example, claim 14 of the '618 patent does not describe:

- *how* the project builder "access[es] the recipient specific database as well as the media repository," or "select[s] a media asset for integration with an advertisement template";

- *how* the server connects "to the Internet to communicate with a user of a recipient computing device via a graphical user interface";

- *how* the compiler "integrat[es] the selected media asset with the online advertisement template to generate an online advertisement";

- *how* the formatter "select[s] and format[s] the online advertisement in an electronic distribution format"; or

- *how* the distribution program "perform[s] the targeted broadcasting of the online advertisement over the Internet to the recipient computing device."

*See also* Dkt. 21-1 at 18 (presenting a similar analysis for '497 claim 1). Nor do the claims describe how to "obtain[] user information, select[] appropriate template(s) and asset(s) and obtain[] user formatting and transmission information" as required of the "project builder," or how to "control[] the formatting and communication protocols for distribution of a communication" as required of the "distribution program." CC Order 6, 9. Rather, for each of these elements, the claims merely recite that these functional steps are to be done. Indeed, the Court's Order construing the "project builder" explicitly defines its "program constructs" by the "***function*** of the system" they provide, not by their structure. CC Order 9. But "[w]ithout an explanation of the 'mechanism' for 'how the result is accomplished,'

th[e] purported feature[s] of the invention cannot supply an inventive concept." *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1331–32 (Fed. Cir. 2017) (quoting *Internet Patents Corp.*, 790 F.3d at 1348); *see also Glasswall Sols. Ltd v. Clearswift Ltd.*, 754 F. App'x 996, 998 (Fed. Cir. 2018) (claims were patent ineligible where they did not disclose "how" to implement the claimed concept); *Elec. Power Grp.*, 830 F.3d at 1355 (at step two, "[i]nquiry . . . must turn to any requirements for *how* the desired result is achieved"). Patent claims that "simply instruct the practitioner to implement the abstract idea . . . on a generic computer" do not add an inventive step and fail § 101. *Alice*, 134 S. Ct. at 2359.

The specification states that the claimed "invention" is "a system and method which *automates* the process of creating and distributing professional quality, media-rich communications . . . ." 1:24–26 (emphasis added). Even more, the specification discloses that the supposed automation of the patents can be done with virtually *any* type of computer hardware and/or software. As a matter of law, however, there is nothing "inventive" about a generic computer "automatically" performing a task. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363–64 (Fed. Cir. 2015) (finding lack of an inventive concept where, "[a]t best, the claims describe[d] the automation of the fundamental economic concept" using "generic-computer functions"); *Quantum Stream*, 309 F. Supp. 3d at 188 ("tasks that are implemented by generic computer system arrangements but that a human operator, even with a pencil and paper, can also perform in real-time with the assistance of a device to implement the human's commands typically do not, without more, entail an inventive concept"); *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622, 2015 WL 1535328, at *6 (N.D. Cal. Apr. 6, 2015) ("the fact that a company may be the first to successfully apply an abstract idea within a new technological context does not transform the abstract idea into something tangible and patentable"). Here again the patents mirror those in *Customedia Techs.*, which claims a "system for providing automatic delivery of multimedia data products" wherein the "specification

acknowledges that the storage device 'may be any storage device for audio/video information known in the art' and the receiver unit may include 'any digital or analog signal receiver and/or transmitter capable of accepting a signal transmitting any kind of digital or broadcast information.'" 951 F.3d at 1361, 1366.

## B. **Impact Engine's Step 2 Arguments Are Without Merit.**

As discussed above, IE opposed Google's previous motions by arguing that "(1) 'server-side' positioning of a system for generating online communications and (2) use of a 'project builder'" were inventive concepts. Dkt. 28, 22; Dkt. 177, 20-21. But again, the Court has construed "project builder" as "server-side software and hardware that obtains user information, selects appropriate template(s) and asset(s) and obtains user formatting and transmission information," and that "[s]uch program constructs to provide this function of the system ***would be tools familiar to one of skill***." CC Order 9 (emphasis added); Supp. CC Order 5. Accordingly, neither the "project builder" itself nor its "server-side" positioning can constitute inventive concepts. *Fast 101 Pty Ltd. V. CitiGroup Inc.*, 834 F. App'x 591, 594 (Fed. Cir. 2020) ("well-understood, routine, and conventional technology components" cannot provide an inventive step); *Customedia Techs*., 951 F.3d at 1366 ("the invocation of already-available computers that are not themselves plausibly asserted to be an advance amounts to a recitation of what is well-understood, routine, and conventional") (internal quotation marks, ellipsis, and citation omitted).

At the January 14, 2021 claim construction hearing, IE represented that it did not oppose Google's first section 101 motion based on the project builder itself, but rather that "the claims as a whole incorporate all these other elements which is what makes this particular project builder unique." Dkt. 151, 3; *see also* 2nd CC Tr. 56:3–13, Dkt. 177, 4–5. Initially, that is plainly *not* what IE previously asserted, which is that "Claim 1 of the '497 patent contains at least two inventive concepts" one of which was "use of a 'project builder.'" Dkt. 28, 22. In any event and as discussed above, the claims as a whole including "all these other elements," as construed by

the Court and/or interpreted by IE, merely recite functional steps performed by generic hardware and software. Such claims cannot pass muster under *Alice* steps 1 or 2. *TLI Commc'ns*, 823 F.3d at 612; *Customedia Techs*., 51 F.3d at 1366.

The Supplemental Complaint touts the speed and efficiency the claimed invention supposedly brought to existing practices for generating and distributing customized communications. *See, e.g.*, Dkt. 53 ¶¶ 17, 53–57. IE repeated these assertions in the response to Google's prior § 101 motions. Dkt. 28, 25; Dkt. 177, 24. Initially, it is unclear how a purported invention entirely comprised of known and familiar technology could provide these advantages. In any event, "claims that do not define the particular features used to achieve the alleged advantage cannot be said to pass step two of the *Alice* analysis." *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, Nos. 2020-1504 & 2020-1645, 2021 WL 97347, at *5 (Fed. Cir. Jan. 12, 2021). And Federal Circuit "precedent is clear that merely adding computer functionality to increase the speed or efficiency of [a] process does not confer patent eligibility on an otherwise abstract idea." *Intellectual Ventures I*, 792 F.3d at 1370 ("the fact that the web site returns the pre-designed ad more quickly than a newspaper could send the user a location-specific advertisement insert does not confer patent eligibility"); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."). Particularly relevant here, "[t]he ability to run a more efficient advertising campaign, even if novel, and even if aided by conventional computers, is an advance 'entirely in the realm of abstract ideas,' which we have repeatedly held to be ineligible." *Bridge & Post*, 778 F. App'x at 893 (quoting *SAP Am.*, 898 F.3d at 1163). Without any inventive concept to transform the asserted patent claims that are directed to an abstract idea into something significantly more, IE's patent claims are ineligible under Section 101. Google's motion should be granted.

DATED: July 2, 2021                QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


                            By    /s/ David A. Perlson
                                 David A. Perlson
                                 Attorneys for Defendant,
                                 GOOGLE LLC