UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPACT ENGINE, INC.,<br><br>              Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>              Defendant. | Case No.: 19-CV-1301-CAB-DEB<br><br>**Order on Motion to Dismiss Pursuant to Rule 12(c) for Patent Ineligibility** |

Plaintiff Impact Engine, Inc. alleges that defendant Google LLC infringes eight United States patents owned by Impact Engine. The asserted patents[1] are all continuations of U.S. Patent No. 7,870,497 [Doc. No. 1-3] [2], filed April 13, 2006, and have a common specification. Before the Court is Google's motion to dismiss certain of the asserted claims, pursuant to Fed.R.Civ.P. 12(c), on the basis that they are ineligible subject matter under 35 U.S.C. §101. [Doc. No. 225.] The matter has been fully briefed and the Court finds the motion suitable for determination on the papers submitted and without oral

---

[1] The following patents are at issue in this litigation: U.S. Patent Nos. 7,870,497; 8,356,253; 8,930,832; 9,361,632; 9,805,393; 10,068,253; 10,565,618; and 10,572,898. [Doc. Nos. 1-3 to 1-8, 53-14 and 53-15, respectively.]

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

argument in accordance with Civil Local Rule 7.1(d)(1).  For the reasons set forth below, the motion is **GRANTED** in part and **DENIED** in part.

## I. Procedural Background

Google previously sought to dismiss Impact Engine's complaint under Fed.R.Civ.P. 12(b)(6) based on patent ineligibility at the start of this litigation. [Doc. No. 21.]  Google argued that all the asserted patents claim ineligible subject matter and that Claim 1 of the '497 patent was representative of all the claims of all the patents asserted by Impact Engine. The Court denied the motion, finding that Google did not establish that Claim 1 of the '497 patent was representative.  Further, based only on consideration of the complaint, the patent and its history, the Court found it could not conclude that Claim 1 of the '497 patent was directed at an abstract idea. [Doc. No. 41 at 2.]   However, Google was not precluded from reasserting the defense of patent ineligibility as to one or more of the patents' claims if claim construction or further evidence beyond the pleadings supported such a challenge in the future. [*Id.*]

Following the issuance of the Court's initial Claim Construction Order [Doc. No. 148], Google renewed its motion to dismiss pursuant to Fed.R.Civ.P. 12(c) based on patent ineligibility, this time asserting that Claims 1, 3, and 5 of U.S. Patent No. 8,356,253 ("the '6253 patent") were representative of all the claims at issue in the litigation. [Doc. No. 157.]  At the same time, Google also filed a motion for additional construction of claim terms that are limitations in the representative claims of the '6253 patent. [Doc. No. 160.] Because Google's challenge to the patentability of the claims of the '6253 patent was premised in part on claim constructions that the Court did not adopt [Doc. No. 205], the Court denied the motion. [Doc. No. 206.]

Google's present motion to dismiss is directed specifically at Claim 1 of the '497 patent, Claims 14, 16 and 23[3] of the '618 patent, and Claim 30 of the '898 patent.  Google

---

[3] Claim 23 is dependent from independent Claim 22, which is therefore included in the Court's analysis.

2

brings the motion pursuant to Fed.R.Civ.P. 12(c) and argues these specific claims, as construed by the Court and in consideration of the patent specification, are directed at an abstract idea and do not include additional elements that transform the claims into patent-eligible subject matter.

Impact Engine opposes Google's present motion, in part arguing it is an untimely motion for reconsideration of its previous motions challenging the validity of Impact Engine's patents based on section 101. The Court disagrees. Each motion brought by Google was distinct and separate. This motion is neither untimely nor a request for the Court to reconsider a prior ruling. The Court therefore turns to the merits of Google's motion.

## II.     Legal Standard

Under Rule 12(c), judgment may be granted if the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. Whether a claim is drawn to patent-eligible subject matter under section 101 is ultimately an issue of law that may be decided on a Rule 12(c) motion under certain circumstances. Generally, the court may not consider matters outside the pleadings without converting a Rule 12(c) motion to a summary judgment motion under Rule 56. However, because claim construction is a question of law, a court "may take notice of and rely on its claim construction opinion without converting [a 12(c)] motion into a motion for summary judgment." *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 235 F. Supp. 3d 577, 588 (D. Del. 2016).

Section 101 defines patent-eligible subject as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. §101. However, laws of nature, natural phenomena, and abstract ideas are not eligible for patenting. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). When a patent claim is alleged to involve one of these three types of subject matter, the court is to apply a two-step test for examining patent eligibility. *Id.* 573 U.S. at 217-18.

The court must "distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more," to protect against "disproportionately tying up the use of the underlying ideas." *Id.* at 217.

The first step of the *Alice* test requires a court to determine whether the claim at issue is directed to a patent-ineligible concept, in this case an abstract idea. *Id*. at 218. The claim is considered in its entirety to ascertain whether its character as a whole is directed to excluded subject matter. *Internet Pats. Corp. v. Active Network Inc.,* 790 F.3d 1343, 1346 (Fed. Cir. 2015). If so, the second step of the *Alice* test requires the court to examine the elements of the claim both individually and as an ordered combination to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 221. This inventive concept must do more than simply recite "well-understood, routine, conventional activities" previously known to the industry. *Mayo Collaborative Servs. v. Prometheus Labs, Inc.,* 566 U.S. 66, 79-80 (2012).

### III. Summary of the Invention and Claim Construction

The patents at-issue are directed at a Multimedia Communications System and Method for creating, editing, sharing, and distributing high-quality, media-rich web-based communications. [Doc. No. 1-3 at 2 (Abstract).] The systems and methods disclosed are intended to replace the "prior art" practice of contracting a professional graphic design or advertising agency to create works that can be distributed electronically in various formats such as a banner advertisement, website or email. Through the system, the user selects and creates the communication content, edits it, and distributes the communication in a selected format to a selected audience over the Internet. [*Id.* at Col. 1:12-26.]

Broadly, the patents describe a system in which a client user interacts through a graphical user interface with the system components located on a server connected over the Internet. The system includes a media repository that stores templates and media assets, such as music, artwork and graphics. The user interacts with the system using a project builder component which enables the user to select templates and assets from the repository

to create a communication, such as an advertisement. The project viewer component renders or serializes the selections made by the user to display and playback the communication as configured by the user. The system's compiler integrates the selections into a final communication that is stored in the repository. The system also includes a sharing program that enables the communication to be shared and edited by designated users. The system further includes a distribution program that formats the communication into one or more formats selected by the user and electronically delivers the formatted communication to the user's selected audience. [*Id.* at Col. 2:65-Col. 3:29, Col. 11:36-Col. 12:37; Figs. 1-5.] Benefits of the system include that it is flexible, dynamic, cost-effective, and does not require the user to have in-depth programming knowledge. [*Id.*, Abstract; Col. 1:12-25, 41-44.]

At claim construction, Impact Engine argued that various components of the server-side communication builder engine (i.e., project builder, project viewer, compiler, and distribution program) required no construction as each component at the time of filing of the parent application was a "known program construct that would be familiar to one of skill in the art." [Doc. No. 108 at 19, 22, and 25; Doc. No. 179 at 9.] Impact Engine represented that these components of the system were familiar applications (software) implemented on a server (hardware) used to build a communication or advertisement based on input from the user. [Doc. No. 108 at 14-17; Doc No. 179 at 11.] The Court generally adopted Impact Engine's proposed constructions that these components of the system were known software applications to provide for the selection of user preferences to create a communication based on those selections and to format and distribute the communication according to the user's directions. [Doc. No. 148.][4]

---

[4] Impact Engine's proposed construction that the "project viewer" component was also a known software application for a user to "preview of a communication" [Doc. No. 179 at 11] was not adopted by the Court. The specification discloses the system functions of the project viewer as significantly more complex than prior art known "viewer" applications described by Impact Engine. [Doc. No. 205.]

Based on these constructions, Google now argues that the challenged claims below are simply for known software applications to create and distribute a user defined communication and as such they claim an abstract idea without inventive concept.

### IV. Challenged Claims

#### A. U.S. Patent No. 10,565,618

Claims 14, 16, 22, and 23 claim:

> 14. A multimedia communication system for generating an online advertisement in an electronic distribution format to accommodate targeted broadcasting over an Internet based on recipient specific data received from a user of a recipient computing device, the system comprising:
>> a server having a connection to the Internet to communicate with a user of a recipient computing device via a graphical user interface displayed by the recipient computing device, the system comprising:
>>> a recipient specific database for storing qualitative and/or quantitative data received from a user of the recipient computing device;
>>> a media repository for storing a plurality of online advertisement templates and a plurality of media assets;
>>> a project builder for accessing the recipient specific database as well as the media repository, and for selecting a media asset for integration with an advertisement template, the media asset being selected based on qualitative or quantitative data received from the recipient computing device;
>>> a compiler associated with the project builder, the compiler for integrating the selected media asset with the online advertisement template to generate an online advertisement;
>>> a formatter for selecting and formatting the online advertisement in an electronic distribution format; and
>>> a distribution program for performing the targeted broadcasting of the online advertisement over the Internet to the recipient computer device.
>
> 16. The multimedia communication system in accordance with claim 14, wherein the recipient specific data comprises data pertaining to the user received from a social network, a geographical location, or a web page visited by the user.
>
> 22. A multimedia communication system for generating an online advertisement in an electronic distribution format to accommodate targeted broadcasting over an Internet, the system comprising:

> a server connected to the Internet to communicate with one or more of a user of a recipient computing device via a graphical user interface displayed by the recipient computing device and/or to a third-party database, the server comprising:
>> a media repository for storing a plurality of online advertisement templates and a plurality of medial assets;
>> a compiler associated with the media repository, the compiler for integrating a selected media asset with a selected online advertisement template from the media repository, the media asset and the advertisement template being automatically selectable by the server based on a first set of data received from one or more of the recipient computing device and/or third-party database to generate a online advertisement;
>> a formatter for automatically formatting the online advertisement in at least one of a plurality of electronic distribution formats for display at the graphical user interface of the recipient computing device, the formatting of the online advertisement being determine based on the first set of data received from one or more of the recipient computing device and/or third-party database; and
>> a distribution program for the targeted broadcasting of the online advertisement over the Internet to the recipient computing device in the determined electronic distribution format.
>
> 23. The multimedia communications system in accordance with claim 22, wherein the media asset and the template are selected based on the first set of data received from the recipient computing device, and the formatting of the online advertisement is determined based on whether the recipient computing device is a desktop or laptop computer or a mobile device.

[Doc. No. 53-14 at Col. 16:53-Col. 17:16; Col. 17:21-24; Col. 17:48-Col. 18:25.]

During the prosecution of the '618 patent, the examiner issued a rejection of the claims based on section 101, finding that the claimed subject matter recites a judicial exception -- that they claim an abstract idea of creating and distributing advertisement content. [Doc. No. 28-8 at 6.] The Court agrees.

In applying the first step of the *Alice* analysis, the Court finds that the claims are directed at the abstract idea of a system for generating customized or tailored computer communications based on user information. *See Intellectual Ventures I LLC v. Capital*

*One Bank (USA)*, 792 F.3d 1363, 1369-70 (Fed. Cir. 2015) (holding that a patent claiming a system for customizing web content based on user information was directed to an abstract idea). These claims of the '618 patent relate to creating online advertisements based on user input to select materials from a library of stored materials and to format and distribute the advertisement over the Internet based on user preferences.

As the patent itself discloses, the creation and distribution of such advertisements was traditionally performed by professional advertisement agencies, and the system and method of the patent automates the process of creating and distributing such professional quality communications. [Doc. No. 53-14 at Col. 1:34-48.] The system of these claims employs a library of assets, a software application to determine the user's preferences, a compiler to integrate the assets selected from the library into an advertisement, and a distribution system[5] to deliver the advertisements to the user's selected audience in a preferred format. As advocated by Impact Engine and adopted by the Court, all these elements of the system were well-known program constructs defined by their functions that were familiar to one of skill in the art at the relevant time. No advancement or improvement to any of these elements is disclosed or claimed.

The patent examiner found that, although directed to "a judicial exception," the server-side technical elements of the media repository, project builder, project viewer (which is not present in these claims), compiler, formatter (although not disclosed in the specification) and distribution program "actively communicating between each other, integrated and deeply connected with each other, and performing the recited functional limitations amounts to more than simply implementing the functional limitations 'by a computer.'" The examiner therefore concluded that the second step of the *Alice* test was satisfied, and the claims as a whole applied the judicial exception in some other meaningful

---

[5] A "formatter" is not identified in the patent specification. However, the patent does disclose that the distribution program controls the format and communication protocols for distributing the communications. [Id. at Col. 3:45-46.]

8

way beyond generally linking the use to a particular technological environment. [Doc. No. 28-8 at 6-7.] The Court disagrees.

"Claims that amount to nothing significantly more than an instruction to apply an abstract idea using some unspecified, generic computer and in which each step does no more than require a generic computer to perform generic computer functions do not make an abstract idea patent-eligible." *Alice,* 573 U.S. at 225-26. These claims do not include any improvement in the functioning of these "well-known program constructs." That they are located on the server does not impart a meaningful improvement or advance as there is no claim or disclosure that the server does anything more than house the generic components.

The specification provides little about the interactions of the generic computer software and hardware components of these claims and how these interactions happen, much less identifying an improvement in the known ways they would interact in a computer system. The actual mechanism of how the communications are compiled, formatted, and distributed on the Internet is not disclosed other than by known methods. For these claims, there is no specific or limiting recitation of improved computer technology.[6] *See Intellectual Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307, 1316 (Fed. Cir. 2016) (holding that a claim directed to an abstract idea that contains no restriction on how the result is accomplished or description of the mechanism to do so, although stated to be the essential innovation, is not patent-eligible).

These claims recite only generic computer components functioning in their known conventional manner, which may improve the experience of the user, but does not improve the functions of the computer. Automating conventional activities using generic

---

[6] The Court construed the limitation of the "project viewer" to be a specific and limited component part of the system. Consequently, claims that contain the project viewer limitation, which discloses a mechanism for creating communications that can be easily edited and distributed on the Internet, are distinguished from the claims at issue in Google's present motion. Without that limitation, these claims broadly encompass collecting user preference information and making an advertisement to be distributed on the Internet using known conventional computer software and hardware.

technology does not amount to inventive concept. These asserted claims of the '618 patent are not patent-eligible under 35 U.S.C §101. The motion is **GRANTED** as to Claims 14, 16, 22 and 23 of the '618 patent.

### B. U.S. Patent No. 7,870,497

Claim 1 of the '497 patent claims:

> 1. A multimedia communication system comprising:
> a media repository storing communication project templates and media assets of a number of content types, the project templates and media assets being accessible by a graphical user interface on a client computer via a network; and
> a project builder providing the graphical user interface for the client computer via the network for local display of the graphical user interface on the client computer, the graphical user interface comprising controls to receive user input for selecting at least one communication project template from the media repository and one or more media assets, and assembling a communication based on the at least one communication project template, the project builder further including an interactive interview for display on the graphical user interface, the interactive interview providing a plurality of questions to a user for eliciting a user response pertaining to user preferences, and further receiving the user preferences about the at least one communication project template and one or more media assets to assembly the communication.

[Doc. No. 1-3 at Col. 14:38-67.]

Having applied the above analysis to this claim, the Court finds that it is also not patent eligible. This claim is for a server-side media library and a software program that selects materials from that library to make a communication based on user provided preferences obtained through a graphical user interface. The patent does not claim the creation of media repositories or any improvement to such known databases. It does not claim to have created or improved graphical user interfaces. It does not disclose any advancement in "known program constructs" used to "interview" a user to determine preferences.

This claim recites only generic computer components functioning in their known conventional manner, which again may improve the experience of the user, but does not

improve the functions of the computer. Automating conventional activities using generic technology does not amount to inventive concept. This asserted claim of the '497 patent is not patent-eligible under 35 U.S.C §101. The motion is **GRANTED** as to Claims 1 of the '497 patent.

### C. U.S. Patent No. 10,572,898

Claim 30 of the '898 patent claims:

> 30. An online advertisement generation system for autonomously generating and broadcasting a communication to a graphical user interface of a recipient device, the communication capable of being rendered, the online advertisement generation system comprising:
> a media repository for storing media content comprising a plurality of online advertisement templates and a plurality of media assets;
> a communications system server coupled to the media repository, the communications system server being connectable to an internet network, the communications system server being configured for receiving, via the internet network, one or more of user data, keyword data, and geographic data, and comprising:
>> an advertisement generation engine for autonomously generating the communication, the advertisement generation engine for accessing the media repository and selecting, based on one or more of the user data, keyword data, and geographic data, at least one of the plurality of online advertisement templates and at least one of the plurality of media assets to generate the communication, the communication including a collection of slides comprising a grouping of design layers, design elements, and content containers into the collection of slides so as to generate the communication capable of being rendered in a manner so as to be content specific to the user data, keyword data, and geographic data;
>> a formatting engine for formatting the communication; and
>> a distribution engine wherein once the communication is generated and formatted, the communications system server autonomously broadcasts the one of more communications via the distribution engine to the recipient device so as to be rendered at the graphical user interface thereof, the slides being displayable in an auto-play on or and auto-play off format.

[Doc. No. 53-15 at Col. 19:39 – Col. 20:27.]

The Court applied the *Alice* analysis to the above claim, and while finding that it also claims the abstract idea of creating and distributing advertisement content, this claim

includes restrictions on how the result is accomplished and the patent describes the mechanism to do so. Therefore, the claim is patent eligible.

This patent, the most recent in the family tree of continuations from the initial application, attaches different labels to the system components, but it is based on the same specification and the corresponding components remain the same "known program constructs." For example, the claimed "communications system server" is a new label for the disclosed communication builder engine (102) and the "advertisement generation engine" is the disclosed project builder (108). The claimed "formatting engine" remains a bit of mystery as is not identified in the specification other than as a function of the "distribution engine" disclosed as the distribution program (112). These components of the claimed system are not advancements in the functioning of the computer, as discussed above. To the extent that the claim includes the "autonomous" generation and broadcasting of a communication, the patent does not disclose a mechanism or advancement in the art for such independent function. The generation and distribution of a communication is accomplished by known program constructs, and nothing is disclosed to inform how any autonomous function occurs that is an advancement over what was known in the art.

Nevertheless, the claim includes the limitation that the communication is not just a collection of slides, but a collection comprised of a grouping of design layers, design elements and content containers. The description of how these layered slides with content containers are created, managed, and populated is disclosed in great detail in the specification. [Id. at Col. 4:1 - Col 9:10] This limitation as part of the claim provides inventive concept by requiring that the system not just create a customized communication based on user preferences, but create that communication using a particular format, and the patent describes the mechanism to do so.

Considering Claim 30 as an ordered combination of elements, it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application under 35 U.S.C. §101. The motion is **DENIED** as to Claim 30 of the '898 patent.

### V. Conclusion

For the reasons stated above, Google's motion to dismiss certain claims asserted in this litigation pursuant to Rule 12(c) as patent ineligible subject matter under 35 U.S.C. § 101 is:

**GRANTED** as to Claims 14, 16, 22, and 23 of the '618 Patent and Claim 1 of the '497 Patent; and

**DENIED** as to Claim 30 of the '898 Patent.

**IT IS SO ORDERED.**

Dated: November 10, 2021

Hon. Cathy Ann Bencivengo
United States District Judge