**REDACTED**

Sharre Lotfollahi  (SB 258913)
Kirkland & Ellis LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
213-680-8400
sharre.lotfollahi@kirkland.com

Garret A. Leach (*pro hac vice*)
Nikhil Krishnan (SB 300616)
Kyle M. Kantarek (*pro hac vice*)
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
312-862-2000
garret.leach@kirkland.com
nikhil.krishnan@kirkland.com
kyle.kantarek@kirkland.com

*Attorneys for Impact Engine, Inc.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPACT ENGINE, INC., | CASE NO. 3:19-cv-01301-CAB-DEB |
| Plaintiff, | **IMPACT ENGINE'S OPPOSITION TO MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF JAMES MALACKOWSKI** |
| v. | |
| GOOGLE LLC, | |
| Defendant. | Judge: Hon. Cathy A. Bencivengo<br>Courtroom: 4C |

| IMPACT ENGINE'S OPP. TO MTN. TO STRIKE PORTIONS OF THE EXPERT REPORT OF JAMES MALACKOWSKI | CASE NO. 3:19-CV-01301-CAB-DEB |
|---|---|

**REDACTED**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   OVERVIEW OF MR. MALACKOWSKI'S REPORT ....................................... 3

III.  ARGUMENT ..................................................................................................... 5

    A.  Impact Engine Acted in Good Faith and Did Not Improperly Withhold Reliance on the DoubleClick Acquisition ................................. 5

    B.  Google Was Aware of the DoubleClick Acquisition and Related Documents Because It Has been the Subject of Significant Discovery ...................................................................................................... 8

    C.  Google Is Not Prejudiced by Mr. Malackowski's Reliance on Google's Own Documents ........................................................................ 10

IV.   CONCLUSION ............................................................................................... 13

**REDACTED**

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Am. Cas. Co. of Reading, Pa. v. Baker*,
    22 F.3d 880 (9th Cir. 1994) ................................................................................ 12

*Aylus Networks, Inc. v. Apple Inc.*,
    No. 13-cv-04700, 2015 WL 6667460 (N.D. Cal. Nov. 02, 2015) ...................... 11

*Elliott v. Google, Inc.*,
    860 F.3d 1151 (9th Cir. 2017) ............................................................................ 12

*Humane Soc. of U.S. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    No. DKC 13-1822, 2014 WL 3055568 (D. Md. July 3, 2014) ........................... 5

*Ingenco Holdings, LLC v. Ace American Ins. Co.*,
    No. C13-543RAJ, 2016 WL 4703758 (W.D. Wash. Sept. 7, 2016) .................. 13

*MLC Intellectual Property, LLC v. Micron Technology, Inc.*,
    No. 14-cv-03657-SI, 2019 WL 2863585 (N.D. Cal. July 2, 2019) .................... 12

*Natera, Inc. v. ArcherDX, Inc.*,
    No. CV 20-125-LPS, Dkt. 390 (D. Del. Oct. 25, 2021) .................................... 11

*Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*,
    No. 02 C 3767, 2007 WL 781250 (N.D. Ill. Mar. 12, 2007) ............................... 8

*Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
    637 F.3d 1269 (Fed. Cir. 2011) .......................................................................... 13

*Silvia v. MCI Commc'ns Servs., Inc.*,
    787 F. App'x 399 (9th Cir. 2019) ....................................................................... 12

*Victorino v. FCA US LLC*,
    No. 16-CV-1617-GPC(JLB), 2018 WL 2551312 (S.D. Cal. June 4,
    2018) ................................................................................................................. 11

**Other Authorities**

Fed. R. Civ. P. 26(e) .................................................................................................. 8

**REDACTED**

Fed. R. Civ. P. 30(b)(6) ...............................................................................................2, 9

Fed. R. Civ. P. 37 (c)(1).................................................................................................5

**REDACTED**

## I. INTRODUCTION

Impact Engine respectfully opposes Google's motion to strike that asks the Court to take the severe measure of striking any reliance by Impact Engine's damages expert (James Malackowski) on Google's acquisition of DoubleClick, including a Google business-record ███████████████████████████████████ ███████. Impact Engine does not dispute that it did not specifically cite to the DoubleClick acquisition in its damages contention interrogatory response. But as explained below, Impact Engine's damages expert was still finalizing his theories up until the expert report due date, in large part because of Google's refusal to provide complete damages discovery. Indeed, Impact Engine was forced to file a successful motion to compel on the damages discovery that was granted only a few days before the expert disclosures. Moreover, Google's claims that it will be prejudiced by reliance on its own transaction that was subject to substantial discovery in this case and for which it has full custody and control of all pertinent information is without merit. To the contrary, Mr. Malackowski's primary damages calculation comes in the form of a lump sum ██████████████████████████████████ that was derived in part from ████████████ ██████████████████████ and then adjusted (both up and down) based on his own analysis to account for the revenues and economic circumstances in this case. This is simply not a situation where a plaintiff belatedly disclosed information known only to it, leaving the defendant without any recourse or ability to respond. To the contrary, it was Google's stonewalling and delay to provide discovery that delayed the finalization of Impact Engine's expert's theories in this case. Google's motion should be denied.

First, though Google attempts to claim that Impact Engine was sand-bagging or engaging in improper litigation tactics, the discovery record demonstrates that Google resisted discovery into its financial metrics that resulted in delays to Impact Engine's

**REDACTED**

1   damages analysis and even to the ███████████████. For example, though
2   Google insisted that ████████████████████████████████████████████████
3   ████████████████████████████████████████████████████████████████████
4   causing Mr. Malackowski to shift his analysis. And even then, after the discovery
5   period ended, Impact Engine discovered that Google had not produced █████
6   █████████████ pertaining to the DoubleClick acquisition that Impact Engine's
7   experts would rely upon.

8       Second, it is not credible for Google to claim surprise over its own acquisition
9   and the ████████████████, as this information was produced in response to
10  Impact Engine's discovery requests that sought information about Google's
11  acquisitions of related technologies. Presumably, Google has already produced any
12  pertinent documents that its own damages expert might need to rebut Mr.
13  Malackowski's opinions. And Impact Engine even sought (but was denied) Rule
14  30(b)(6) testimony about the acquisition, expressly telling Google that it would be
15  relevant to the value Google places on related technology. Under these facts, Google's
16  "gotcha" argument clearly elevates form over substance.

17      Third, even if Google were truly surprised, there is no credible prejudice to
18  Google as a result of Mr. Malackowski's reliance on the DoubleClick acquisition █
19  █████████. Google asserts the DoubleClick product as key prior art in this case and
20  therefore the technical comparability of the product has already essentially been
21  conceded. Furthermore, Google has custody and control over the pertinent documents,
22  and its employee ██████ the DoubleClick acquisition even testified at deposition in
23  this case. There is no question that Google could obtain any additional information it
24  needs in relatively short order. And even if Google needs more time, with trial not until
25  August 2022 (Doc. No. 250), Impact Engine already offered to stipulate to an extension
26  of the expert report deadlines (with the Court's permission) to mitigate any alleged
27
28

**REDACTED**

1  prejudice. But Google tellingly refused this offer, exposing its true motivation—
2  keeping relevant evidence from the trier of fact.
3      At bottom, the circumstances simply do not justify striking any part of Mr.
4  Malackowski's report. Google's motion should be denied.
5  **II.    OVERVIEW OF MR. MALACKOWSKI'S REPORT**
6      Mr. Malackowski relies on Google's acquisition of the company DoubleClick as
7  a transaction comparable to that of the patents-in-suit as part of the basis for his primary
8  damages theory. Ex. 1, Malackowski Report at 6-7. Google acquired DoubleClick in
9  2008 to obtain technology that offered online advertisers the ability to customize ad
10 campaigns based on performance on specific websites as well as tracking and analytical
11 services. As part of the acquisition process, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 2, GOOG-IMPE-00148134
16 (the "DoubleClick Valuation") at 148138. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 148141. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 148204.
22     The parties do not appear to dispute that the patents-in-suit and DoubleClick
23 technology apply to the same industry and have many of the same applications. In fact,
24 the DoubleClick DART technology is one of Google's primary references of allegedly
25 invalidating prior art. Given the relevance of DoubleClick, Dr. Wicker, Impact
26 Engine's technical expert, and Mr. Malackowski, considered the technical
27
28

**REDACTED**

1  comparability of the DoubleClick technology to the patents-in-suit.  *See* Ex. 3, Dr.
2  Wicker Report at paras. 40-57, Ex. 1, Malackowski Report at 88-90.
3      Mr. Malackowski's report utilizes the ▓▓▓▓▓▓▓▓▓▓ in two damages
4  theories: (1) his primary market-based approach and (2) an income-based approach.
5      Under the market-based approach, Mr. Malackowski takes ▓▓▓▓▓▓
6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and applies them to the facts
7  of this case.  *See* Ex. 2, GOOG-IMPE-00148134 at 148141; Ex. 1, Malackowski Report
8  at 102.  For example, the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
9  ▓▓▓▓▓▓▓▓.  Ex. 2, GOOG-IMPE-00148134 at 148204; Ex. 1, Malackowski
10 Report at 103.  Mr. Malackowski adjusted this starting point in light of ▓▓▓▓
11 ▓▓▓▓▓▓▓▓▓▓▓ that Google and Impact Engine would have
12 recognized at the hypothetical negotiation in this case, ▓▓▓▓▓▓▓▓
13 ▓▓▓▓▓▓▓▓▓ Ex. 1, Malackowski Report at 98-100.  Mr.
14 Malackowski then made other adjustments to account for differing economic
15 circumstances present in the hypothetical negotiation, such as ▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
17 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
18 ▓▓▓▓▓▓▓▓ Ex. 1, Malackowski Report at 100-101.  This resulted in a lump-
19 sum damages figure of ▓▓▓▓▓▓▓, translating into an effective royalty rate
20 of ▓▓▓▓▓▓▓▓▓.[1]  Ex. 1, Malackowski Report at 6-7.
21     Under the income-based approach, Mr. Malackowski attempts to isolate the
22 revenue attributable to the accused functionalities to the extent possible given the
23 limitations of the metrics data produced by Google.  Ex. 1, Malackowski Report at 7,
24 120-126.  In his report, Mr. Malackowski specifically concludes there are shortcomings
25 with the metrics data that affected the extent to which he could make his calculations
26 for this approach.  *See* Ex. 1, Malackowski Report at 121-126.  As noted above,

---

[1]  This figure excludes any potential damages related to Shopping Ads.

| IMPACT ENGINE'S OPP. TO MTN. TO STRIKE PORTIONS OF THE EXPERT REPORT OF JAMES MALACKOWSKI | 4 | CASE NO. 3:19-CV-01301-CAB-DEB |

**REDACTED**

Google's refusal to provide adequate discovery on this issue, which culminated in a successful motion to compel after the close of discovery, delayed Mr. Malackowski's understanding of these shortcomings. *See* Doc. No. 259. In an effort to mitigate these concerns, Mr. Malackowski uses ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ as a check to establish the reasonableness of the income approach. Ex. 1, Malackowski Report at 7, 120-126. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1, Malackowski Report at 7, 143.

Under either approach, Mr. Malackowski simply uses information ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, a Google business record, in his analysis. He does not infer information from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ based on assumptions or information unknown to Google.

### III. ARGUMENT

Google's motion to strike should be denied because (1) Impact Engine did not act in bad faith in relying on the DoubleClick acquisition, (2) Google is not surprised by the contents of the DoubleClick acquisition and related documents, as such information came from its own files and was the subject of extensive discovery, and (3) Google is not prejudiced by Impact Engine's reliance on it for one of Mr. Malackowski's damages calculations. *See* Fed. R. Civ. P. 37 (c)(1).

#### A. Impact Engine Acted in Good Faith and Did Not Improperly Withhold Reliance on the DoubleClick Acquisition

Impact Engine did not act in bad faith or attempt to engage in attempts to "sand bag" (Mot. at 9) as Google contends, a factor that weighs in favor of denying the motion to strike. *Humane Soc. of U.S. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. DKC 13-1822, 2014 WL 3055568, at *8 (D. Md. July 3, 2014) ("Excluding expert testimony is an extreme sanction and, if the evidence is critical, one not normally to be imposed absent a showing of willful deception or flagrant disregard of the court order by the

---

[2] This figure excludes any potential damages related to Shopping Ads.

**REDACTED**

proponent.") (citations and internal quotation marks omitted). As explained above, Mr. Malackowski's report sets forth two damages theories: (1) an income based approach that attempts to isolate the amount of revenue Google makes from the accused functionalities and (2) a primary theory that uses the DoubleClick acquisition as evidence of comparable technology. While Google is correct that Impact Engine's Response to Interrogatory No. 6 does not expressly cite to ▌▌▌▌▌▌, it overlooks that Google's discovery tactics delayed Impact Engine's damages analysis. Throughout the fact discovery period, Impact Engine was forced to expend tremendous energy into obtaining insight into Google's revenue and metrics information that form the basis of the income based approach, which resulted in multiple disputes over the "financial information and metrics data" that Google insisted could be used by Mr. Malackowski to "assess" the value of the patents-in-suit (in lieu of providing further discovery into its acquisitions). *See* Ex. 4, Google 12/23/2020 Letter at 7.[3]

These disputes—which centered around the scope of metrics data Google would produce and supplementation of an interrogatory that sought explanation of what the various fields in that metrics data meant—ultimately forced Impact Engine to move to compel. Dkt. 252.[4] During the lengthy hearing before Magistrate Butcher on October 12, 2021, Google belatedly disclosed that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌

---

[3] Metrics data refers to information ▌▌▌▌▌▌▌▌▌▌. Some metrics documents include information on ▌▌▌

[4] Impact Engine has sought discovery on a way to apportion the revenue related to the accused functionalities for over a year. The parties have meet and conferred numerous times regarding this issue, exchanged exhaustive correspondence, and participated in motions practice. Google stonewalled Impact Engine's efforts. Google did not provide a complete supplementation of its interrogatory response until Oct. 22, 2021, and produced new metrics documents as recently as Nov. 2, 2021, two days before the submission of Mr. Malackowski's report. *See* Ex. 5 11/2/21 Production Letter.

**REDACTED**

1  ███████████████████████████████████████████████████" Doc. No. 264,
2  10/12/21 Hearing at 15.  While a ruling was pending, ██████████████████
3  ██████████████████ because Impact Engine could not calculate damages in order to
4  provide a demand.  Doc. No. 262.  That is why, though Impact Engine had provided as
5  much detail as possible in its Interrogatory No. 6 response, its October 1, 2021
6  supplemental response incorporated by reference its forthcoming expert reports to
7  account for this ongoing analysis.  Mot. at Ex. H.  Ultimately, Google did not provide
8  its own supplemental interrogatory response regarding the interpretation of the metrics
9  data until Oct. 22, 2021, weeks after the close of fact discovery and two weeks from
10 submission of Mr. Malackowski's report. It was only then that Impact Engine could
11 truly finalize its theories, with fact discovery closed and expert reports forthcoming.
12        In addition, as Impact Engine's analyses progressed, it discovered that Google
13 had not produced ███████████████████████████████████████████████████
14 ███████████████████████████.  Impact Engine promptly requested that it be produced
15 on October 20, 2021 (Mot. at Ex. J), and after initially refusing to produce it as irrelevant
16 to the issues in the case, Google relented and produced it a week later on October 27,
17 2021—just one week before Mr. Malackowski's report was due.  *See* Ex. 6, Google
18 10/22/21 Email (refusing production of ██████████████████████ which was
19 responsive to multiple requests for production); Ex. 7, Google 10/27/21 Production
20 Letter. ████████████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████████████████████
22 ███████  Ex. 3, Dr. Wicker Report at paras. 55-57; Ex. 1, Malackowski Report at
23 88-90.  This further inquiry into the DoubleClick acquisition, at a minimum, made it
24 clear to Google that Impact Engine was still pursuing DoubleClick as a potential basis
25 for its damages claims.
26
27
28

### B. Google Was Aware of the DoubleClick Acquisition and Related Documents Because It Has been the Subject of Significant Discovery

Google cannot claim surprise about the ▮▮▮▮▮ as it was produced from its own files in response to Impact Engine's document requests. *See e.g.*, Exs. 8-9, RFP 48 ("Documents and things related to Google's acquisition of DART and Falk eSolutions."); RFP 50 ("Documents and things related to the valuation of advertising-related companies that Google acquired or is in the process of acquiring, including its acquisition of DoubleClick, DART, and Falk eSolutions."); RFP 51 ("Documents and things sufficient to identify the price Google paid for the acquisition of advertising-related technology, including its acquisition of DoubleClick, DART, and Falk eSolutions."); RFP 146 ("Third party market research reports or analysis prepared in connection with the evaluation of any company Google considered acquiring which, prior to the acquisition, offered products and/or services associated with each of on-line/Internet or mobile advertising."); *see also* RFPs 46, 47, 49, 52, 53, 55, 56, 57, 63, 130, 142, 143, 144, 145. Presumably, in light of these requests, Google has already produced all relevant documents pertaining to the acquisition that it might hope to use to develop its rebuttal expert report. Under similar circumstances, courts have rejected motions to strike. *See Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*, No. 02 C 3767, 2007 WL 781250, at *2, *6 (N.D. Ill. Mar. 12, 2007) (rejecting "Se-Kure's claim that it was ambushed by the defendants' use of a Se-Kure business record that Se-Kure, itself, produced in discovery" because Rule 26(e) "excuses supplementation of prior disclosures and responses where the information was made known during discovery").

Google is also already aware of those individuals involved in the DoubleClick acquisition, having made key employees ▮▮▮▮▮ available for deposition, during which he was asked questions about why Google acquired the company. Ex. 10, ▮▮▮▮ Dep. Tr. at 81:5-20; *see also* Ex. 11, ▮▮▮▮ Dep. Tr. at 89:8-89:11

**REDACTED**

1  ███████████████████████████████ Ex. 11, ██████ Dep. Tr. at 93:10-95:9
2  ███████████████████████████████; Ex. 12, ██████ Dep. Tr. at 227:7-
3  11 ████████████████████████████████████████████████████████████
4  Those individuals, who are readily available to Google in order to provide further
5  context (if needed) about the DoubleClick acquisition, are also listed in Google's initial
6  disclosures and may be trial witnesses.

7        Contrary to Google's claims (Mot. at 3-4), Impact Engine also sought Rule
8  30(b)(6) testimony about the DoubleClick acquisition. Mot. Ex. F, IE's Deposition
9  Notice of Google at Ex. A, Topic 14 of Impact Engine's 30(b)(6) Deposition Notice
10 requesting a witness to testify about "[t]he *valuation* of any Google intellectual property
11 related to the Accused Functionalities and the products through which they are
12 available, Google Advertising Programs, or other online digital advertising technology,
13 whether developed or *acquired by Google*.").[5] In a letter attempting to persuade Google
14 to provide this discovery, Impact Engine explained that the "*valuations of Google's IP*
15 related to the accused functionalities and the product through which they are available
16 *are relevant to the Georgia-Pacific factors*" and to "*how Google views the value of its*
17 *own products and related IP*." See Ex. 13, IE 1/27/2021 Letter. Indeed, Mr.
18 Malackowski would ultimately rely on the ████████████████ for precisely the
19 purpose set forth in Impact Engine's letter, namely as a basis for how ██████████
20 ████████████████████████████████████ *Compare* Ex. 1, Malackowski Report
21 at 6-7, *with* Ex. 13, IE 1/27/2021 Letter.

22       Despite meeting and conferring about this Rule 30(b)(6) topic, Google refused to
23 provide a witness, maintaining its initial assertion that the topic was not relevant and
24 directing Impact Engine to focus its discovery efforts on Google's financial and metrics
25 data (as discussed in Section III.A., *supra*):

---

[5] All emphasis added unless otherwise noted.

**REDACTED**

1      We continue to believe that such information is not relevant because it is
2      not limited to what is accused of infringement. ***Further, Google has***
3      ***produced financial information and metrics data that Impact Engine's***
4      ***damages expert can assess for this purpose***.").

5  *See* Ex. 4, Google 12/23/2020 Letter at 7. Accordingly, Google's attempts to paint the
6  DoubleClick acquisition as having been absent during discovery are simply incorrect
7  and to the extent that any additional discovery on it is outstanding, that is solely due to
8  Google's refusal to provide it earlier.

9      **C.    Google Is Not Prejudiced by Mr. Malackowski's Reliance on**
10             **Google's Own Documents**

11     Google's motion should also be denied because it suffered no prejudice as a result
12 of Mr. Malackowski's reliance on the [REDACTED]. First, as discussed above
13 DoubleClick was already the subject of extensive document discovery—not only with
14 respect to the technical comparability of the DoubleClick product that Google asserts
15 as prior art—but with respect to Google's acquisition of DoubleClick itself. *See* Section
16 III.A., *supra*. Though Google complains that it did not "develop a rebuttal" to the
17 [REDACTED] during fact discovery (Mot. at 9), it does not explain what specific
18 discovery it would have produced. For example, Google vaguely posits there may be
19 evidence of [REDACTED] (Mot. at 10), Google does not shed light on
20 whether that evidence actually exists, and if so, why it did not already produce it in
21 response to Impact Engine's document requests.

22     Second, to the extent any additional discovery regarding the DoubleClick
23 acquisition [REDACTED] exist, they are within the custody and control of
24 Google. DoubleClick was an acquisition made by Google itself and [REDACTED]
25 [REDACTED] *See* Ex. 2, GOOG-
26 IMPE-00148134 at 148138. This is not a situation where one party has decided to rely
27 on its own documentation or evidence after not producing it during fact discovery. To
28

| IMPACT ENGINE'S OPP. TO MTN. TO STRIKE PORTIONS OF THE EXPERT REPORT OF JAMES MALACKOWSKI | 10 | CASE NO. 3:19-CV-01301-CAB-DEB |
|---|---|---|

**REDACTED**

1  the contrary, it was Google that has not been timely in producing information related to
2  its financial metrics and the DoubleClick acquisition.  And Impact Engine has relied on
3  that belatedly produced information in forming its damages positions.  Ex. 3, Dr. Wicker
4  Report at paras. 55-57; Ex. 1, Malackowski Report at 88-90.  Google should not now
5  be rewarded for its own discovery failures.  At bottom, there is no question that Google
6  could, if it wanted, quickly investigate any additional evidence that it may need.

7        Third, any alleged prejudice to Google from having to further investigate its own
8  documents regarding the DoubleClick acquisition can easily be cured by permitting
9  Google to have additional time to prepare its rebuttal expert report—an approach that
10 has been endorsed by Courts instead of penalizing through exclusion.  *Aylus Networks,*
11 *Inc. v. Apple Inc.*, No. 13-cv-04700, 2015 WL 6667460, at *3 (N.D. Cal. Nov. 02, 2015)
12 (denying motion to strike and finding "[e]ven if" the disclosure in the expert's report
13 was "untimely," there was "plenty of time [to] address it by the … deadline for *Daubert*
14 and summary judgment motions" and there was an opportunity to depose the expert on
15 the theory); Ex. 14, *Natera, Inc. v. ArcherDX, Inc.*, No. CV 20-125-LPS, Dkt. 390, at
16 *1 (D. Del. Oct. 25, 2021) (no prejudice where additional depositions and rebuttal
17 expert report available to motion to strike movant).  Indeed, such an approach is
18 particularly appropriate here because trial is not currently set until August 2022 (Doc.
19 No. 250) and therefore the overall schedule would not be impacted.  *Victorino v. FCA*
20 *US LLC*, No. 16-CV-1617-GPC(JLB), 2018 WL 2551312, at *4 (S.D. Cal. June 4,
21 2018) (finding no harm and denying in part motion to strike new data, stating "[i]f
22 [defendant] seeks to depose [the expert] on this new information prior to trial, it may
23 seek leave to do so.  Trial in this case has not been set so it will not disrupt the trial, and
24 no bad faith has been alleged for Plaintiffs' failure to timely disclose the information.").
25 Any argument against such an approach by Google would merely be to obtain a tactical
26 advantage.  Tellingly, when Impact Engine offered to resolve this dispute by agreeing
27 that Google could have additional time (two weeks or another reasonable amount of
28

| IMPACT ENGINE'S OPP. TO MTN. TO STRIKE PORTIONS OF THE EXPERT REPORT OF JAMES MALACKOWSKI | 11 | CASE NO. 3:19-CV-01301-CAB-DEB |
|---|---|---|

**REDACTED**

time of its own proposal) to prepare its rebuttal expert reports, Google refused, stating that no "[a]dditional time" would ever solve the problem. Ex. 15, 11/15/21 Roberts Email. Given that Mr. Malackowski relied on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and not other evidence unknown to Google, Google's positon that additional time could not cure any prejudice is simply not credible.[6]

Finally, none of Google's cases require the Court to strike any portion of Mr. Malackowski's report because they are factual dissimilar to what happened here. For example, in *MLC Intellectual Property, LLC v. Micron Technology, Inc.*, No. 14-cv-03657-SI, 2019 WL 2863585, at *14-15 (N.D. Cal. July 2, 2019), the Court excluded expert testimony that a lump sum reflected a .25% royalty rate because the factual basis for that testimony was not produced during fact discovery, whereas here, Mr. Malackowski relies solely on documents that Google produced. Google also relies on inapposite cases where new damages theories—with no factual tie to documents produced discovery discovery— were disclosed in response to motions for summary judgement. See *Elliott v. Google, Inc.*, 860 F.3d 1151, 1161 (9th Cir. 2017) (affirming district court's exclusion of new evidence produced to rebut summary judgment motion after fact and expert discovery closed); *Silvia v. MCI Commc'ns Servs., Inc.*, 787 F. App'x 399, 400 (9th Cir. 2019) (affirming the district court's exclusion of new damages theory raised in summary judgment opposition papers); *Am. Cas. Co. of Reading, Pa. v. Baker*, 22 F.3d 880, 886 n. 3 (9th Cir. 1994) (affirming grant of summary judgment on other grounds, but musing in dictum that Court would not disagree with trial court's order in factually dissimilar case). Furthermore, this is not a situation where a new damages theory was disclosed on the eve of trial or where Mr. Malackowski attempted

---

[6] Google will also have the full opportunity to rebut Mr. Malackowski's adjustments to the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ which are based on Mr. Malackowski's own expert opinion and application of the facts of this case, through its own rebuttal report and the forthcoming deposition of Mr. Malackowski.

**REDACTED**

to testify to theories not disclosed in his expert report. *See Ingenco Holdings, LLC v. Ace American Ins. Co.*, No. C13-543RAJ, 2016 WL 4703758, at *2 (W.D. Wash. Sept. 7, 2016) (damages theory disclosed the day before all discovery closed where trial was to commence the following month); *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1287 (Fed. Cir. 2011) (discussing precluding expert from testifying about matters not in his expert report).

## IV. CONCLUSION

For the reasons stated above, Impact Engine respectfully requests that Google's motion to strike be denied.

DATED: November 24, 2021

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Garret A. Leach*
Garret A. Leach, P.C.

Attorneys for Plaintiff
IMPACT ENGINE, INC.

REDACTED

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document has been served on November 24, 2021 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile, and/or overnight delivery.

DATED: November 24, 2021     By: */s/* Garret A. Leach

Attorneys for Plaintiff
IMPACT ENGINE, INC.