**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
David A. Perlson (Ca. Bar No. 209502)

2

davidperlson@quinnemanuel.com
50 California Street, 22nd Floor

3

San Francisco, California 94111-4788
Telephone: (415) 875-6600

4

Facsimile: (415) 875-6700

5

David A. Nelson (Ill. Bar No. 6209623)
davenelson@quinnemanuel.com

6

191 N. Wacker Drive Suite 2700
Chicago, IL 60606

7

Telephone:   (312) 705-7400
Facsimile:    (312) 705-7401

8

9

PAUL HASTINGS LLP
Christopher H. McGrath (Ca. Bar. No. 149129)

10

chrismcgrath@paulhastings.com
695 Town Center Drive, 17th Floor

11

Costa Mesa, CA  92626-1924
Telephone: (714) 668-6200

12

Facsimile: (714) 979-1921

13

Attorneys for Defendant,
GOOGLE LLC

14

15

UNITED STATES DISTRICT COURT

16

SOUTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| IMPACT ENGINE, INC., | CASE NO. 19-CV-1301-CAB-DEB |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GOOGLE LLC'S *DAUBERT* MOTION AND MOTION TO STRIKE PORTIONS OF IMPACT ENGINE'S EXPERT REPORTS** |
| vs. | |
| GOOGLE LLC, | |
| Defendant. | |
| | Hon. Bencivengo, Courtroom:  15A |
| | Complaint Filed:  July 15, 2019 Trial Date:  None Set |

18

19

20

21

22

23

24

25

26

27

28

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

<u>NOTES ON CITATIONS</u>

1.      Exhibit A refers to cited excerpts of Dr. Stephen Wicker's Opening Expert Report, dated November 5, 2021.

2.      Exhibit B refers to cited excerpts of Mr. James Malackowski's Opening Expert Report, dated November 5, 2021.

3.      Exhibit C refers to cited excerpts of Dr. Stephen Wicker's Rebuttal Expert Report, dated December 17, 2021.

4.      Exhibit D refers to cited excerpts of Mr. James Malackowski's Rebuttal Expert Report, dated December 17, 2021.

5.      Exhibit E refers to cited excerpts of the deposition of Dr. Stephen Wicker, taken on January 19 and 21, 2022.

6.      Exhibit F refers to cited excerpts from Impact Engine's Final Infringement Contentions.

7.      Exhibit G refers to cited excerpts of the deposition of Dr. Jonathan Krein.

8.      Exhibit H refers to cited excerpts of Impact Engine's Responses to Google's First Set of Interrogatories, Interrogatory No. 1.

9.      Exhibit I refers to cited excerpts of the deposition of Neil Greer, taken on August 24 and 25, 2021.

10.     Exhibit J refers to a document Impact Engine produced as IE00024806-09.

11.     Exhibit K refers to a document Impact Engine produced as IE00025537-40.

12.     All emphasis in quotes are added unless noted otherwise.

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

1

2

## TABLE OF CONTENTS

**Page**

3  LEGAL STANDARD ................................................................ 1

4  I.      IE'S EXPERT OPINIONS ON UNACCUSED SHOPPING ADS
         SHOULD BE STRICKEN. ............................................... 2

5

6  II.     DR. WICKER'S "GOOGLE ADS" OPINIONS SHOULD BE
         STRICKEN.......................................................................... 4

7  III.    DR. WICKER'S OPINIONS INCONSISTENT WITH THE COURT'S
         CLAIM CONSTRUCTION ORDER SHOULD BE EXCLUDED. ............... 6

8

9  IV.     DR. WICKER'S BOILERPLATE DOCTRINE OF EQUIVALENTS
         OPINIONS SHOULD BE PRECLUDED. ....................................... 6

10  V.     IE'S EXPERTS' OPINIONS AND TESTIMONY AS TO
         SECONDARY CONSIDERATIONS SHOULD BE EXCLUDED.............. 7

11

12         A.     IE's Experts Provide Unsupported Opinions On Copying. ................. 8

13         B.     IE's Experts Provide No Nexus for Commercial Success. ..................... 9

         C.     IE's Experts Provide No Nexus For the Remaining Secondary
14                Considerations.......................................................... 10

15  VI.    DR. WICKER'S OPINIONS ON IE'S UNDISCLOSED PRIORITY
         DATES SHOULD BE PRECLUDED. ........................................... 13

16

17  VII.   IE'S EXPERTS SHOULD BE PRECLUDED FROM PROVIDING
         UNDISCLOSED DAMAGES RELATED OPINIONS. .............................. 15

18

19

20

21

22

23

24

25

26

27

28

01980-00150/13195969

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>CASES</u>

*Avila v. Willits Env't Remediation Tr.*,
  633 F.3d 828 (9th Cir. 2011) ............................................................... 2

*Cohlmia v. Ardent Health Servs., LLC*,
  254 F.R.D. 426 (N.D. Okla. 2008) ....................................................... 7

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
  424 F.3d 1168 (Fed. Cir. 2005) ............................................................ 6

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) .............................................................................. 2

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ............................................................... 2

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ............................................................. 2

*In re Nilssen*,
  837 F.2d 1098 (Fed. Cir. 1989) ......................................................... 12

*Ingenco Holdings, LLC v. Ace American Ins. Co.*,
  2016 WL 4703758 (W.D. Wash. Sept. 7, 2016) ............................... 14

*Koninklijke Philips Elecs. N.V. v. Zoll Lifecor Corp.*,
  No. CV 12-1369, 2017 WL 3140798 (W.D. Pa. July 25, 2017) ....... 15

*Kumho Tire Co. v. Carmichael*,
  536 U.S. 137 (1999) .............................................................................. 2

*Lust By & Through Lust v. Merrell Dow Pharm., Inc.*,
  89 F.3d 594 (9th Cir. 1996) ................................................................. 2

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
  571 U.S. 191 (2014) .............................................................................. 3

*Moriarty v. American General Life Ins. Co.*,
  2019 WL 1559143 (S.D. Cal. April 10, 2019) .................................. 14

*Novartis AG v. Torrent Pharms. Ltd.*,
  853 F.3d 1316 (Fed. Cir. 2017) ............................................................ 8

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006) ............................................................ 9

*Orthopedic Equip. Co. v. United States*,
  702 F.2d 1005 (Fed. Cir. 1983) ......................................................... 12

-ii-

Case No. 19-CV-1301-CAB-DEB

GOOGLE'S DAUBERT MOTION AND MOTION TO STRIKE EXPERT REPORTS

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

*PersonalWeb Tech. LLC v. Int'l Business Machines Corp.*,
2017 WL 8186294 (N.D. Cal. July 25, 2017)...................................................6

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010)...................................................................2

*Robertson Transformer Co. v. Gen. Elec. Co.*,
No. 12 C 8094, 2016 WL 4417019 (N.D. Ill. Aug. 19, 2016) ......................15

*Samuels v. Holland Am. Line-USA Inc.*,
656 F.3d 948 (9th Cir. 2011)...................................................................2

*Tanabe Seiyaku Co., Ltd. v. U.S. Int'l Trade Comm'n*,
109 F.3d 726 (Fed. Cir. 1997)...................................................................3

*ZUP, LLC v. Nash Mfg., Inc.*,
896 F.3d 1365 (Fed. Cir. 2018).................................................................8

**<u>RULES</u>**

Fed. R. Civ. P 26(a)(2)(B) ..........................................................................7

Fed. R. Civ. P. 26....................................................................................1

Fed. R. Civ. P. 26(a)(2).............................................................................15

Fed. R. Civ. P. 37....................................................................................15

Fed. R. Civ. P. 37(e)................................................................................14

Fed. R. Evid. 702..............................................................................1, 2, 7

01980-00150/13195969

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

1    Impact Engine's ("IE's") expert reports from Dr. Stephen Wicker, Dr. Jonathan
2  Krein, and Mr. James Malackowski contain opinions that are inconsistent with this
3  Court's orders and not admissible under Fed. R. Evid. 702. For example, IE's expert
4  reports assert infringement and seek ███████████████████████████████████████
5  ████████████████  for Google Shopping Ads, which the Court already ruled was not itself
6  an accused ad creation tool in IE's infringement contentions. IE and its experts also
7  disregarded this Court's orders by broadly asserting infringement by "Google Ads,"
8  with no attempt to show how each of the various tools and products Dr. Wicker lumps
9  into "Google Ads" meets every element of every asserted claim. Dr. Wicker further
10 disregards the Court's orders by offering infringement opinions directly contrary to the
11 Court's claim constructions. Dr. Wicker's opinions also fail to comply with basic tenets
12 of Fed.R.Civ.P. 26. He provides mere boilerplate opinions on the doctrine of
13 equivalents. He opines on the supposed comparability to the asserted patents of the
14 DoubleClick technology acquired by Google and Google patent license and purchase
15 agreements, but admits he does not explain the basis for these opinions in his expert
16 report. Both Dr. Wicker and Mr. Malackowski also offer legally irrelevant opinions on
17 secondary considerations of non-obviousness that make no attempt to provide evidence
18 of a nexus between the claimed invention and the secondary consideration, required as
19 a matter of law. Finally, through Dr. Wicker, IE seeks to introduce theories on
20 conception and reduction to practice dates that were not disclosed during fact
21 discovery. Google's motion should be granted and IE's improper and inadmissible
22 expert opinions and any related testimony should be excluded.

23                              **LEGAL STANDARD**

24   Federal Rule of Evidence 702 allows an expert to offer opinions at trial only if
25 "(1) the expert's scientific, technical, or other specialized knowledge will help the trier
26 of fact to understand the evidence or to determine a fact in issue; (2) the testimony is
27 based on sufficient facts or data; (3) the testimony is the product of reliable principles
28 and methods; and (4) the expert has reliably applied the principles and methods to the

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

1 facts of the case." Fed. R. Evid. 702.

2 The Court acts as gatekeeper, and "must assure that the expert testimony 'both
3 rests on a reliable foundation and is relevant to the task at hand.'" *Primiano v. Cook*,
4 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509
5 U.S. 579, 597 (1993)). In other words, "the trial court must act as a 'gatekeeper' to
6 exclude junk science that does not meet Federal Rule of Evidence 702's reliability
7 standards by making a preliminary determination that the expert's testimony is
8 reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing
9 *Kumho Tire Co. v. Carmichael*, 536 U.S. 137, 147-49 (1999)); *see also i4i Ltd. P'ship*
10 *v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011)
11 ("*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions."). The
12 proponent of the expert's testimony bears the burden of proving admissibility. *Lust By*
13 *& Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

14 Expert opinion must reflect "reliable principles and methods," which require
15 "more than subjective belief or unsupported speculation." Fed. R. Evid. 702; *Daubert*,
16 509 U.S. at 593. Courts exclude expert testimony that is speculative or not sufficiently
17 fact-based as unreliable. *Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 952 (9th
18 Cir. 2011); *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011),
19 *cert denied*, 565 U.S. 827. The Court "must assure that the expert testimony 'both rests
20 on a reliable foundation *and* is relevant to the task at hand.'" *Primiano*, 598 F.3d at 564
21 (quoting *Daubert*, 509 U.S. at 597).

22 **I.  IE'S EXPERT OPINIONS ON UNACCUSED SHOPPING ADS SHOULD
BE STRICKEN.**

23 The applicable rules here were simple. For IE to accuse a Google product, it
24 needed to provide an infringement chart that discloses where each and every element of
25 that product meets the elements of each asserted claim. Patent L.R. 3.1.c; 5/20/21 Tr. ,
26 4:25-5:4 (IE must "[s]how how each element of each claim you're asserting is present
27 in every device or system that you're asserting infringes" in its infringement
28

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

contentions).  At the July 2 hearing, the Court found, "What we're talking about here is a system for building ads." 7/2/21 Tr., 22:1-2. In denying IE's request to compel technical discovery as to Shopping Ads, the Court found the accused tools that IE "identified" in its contentions were Display Ad Builder, Responsive Display Ads, Lightbox, Ad Canvas, and YouTube Builder (the "Accused Tools").  *Id.* at 22:5-8. The Court directed:

> **Now, I think you need to go forward with the tools you've identified** and be able to demonstrate how those tools meet the elements of the claims. **And using as examples, yes, ads that -- that are built using those elements of those claims of *those* tools.**

*Id.* 22:14-18 (emph. added). "I'm not going to exclude the -- the actual ads that are created and, therefore, **it may be subject to a damages claim, *as long as they are tied to these tools*** that you show are used to create them." *Id.* 24:16-22 (emph. added); 29:23-30:13. Of course, to show infringement, it is necessary to identify *what* specific elements in *each* accused product meet *each* element in *each* asserted claim. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 198–200 (2014); *Tanabe Seiyaku Co., Ltd. v. U.S. Int'l Trade Comm'n*, 109 F.3d 726, 731 (Fed. Cir. 1997).

The Court did grant IE's request for financial information relating to Shopping Ads, but only because the Court didn't "think the – the burden on Google, at this point, of producing that financial information regarding revenue from the – the creation of shopping ads is so hard that – and in light of the fact that there appears to have been a previous agreement to do so in front of the magistrate judge," and that it would be subject to the same qualification regarding demonstrating each element of the asserted claims for the Accused Tools. 7/2/21 Tr., 30:5-10, 24:16-22. In doing so, the Court explicitly noted that Google's production of Shopping Ads financial information "does not mean it's ever going to be admitted or see the light of day …" *Id.* 29:23-30:4. Rather, the Court ruled IE was obligated to show that Shopping Ads are produced by one of the Accused Tools and meets all the elements of a claim that the Court found IE had actually charted in its infringement contentions. *Id.* 29:23-30:13, 24:16-25:2.

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

1    Yet, in its expert reports, IE ignored the Court's direction and did not limit the

2    accused products to the five Accused Tools. Mr. Malackowski opines ████████

3    ████ in damages are warranted for Shopping Ads.[1] Ex. B, 5. In his report, Dr.

4    Wicker does **conclude** that Google's Shopping Ads infringes the asserted claims. *E.g.*

5    Ex. A, ¶¶ 312, 316, 325, 345, 375, 417, 436. But, as with Plaintiff's infringement

6    contentions, Dr. Wicker presents no evidence that Shopping Ads are created using any

7    of the five Accused Tools. Indeed, Dr. Wicker admitted at his deposition that he points

8    to no examples in his report of any "Shopping Ads" created by Display Ad Builder,

9    Responsive Display Ads, Lightbox Ads, Ad Canvas, or YouTube Video Builder. Ex. E,

10   27:1-28:11. Further, as discussed in Google's Motion for Summary Judgment, not only

11   does Dr. Wicker fail to tie Shopping Ads to any Accused Tool, he fails to provide

12   allegations as to Shopping Ads for every element of every asserted claim, an

13   independent basis to exclude expert opinions as to Shopping Ads as they are legally

14   irrelevant. *See* Google's Mot. for Summary Judgement, Section V.

15   Accordingly, any reference to Shopping Ads in Dr. Malackowski and Dr.

16   Wicker's Reports should be stricken, and IE should be precluded from relying on

17   Shopping Ads as an accused product at trial. *See generally* Ex. A, Section IX; Ex. B, 3-

18   8, 61-63, 106-113, 121, 127-130, 143-144.

19   **II.    DR. WICKER'S "GOOGLE ADS" OPINIONS SHOULD BE STRICKEN.**

20   IE further ignored the Court's direction through Dr. Wicker's failure to

21   separately address each of the Accused Tools on a claim by claim basis. Instead, Dr.

22   Wicker's infringement analysis is broken up into three main sections regarding

23   Google's accused products, "Google Ads," Ad Canvas and YouTube Video Builder.

24   Thus, Dr. Wicker does at least have separate sections that address Ad Canvas and

25   YouTube Video Builder. But in his "Google Ads" section, Dr. Wicker lumps together

26

27   [1]   Google will file a separate *Daubert* motion with regard to Mr. Malackowski's
     damages opinions later, but Google included some deficiencies in Mr. Malackowski's

28   herein when they overlapped with issues with Dr. Wicker's opinions.

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

1   Display Ad Builder, Responsive Display Ads, and Lightbox Ads in what he refers to as
2   "Google Ads" as infringing the asserted claims, just like IE improperly did in its
3   infringement contentions. Compare Dkt. 220-03 with *e.g.* Ex. A, 54-55, 91-94, Section
4   IX. As Google previously noted to the Court in reference to IE's request for discovery
5   on Shopping Ads, Google Ads is an overarching system that includes all sorts of
6   functionalities not relevant to the patents-in-suit. Dkt. 220, 2. The Court noted at the
7   July 2 hearing that IE's "Google Ads" claim chart for the '497 patent in its
8   infringement contentions, which is very similar to Dr. Wicker's narrative in his report,
9   was of "no help at all to me to understand what exactly Impact Engine is accusing…."
10  7/2/21 Tr., 4:3-5. The same is true of Dr. Wicker's Google Ads discussion in which he
11  does not even try to break out his allegations into the Accused Tools for any asserted
12  patent. Ex. A, 54-55, 91-94. In addition to Shopping Ads discussed above, Dr. Wicker's
13  infringement theories are sprinkled with random, inconsistent allegations as to other ads
14  created by other unspecified tools such as "Gmail Ads," "Video Ads," "App Ads,"
15  "Local Ads," and "Discovery Ads," Ex. A, Sections VIII.A.a.3 through VIII.A.a.8, and
16  do not show which of these ads are supposedly created by any specific Accused Tool.
17  Thus, while it appears that the "Google Ads" section of Dr. Wicker's report purports to
18  include Display Ad Builder, Responsive Display Ads, and Lightbox Ads, at no point
19  does Dr. Wicker attempt to "[s]how how each element of each claim you're asserting is
20  present in every device or system that you're asserting infringes," as the Court ordered.
21  5/20/21 Tr., 5:2-4. Indeed, in his deposition, Dr. Wicker admitted that he did not break
22  out his analysis of whether individual Accused Tools practiced certain claim elements.
23  Ex. E, 66:5-68:19 (admitting that he did not break out the "project viewer" that is used
24  in Display Ad Builder, RDA, and Lightbox). Similarly, IE's source code expert Dr.
25  Krein, upon whom Dr. Wicker relies, admitted that when he analyzed "Google Ads," he
26  did not attempt to identify in a "precise way" whether the functionalities to which he
27  points in his report apply to various Accused Tools. Ex. G, 171:2-12. Accordingly, Dr.
28  Wicker's and Dr. Krein's opinions and allegations as to ad creation tools they bundle

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

1   together under "Google Ads," violate the Court's specific directive, are nonsensical and

2   would simply serve to confuse the jury. They should be excluded.

3   **III.   DR. WICKER'S OPINIONS INCONSISTENT WITH THE COURT'S CLAIM CONSTRUCTION ORDER SHOULD BE EXCLUDED.**

4          As described in detail in Google's Motion for Summary Judgment, filed

5   concurrently herewith, through Dr. Wicker's opinions, IE interprets the asserted claims

6   in a manner that the Court already rejected in construing the terms "project viewer,"

7   "broadcast," "communication," and "compiler / compiling engine." *See* Google's Mot.

8   for Summary Judgement, Sections I-IV. The parties had three rounds of claim

9   construction briefing, including declarations from Dr. Wicker, and three claim

10  construction hearings, including testimony from Dr. Wicker, and the Court issued two

11  claim construction orders. Dkt. 87-3, 107, 108, 114, 116, 131, 147, 148, 178, 179, 179-

12  3, 189, 190, 199, 205. Dr. Wicker should be precluded from providing opinions that are

13  inconsistent with the Court's constructions of these terms. *PersonalWeb Tech. LLC v.*

14  *Int'l Business Machines Corp.*, 2017 WL 8186294, at *5 (N.D. Cal. July 25, 2017)

15  (holding that "neither party may make arguments to the jury that contradict the Court's

16  claim constructions or otherwise relate to the interpretation of claim terms"); *CytoLogix*

17  *Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) (holding that

18  presenting expert witness testimony regarding claim construction is improper because

19  "[t]he risk of confusing the jury is high when experts opine on claim construction

20  before the jury").

21  **IV.   DR. WICKER'S BOILERPLATE DOCTRINE OF EQUIVALENTS OPINIONS SHOULD BE PRECLUDED.**

22

23         The Court should strike Dr. Wicker's doctrine of equivalents opinions because

24  they are merely boilerplate. *See e.g.* Ex. A, ¶¶ 274, 275, 391, 394, 508; *see generally*

25  Ex. A Sections IX, X, and XI. For example, Dr. Wicker states: ███████████████

26  ████████████████████████████████████████████████████

27  ███████████████████████████" *Id.*at ¶ 265. Dr. Wicker concludes

28  that "equivalent" steps are performed, but does not identify what they are or how they

-6-

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

1  are "equivalent." As another example, Dr. Wicker states that the "rendering" function is

2  satisfied under the doctrine of equivalents because "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *Id.* at ¶ 275.

6  Again, he does not explain the basis for this opinion. In fact, in the following sentence,

7  he says that "under the Court's interpretation of the intrinsic record, the patent

8  recognizes 'rendering' . . . and 'serializing' as equivalent functionalities." *Id.* This does

9  not even make sense; it is not clear if Dr. Wicker's position is that they are the same,

10  different, or equivalent. As another example, Dr. Wicker opines that to the extent

11  Google does not process source code into machine or object code, "it satisfies the claim

12  construction [for compiler] under the doctrine of equivalents. For example, Google's

13  software performs substantially the same function . . . in substantially the same way (a

14  software-based conversion or translation process from one form to another) to achieve

15  substantially the same result (placing the computer code/data in a form that can be read

16  and/or executed by a recipient's browser and/or transported)." *Id.* at ¶ 394. Again, he

17  does not explain the basis for this opinion. Dr. Wicker's failure to explain the "bases"

18  for his opinions on the doctrine of equivalents violates Rule 26(a)(2)(B). *Cohlmia v.

19  Ardent Health Servs., LLC*, 254 F.R.D. 426, 430 (N.D. Okla. 2008) (granting motion to

20  strike expert testimony where the experts' reports included conclusions, but not the

21  bases and reasons for the conclusions). Moreover, his boilerplate opinions on the

22  doctrine of equivalents are legally irrelevant because such thin analysis cannot show

23  infringement, and thus, is not helpful to the jury. Fed. R. Evid. 702.

24  **V.    IE'S EXPERTS' OPINIONS AND TESTIMONY AS TO SECONDARY
        CONSIDERATIONS SHOULD BE EXCLUDED.**

25

26      While a patentee may attempt to rebut obviousness by setting forth evidence of

27  secondary considerations, there must be a "nexus" (or link) between such secondary

28  considerations and the novel features of the claimed invention. *Novartis AG v. Torrent*

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

1    *Pharms. Ltd.*, 853 F.3d 1316, 1330-31 (Fed. Cir. 2017). It is the plaintiff's burden to
2    establish a nexus between any secondary considerations and the limitations recited in
3    the asserted claims, and to do so with objective evidence. *ZUP, LLC v. Nash Mfg., Inc.*,
4    896 F.3d 1365, 1373-74 (Fed. Cir. 2018). While IE's experts *conclude* there is a nexus
5    between each secondary consideration and the elements of the asserted claims, they do
6    not even attempt to provide a nexus to what is actually claimed as compared to what
7    indisputably existed in the art. They also go beyond their expertise in making
8    conclusory and unreliable opinions. Ex. C, ¶¶ 1081-1126; Ex. D, 6-29.

9    **A.    IE's Experts Provide Unsupported Opinions On Copying.**

10          The Court dismissed IE's willfulness claims alleging copying. Dkt. 40. Still, IE
11   tries to get its baseless allegations of copying before the jury under the guise of copying
12   for secondary considerations. Yet, Dr. Wicker provides no relevant expert testimony on
13   copying. Dr. Wicker simply provides a short summary of what he contends happened
14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. C, ¶ 1097; Ex. E, 299:23-301:12 (explaining that
15   his report just summarizes the evidence that was provided to him). The underlying facts
16   are what they are and do not need any commentary by Dr. Wicker, essentially as an
17   attorney mouthpiece, for the jury to understand what occurred. Indeed, in his
18   deposition, he admitted that *he did not even opine that copying occurred*. Ex. E,
19   301:18-24 ("I'm saying that there is evidence supporting nonobviousness.  I'm not
20   saying that I've concluded . . . [t]hat copying occurred.").

21          Moreover, the documents and testimony Dr. Wicker cites indicate at most ▮▮▮
22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But Dr. Wicker *does not allege* that this ▮▮▮▮▮▮▮▮
25   practices the asserted claims. With no nexus to the asserted claims, any supposed
26   copying ▮▮▮▮▮▮▮▮▮▮▮▮, and any opinion from IE's experts on it, is legally
27
28

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

1   irrelevant.[2]

2        Dr. Malackowski, an economist, does not provide relevant expert testimony on

3   copying either. Mr. Malackowski similarly acknowledged that he was "not aware of

4   direct evidence confirming that Google copied IE's inventions at issue in this matter."

5   Ex. D, 27. It is difficult to see what possible help he could provide to the jury in

6   interpreting what happened at these meetings. His report certainly reveals none. At best,

7   it seems his opinion on copying is that 1) he is aware of no direct evidence of copying

8   and 2) ███████████████████████████████████. *Id.*, 27-29. This is

9   not proper expert testimony.

10        **B.**    **IE's Experts Provide No Nexus for Commercial Success.**

11        The commercial success of Google's accused products—by itself—has no

12   bearing on whether the asserted claims are obvious. Rather, "[e]vidence of commercial

13   success . . . is only significant if there is a nexus between the claimed invention and the

14   commercial success. . . . [I]f the feature that creates the commercial success was known

15   in the prior art, the success is not pertinent." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d

16   1299, 1311-12 (Fed. Cir. 2006) ); *Wyers*, 616 F.3d at 1246. Here too, IE's experts fail

17   to demonstrate any nexus between Google's success and the asserted patents.

18        Dr. Wicker admits, as he must, there are contributions to Google's success that

19   have nothing to do with the asserted claims. Ex. E, 302:25-305:24. In his report, Dr.

20   Wicker points to several "benefits" of certain features in Google's products that he

21   ***concludes*** are "directly tied to the features of the patented technology." Ex. C, ¶¶ 1101-

22   05. But he does not actually tie the features in Google's products to specific elements of

23   the asserted claims. For example, Dr. Wicker admitted that he did not address the

24   "project viewer" as part of his secondary considerations analysis. Ex. E, 341:2-342:4.

25   Yet, when asked what elements of the asserted claims did not exist in the prior art, he

26

27      [2]  IE's allegations regarding copying are inadmissible under FRE 402, 403. If

28   necessary, Google will raise a *motion in limine* at a later time as to them.

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

1    identified only the "project viewer" for almost every claim. *Id.*, 290:3-292:18, 294:16-
2    296:6. Further, the Court already found during claim construction at IE's urging (*e.g.*
3    Dkts. 148 and 205) and in the Section 101 Order (Dkt. 268, 9-10), that numerous
4    elements of the patents were known and conventional. Yet, because he does not discuss
5    the claim elements at all, Dr. Wicker does not even try to tie the supposed benefits of
6    the patents to what the Court has not already found to be known and conventional,
7    making his opinion legally irrelevant and unreliable. For his part, Mr. Malackowski
8    describes increases in Google's display ad revenue and share of what he terms the
9    display ad market. Ex. D, 13-15. But his attempt to tie this increase to the patents is
10   from Dr. Wicker, who himself failed to do so in any reliable manner. *Id.*, 13-17.

11        Dr. Wicker also asserts there is a nexus between the IE's commercial success and
12   the asserted claims. Ex. C, ¶ 1106.  But he fails to identify any feature of any IE
13   technology that IE contends embodies the asserted patents that supposedly contributed
14   to IE's alleged commercial success, let alone that any such feature is not one that the
15   Court already found was known the prior art. In any event, with respect to IE's
16   purported commercial success, Dr. Wicker admitted his knowledge of it is "nothing
17   substantial." Ex. E, 306:17-24. He did not even know whether IE has been profitable or
18   why it was or was not. *Id.*, 368:17-20.

19        **C.    IE's Experts Provide No Nexus For the Remaining Secondary
               Considerations.**

20        IE's experts' opinions on the remaining secondary considerations are similarly
21   infirm. For example, Dr. Wicker purports to set forth examples of "a long-felt but
22   unsolved need in the industry for the solution offered by the patented invention" and
23   how "[o]thers attempted to meet [these needs] but failed." *See* Ex. C, ¶¶ 1084-94. Dr.
24   Wicker points to things like "high production costs, slow production time, and low
25   loading rates due to large file sizes" that supposedly hindered the widespread adoption
26   of rich media ads online. *Id.*, ¶ 1086. But Dr. Wicker fails to explain how the asserted
27   claims allegedly overcame these obstacles, much less that anything in the claims that
28

-10-                          Case No. 19-CV-1301-CAB-DEB

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

1  did so was not already in the prior art. *Id*. Indeed, for each of the supposedly alleged

2  unsolved needs, Dr. Wicker fails to even recite the asserted claims. *Id.*, ¶ 1087-1093.

3  And while Dr. Wicker again points to IE's supposed success and base and "the rapid

4  adoption of Google's infringing technology" (*Id.*, ¶ 1094), he again does not tie any

5  alleged commercial success to any elements of the claimed inventions.

6          With respect to long-felt need, Mr. Malackowski does not offer an opinion on

7  whether the need is "a persistent one recognized by ordinary skilled artisans," and that

8  was not "satisfied by another before [the] invention [in the patents-in-suit]," deferring

9  to Dr. Wicker because these elements are technical. Ex. D, 18. Yet, in a single sentence,

10  Mr. Malackowski opines that the growth in Google's display ad business and the

11  relationship of that growth to the asserted claims confirms that the asserted claims

12  satisfy a long-felt need. *Id.* Mr. Malackowski refers back to his discussion of Google's

13  commercial success to support this opinion, which failed to establish a nexus between

14  Google's commercial success and the asserted claims. *Id.*, 13-18.

15          As for industry praise, Dr. Wicker asserts that "Google and others' interest in

16  Impact Engine's technology demonstrates the industry's excitement about the patented

17  invention." Ex. C ¶ 1108. As noted above, there is no nexus shown between the patents

18  and any interaction with Google, much less any "excitement" over IE's products that is

19  tied to the claimed elements of the asserted patents. Dr. Wicker also points to customer

20  praise of certain features in Google's products and IE's technology, and asserts that

21  "[b]ecause this praise is tied to the features and benefits of the patented technology,

22  there is a nexus." *See id.*, ¶¶ 1109-17. But here too, Dr. Wicker does not even try to tie

23  the praised features in Google's products and IE's technology to specific elements of

24  the asserted claims, let alone show that those elements were not among those the Court

25  already found were familiar to one of skill in the art.

26          Mr. Malackowski opines that IE received industry praise for ImpactEngine.com,

27  and Google received industry praise for its display ad technology. Ex. D, 18. His bullet

28  point list of "industry praise" for ImpactEngine.com, however, does not tie the praised

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

1   features to the asserted claims. *Id.*, 18-21. The same is true of Mr. Malackowski's list of

2   "industry praise" for Google's display ad business; he did not tie the praised features to

3   the asserted claims. *Id.*, 21-25.

4          Further, Dr. Wicker asserts that there was "[s]kepticism held by POSITAs that

5   the invention would work as intended." Ex. C, ¶ 1118. Dr. Wicker cites several articles

6   published on digital marketing websites discussing obstacles faced by advertisers in

7   creating and deploying rich media advertisements. *Id.*, ¶¶ 1119-22. Even if the cited

8   evidence showed industry skepticism about the value and effectiveness of rich media

9   advertisements, however, skepticism that *the claimed invention would work as intended*

10  is what is required to show non-obviousness. *In re Nilssen*, 837 F.2d 1098 (Fed. Cir.

11  1989) ("The Commissioner's argument that this is a hindsight rationalization for a lack

12  of economic incentive to combine, even if appellant's figures are correct, is persuasive.

13  In any event, it does not go to technical reasons why the combination would not have

14  been obvious. Those, not business reasons, control the obviousness determination");

15  *Orthopedic Equip. Co. v. United States*, 702 F.2d 1005, 1013 (Fed. Cir. 1983) ("In

16  other words, the fact that the two disclosed apparatus would not be combined by

17  businessmen for economic reasons is not the same as saying that it could not be done

18  because skilled persons in the art felt that there was some technological incompatibility

19  that prevented their combination. Only the latter fact is telling on the issue of

20  nonobviousness."). Yet, Dr. Wicker does not cite any articles that discuss specific

21  technological approaches to creating and deploying rich media ads, let alone an article

22  expressing skepticism about whether the technological approach actually taken by the

23  claimed inventions would work as intended.

24          Similarly, Mr. Malackowski states that "public information indicates skepticism

25  in the industry regarding Impact Engine's patented technology from a market adoption

26  viewpoint." Ex. D, 25. But the "evidence" he cites, at best, reflects skepticism

27  regarding the use of rich media generally in advertising. *Id.*, 25-27. It does not reflect

28  skepticism that the claimed invention would work as intended. *Id.*

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

## VI. DR. WICKER'S OPINIONS ON IE'S UNDISCLOSED PRIORITY DATES SHOULD BE PRECLUDED.

Through Dr. Wicker, IE appears to have changed its theory on conception and reduction to practice. Previously, although the dates evolved over its supplemental responses, IE claimed an earlier priority date for every single asserted claim. Ex. H, 6, 7-14, 15, 18, Appx A-H. Now, Dr. Wicker asserts an earlier priority date for only two claims. Yet, the dates he asserts for these two claims are again different than what IE previously disclosed. In his Rebuttal Report, Dr. Wicker opines that the priority dates of claim 9 of the '497 patent and claim 1 of the '6,253 patent are no later than September 14, 2004.  Ex. C, ¶¶ 39-40, 43, 64. As part of this opinion, Dr. Wicker opines that IE had conceived of claim 9 of the '497 patent by no later than September 14, 2004 and worked diligently to constructively reduce to practice by April 13, 2005, when it filed a provisional patent application describing the claimed inventions. *Id.* ¶ 39. Yet in its last supplemental response to Google's interrogatory regarding IE's asserted priority dates, IE asserted a conception date of October 1, 2002 for this claim and April 13, 2005 (the date of the provisional) for reduction to practice. Ex. H, Appx. A. Dr. Wicker also opines that IE had reduced to practice, or at least conceived of claim 1 of the '6,253 patent by no later than September 14, 2004 and worked diligently to constructively reduce to practice by April 13, 2005. *See id.* ¶ 40.  But IE's last interrogatory response asserted an April 14, 2003 date for conception and a December 19, 2003 date for reduction to practice for this claim.  Ex. H., Appx. B.

Dr. Wicker relies on two documents for his opinion on conception. One document, IE00000047, is only cited in the appendix in IE's latest interrogatory response among several other documents for claim 9 of the '497 patent as an exemplary document for reduction to practice, *not* conception as Dr. Wicker now relies on it.  Ex. H, Appx. A. The other document, IE00000106, is not specifically cited for either claim 9 of the '497 patent or claim 1 of the '6,253 patent at all. Ex. H, Appx. A, B. Both documents were cited in earlier supplemental responses (e.g., the Third Supplemental

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

1    Response), but only as part of a larger range of documents (e.g., IE00000001-91,

2    IE00000103-135) not tied to any specific date. Dr. Wicker also has a narrative

3    explanation referencing these documents that is not close to anything IE disclosed in its

4    interrogatory responses.

5        Further, as to the "interactive interview" element of claim 1 of the '497 patent,

6    ███████████████████████████████████████████

7    ███████████████████████████████████████████

8    ███████████████████████████████████████████

9    ███████████████████████████████████████████

10    Ex. C, ¶ 55. However, during Mr. Greer's deposition, he testified he could not match

11    the ███████████████ with anything in claim 1 of the '497 patent. Ex. I, 161:23-24.

12    In fact, Mr. Greer had little or no knowledge of the specifics of the conception and

13    reduction to practice or how the documents supposedly demonstrate conception or

14    reduction to practice, repeatedly confessing to a lack of knowledge on this important

15    issue he was designated for. *Id.*, 39:18-40:21, 46:3-20, 46:10-11, 54:17-55:18, 56:3-17,

16    57:14-59:2, 60:3-64:12, 64:23-65:23, 66:23-67:17, 68:19-71:6, 72:6-73:20, 76:17-

17    79:23, 81:15-84:3, 348:25-349:4.

18        In light of the above, Dr. Wicker's priority opinions should be excluded. The

19    evidence and contentions he now opines were not properly disclosed during fact

20    discovery in IE's multiple responses to Google's Interrogatory No. 1. Fed. R. Civ. P.

21    37(e); *Ingenco Holdings, LLC v. Ace American Ins. Co.*, 2016 WL 4703758, *2 (W.D.

22    Wash. Sept. 7, 2016), *aff'd* 921 F.3d at 821-822 (precluding damages expert from

23    relying on damages theories not disclosed until the day before the discovery cut-off).

24    Additionally, "[p]roducing an unprepared witness is tantamount to a failure to appear

25    at a deposition." *Moriarty v. American General Life Ins. Co.*, 2019 WL 1559143, *7

26    (S.D. Cal. April 10, 2019) (internal quotations omitted). Mr. Greer was clearly

27    unprepared to testify on conception and reduction to practice and, in particular, on IE's

28    interrogatory response regarding conception and reduction to practice. █████████████

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

1 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

2 ▉▉▉▉▉▉▉▉ The Court should strike Dr. Wicker's opinions on conception and reduction

3 to practice because they are inconsistent with both IE's interrogatory responses and Mr.

4 Greer's testimony.

5 **VII.   IE'S EXPERTS SHOULD BE PRECLUDED FROM PROVIDING UNDISCLOSED DAMAGES RELATED OPINIONS.**

6

7 Mr. Malackowski relies on Dr. Wicker's opinion that the DoubleClick

technology was comparable to the Asserted Patents. Ex. A, ¶¶ 55-57; Ex. B, 77-130,

8 142-144. Yet, Dr. Wicker admitted that he did not include the details of his analysis of

9 the technical comparability of the DoubleClick technology to the Asserted Patents in

10 his report. Ex. E, 306:25-307:12, 309:1-12. Similarly, Dr. Wicker testified that he had

11 an opinion regarding the comparability of Google's patent license or purchase

12 agreements produced in the litigation. But he did not include those opinions or the

13 bases for those opinions in his report either. *Id.*, 309:13-312:11. Dr. Wicker should be

14 precluded from testifying at trial regarding these opinions because he did not include

15 the bases and reasons for those opinions in his report, as required by Rule 26. Fed. R.

16 Civ. P. 26(a)(2) (requiring expert report to include, among other things, "a complete

17 statement of all opinions the witness will express and the basis and reasons for them");

18 Fed. R. Civ. P. 37.  By the same token, Mr. Malackowski should also be precluded

19 from relying on, and testifying about, Dr. Wicker's undisclosed opinions. *Robertson*

20 *Transformer Co. v. Gen. Elec. Co.*, No. 12 C 8094, 2016 WL 4417019, at *5 (N.D. Ill.

21 Aug. 19, 2016) (internal citations omitted) (concluding defendants did not establish the

22 admissibility of an expert's opinion based on citations to "conversations" with another

23 expert, which made it nearly impossible for the plaintiff to test the factual

24 underpinnings of his opinions through cross-examination); *Koninklijke Philips Elecs.*

25 *N.V. v. Zoll Lifecor Corp.*, No. CV 12-1369, 2017 WL 3140798, at *4 (W.D. Pa. July

26 25, 2017) (excluding testimony regarding damages expert's undocumented

27 "discussion" with technical expert).

28

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

1  | DATED: February 14, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By   *David A. Perlson*
     David A. Perlson
     Attorneys for Defendant,
     GOOGLE LLC