REDACTED

Sharre Lotfollahi  (SB 258913)
Kirkland & Ellis LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
213-680-8400
sharre.lotfollahi@kirkland.com

Garret A. Leach (*pro hac vice*)
Nikhil Krishnan (SB 300616)
Kyle M. Kantarek (*pro hac vice*)
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
312-862-2000
garret.leach@kirkland.com
nikhil.krishnan@kirkland.com
kyle.kantarek@kirkland.com

*Attorneys for Impact Engine, Inc.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPACT ENGINE, INC., | CASE NO. 3:19-cv-01301-CAB-DEB |
| Plaintiff, | **IMPACT ENGINE'S OPPOSITION TO GOOGLE'S DAUBERT MOTION AND MOTION TO STRIKE PORTIONS OF IMPACT ENGINE'S EXPERT REPORTS** |
| v. | |
| GOOGLE LLC, | |
| Defendant. | Judge: Hon. Cathy A. Bencivengo |
| | Courtroom: 15A |

REDACTED

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   LEGAL STANDARDS ...........................................................................1

III.  ARGUMENT...........................................................................................1

    A.    There Is No Basis to Strike IE's Expert's Opinions on Shopping
        Ads ...................................................................................................1

    B.    There Is No Basis to Strike Dr. Wicker's Opinions on Google Ads .........3

    C.    Dr. Wicker's Opinions Are Consistent with the Court's
        Construction ....................................................................................5

    D.    Dr. Wicker's Opinions on Equivalent Structures and the Doctrine
        of Equivalents Should Not Be Excluded .........................................5

    E.    IE's Expert Opinions on Secondary Considerations Are Proper...............8

    F.    Dr. Wicker's Opinions on Priority Dates Should Not Be Excluded........12

    G.    IE's Experts Should Not Be Precluded from Providing Opinions on
        the Comparability of Google's Acquired and Licensed Technology ......14

IV.   CONCLUSION .....................................................................................15

REDACTED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Al-Site Corp. v. VSI Int'l, Inc.*,
   174 F.3d 1308 (Fed. Cir. 1999) .......................................................................... 10

*Alarm.com, Inc. v. SecureNet Techs. LLC*,
   2019 WL 133228 (D. Del. Jan. 8, 2019) ........................................................... 10

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   2014 WL 12917334 (N.D. Cal. Jan. 9, 2014) ....................................................... 1

*Apple, Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ......................................................................... 15

*Audionics Sys., Inc. v. AAMP of Florida, Inc.*,
   2015 WL 12712288 (C.D. Cal. Jul. 10, 2015) ...................................................... 9

*Caterpillar Inc. v. Deere & Co.*,
   224 F.3d 1374 (Fed. Cir. 2000) ........................................................................... 6

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*,
   4 F.4th 1370 (Fed. Cir. 2021) ....................................................................... 9, 10

*Cohlmia v. Ardent Health Servs., LLC*,
   254 F.R.D. 426 (N.D. Okla. 2008) ...................................................................... 7

*Colaprico v. Sun Microsystems, Inc.*,
   758 F. Supp. 1335 (N.D. Cal. 1991) .................................................................... 6

*Continental Can Co. USA, Inc. v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir. 1991) ......................................................................... 10

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
   559 F.3d 1308 (Fed. Cir. 2009) ........................................................................... 6

*CytoLogix Corp. v. Ventana Medical Systems, Inc.*,
   424 F.3d 1168 (Fed. Cir. 2005) ........................................................................... 5

*D'Agnese v. Novartis Pharms. Corp.*,
   952 F. Supp. 2d 880 (D. Ariz. 2013) ................................................................... 5

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993).................................................................................1

*Digital Reg of Texas, LLC v. Adobe Sys. Inc.*,
    2014 WL 1653131 (N.D. Cal. Apr. 24, 2014)..................................13

*Huawei Techs. Co., Ltd. v. Samsung Elecs. Co., Ltd.*,
    340 F. Supp. 3d 934 (N.D. Cal. 2018)................................................8

*Ingenco Holdings, LLC v. Ace Am. Ins. Co.*,
    2016 WL 4703758 (W.D. Wash. Sep. 7, 2016) ...............................13

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
    274 F.3d 1371 (Fed. Cir. 2001) .........................................................6

*Interwoven, Inc. v. Vertical Computer Sys.*,
    2013 WL 3786633 (N.D. Cal. Jul 18, 2013) ....................................15

*Invitrogen Corp. v. Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) .......................................................13

*Lewer v. Boiron, Inc.*,
    2017 WL 11631961 (C.D. Cal. Sep. 22, 2017) ................................15

*Mformation Techs., Inc. v. Rsch. in Motion Ltd.*,
    2012 WL 1142537 (N.D. Cal. Mar. 29, 2012) ...................................9

*Nichia Corp v. VIZIO, Inc.*,
    2019 WL 1966665 (C.D. Cal. Mar. 15, 2019) .................................12

*In re Nilssen*,
    837 F.2d 1098 (Fed. Cir. 1987) .......................................................12

*Odyssey Wireless, Inc. v. Apple, Inc.*,
    2016 WL 7644790 (S.D. Cal. Sep. 14, 2016)...................................15

*Ortophedic Equip Co., Inc. v. U.S.*,
    702 F.2d 1005 (Fed. Cir. 1983) .......................................................12

*Overhead Door Corp. v. Chamberlain Grp., Inc.*,
    194 F.3d 1261 (Fed. Cir. 1999) .........................................................6

*PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*,
    2017 WL 8186294 (N.D. Cal. Jul. 25, 2017) ....................................5

REDACTED

*Regents of Univ. of Cal. v. Affymetrix, Inc.*,
  2019 WL 1298094 (S.D. Cal. Mar. 21, 2019) ....................................................... 11

*Thermolife Int'l, LLC v. Myogenix Corp.*,
  2016 WL 3952128 (S.D. Cal. Jul 22, 2016) ........................................................ 15

*Wi-LAN v. LG Elecs., Inc.*,
  2019 WL 5790999 (S.D. Cal. Sep. 18, 2019) ........................................................ 2

**Federal Statutes**

35 U.S.C. § 102(b) .................................................................................................. 13

REDACTED

## **NOTE ON CITATIONS**

- All emphasis is added unless otherwise noted.

- Exhibits A–K are the exhibits to Google's motion.

- Exhibit 1 is Impact Engine's Supplemental Final Infringement Contentions at Ex. 1 ('497 Patent vs. Google Ads)

- Exhibit 2 is GOOG-IMPE-00152196

- Exhibit 3 is excerpts from the Expert Report of Dr. Jonathan Krein Regarding Source Code And Related Matters

- Exhibit 4 is GOOG-IMPE-00056476

- Exhibit 5 is GOOG-IMPE-00090999

- Exhibit 6 is GOOG-IMPE-00122836

- Exhibit 7 is excerpts from the deposition transcript of Zheng Xia.

- Exhibit 8 is excerpts from the deposition transcript of Curt Lawrence.

- Exhibit 9 is excerpts from the Opening Expert Report of Dr. Stephen B. Wicker Regarding Infringement and Alleged Non-Infringing Alternatives

- Exhibit 10 is GOOG-IMPE-00056039.

- Exhibit 11 is Impact Engine's Response to Interrogatory No. 16.

- Exhibit 12 is excerpts from the deposition transcript of Neil Greer.

- Exhibit 13 is excerpts from the Rebuttal Expert Report of Dr. Stephen B. Wicker Regarding Validity and Secondary Considerations of Nonobviousness

- Exhibit 14 is Schedule 10 from the Expert Report of James Malackowski

## **ACRONYMS**

**DAB:** Display Ad Builder

**RDA:** Responsive Display Ads

REDACTED

# I.   INTRODUCTION

Choosing quantity over quality, Google moves to strike or exclude IE's experts from testifying on *seven* distinct issues.  None of Google's conclusory arguments pass muster.  For example, Google attempts to dispose of Dr. Wicker's opinions on Shopping Ads and Google Ads—for allegedly violating the Court's prior instructions—but mischaracterizes the Court's comments and the procedural posture in which they were made.  Google also ignores the substantial evidence supporting their inclusion in the case and Dr. Wicker's analyses.  As another example, Google alleges that Dr. Wicker contradicts the Court's claim construction order but fails to provide any argument, opting instead for an improper incorporation by reference.  In other instances, Google criticizes Dr. Wicker's opinion as "boilerplate" while ignoring the relevant parts of his report, or alleges an opinion is deficient as a matter of law when Google has only identified issues for cross-examination.  Uniformly, Google's arguments are wrong on the facts and the law.  Google's motion should be denied in its entirety.

# II.   LEGAL STANDARDS

On a motion to strike an expert opinion for going beyond a parties' discovery responses, courts consider whether "the expert permissibly specified the application of a disclosed theory," or "impermissibly substituted a new theory altogether."  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2014 WL 12917334, at *1 (N.D. Cal. Jan. 9, 2014).  And in weighing the admissibility of proffered expert testimony, the Court considers "whether the reasoning or methodology underlying the testimony is scientifically valid," and "can be applied to the facts in issue."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).  In challenging proffered expert testimony, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are preferred over exclusion of the expert.  *Id.* at 596.

# III.   ARGUMENT

## A.   There Is No Basis to Strike IE's Expert's Opinions on Shopping Ads

Google asks the Court to strike all references to Shopping Ads in Dr. Wicker and

REDACTED

1    Mr. Malackowski's reports and preclude IE from relying on Shopping Ads as an

2    accused product at trial.  Doc. No. 319-1 ("Memo") at 4.  Google takes issue with IE's

3    infringement contentions, but provides no analysis of those contentions.  *Id*. at 4–5.

4    Instead, Google relies on the Court's statement at a hearing in July 2021 to argue that

5    the Court narrowed the case to five "tools": Display Ad Builder ("DAB"), Responsive

6    Display Ads ("RDA"), Lightbox, Ad Canvas, and YouTube Video Builder.  *Id*.  But

7    that hearing was on ***IE's motion to compel***.  While the Court limited further fact

8    discovery to the five "tools," it did not strike any portion of IE's infringement

9    contentions, and stated it would not "exclude the [] actual ads that are created."  7/2/21

10   Hearing Tr. at 24:18–22.  Thus, the full scope of IE's infringement contentions, which

11   set forth allegations against Shopping Ads, is in effect.  *See, e.g.*, Ex. 1 at 2, 12, 39, 48,

12   52, 75, 98–99, 112, 135–36, 175–77, 187–89, 211–12.  Because Dr. Wicker's report is

13   "consistent with the theories of infringement … disclosed in [IE's] infringement

14   contentions," there is no basis to strike references to Shopping Ads.  *See Wi-LAN v. LG*

15   *Elecs., Inc.*, 2019 WL 5790999, at *3 (S.D. Cal. Sep. 18, 2019).

16          Even if IE were required to show that Shopping Ads are generated by the five

17   "tools," there is ample evidence that they are.

REDACTED

1

2

3

4

5

6      Google further asserts that Dr. Wicker "fails to provide allegations as to Shopping

7    Ads for every element of every asserted claim."  Memo at 4.  But all that is required is

8    that "[S]hopping [A]ds are created by a ***tool*** that meets all the elements of a claim."

9    7/2/21 Hearing Tr. at 30; *see also id*. at 22 ("[w]hat we're talking about here is a system

10   for building ads," "[n]ot specific ads in and of themselves.").  Dr. Wicker provided

11   evidence of the Google Ads systems that satisfy every limitation, and included evidence

12   on Shopping Ads within those systems as relevant—*e.g.*, providing an interface for

13   accessing Shopping Ads templates and selecting assets for those templates (*e.g.*, Ex. A

14   ¶¶ 218, 220), a project builder interface (*id*. ¶¶ 228, 235, 242–243), and a project viewer

15   (*e.g.*, *id*. ¶¶ 258, 261).  Dr. Wicker did not admit "that he points to no examples in his

16   report of any 'Shopping Ads' created by [the accused tools]" (Memo at 4), but instead

17   stated that he does not provide a "specific example" of a created Shopping Ad.  Ex. E

18   at 27:1–23.  His report contains ample evidence of Shopping Ads, as noted above.

19   Google provides no basis for striking Mr. Malackowski's opinions independent of its

20   flawed arguments with respect to Dr. Wicker.  Accordingly, Google's motion with

21   respect to both experts should be denied.

22       **B.      There Is No Basis to Strike Dr. Wicker's Opinions on Google Ads**

23       Google contends, based on the Court's comments at the July 2021 hearing, that

24   Dr. Wicker was required to "separately address each of the Accused Tools on a claim

25   by claim basis," and thus was required to split his allegations with respect to DAB,

26   Lightbox Ads, and RDA into separate sections.  Memo at 4–5.  But the Court did not

27   dictate the manner in which Dr. Wicker must organize his report, which already totals

28   850 pages, and what Google suggests is illogical.

REDACTED

Each of DAB, Lightbox Ads, and RDA are part of the same platform—Google Ads (formerly called AdWords)—and use the same systems. ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████ ████████████ Dr. Wicker properly addressed these functionalities together, and dividing them as Google suggests makes no sense.

Google also mischaracterizes what are actually ad formats ("Gmail Ads," "Video Ads," "App Ads," "Local Ads," and "Discovery Ads") as "other unspecified tools." Memo at 5. But "[w]hat we're talking about here is a system for building ads," "[n]ot specific ads in and of themselves but the systems for doing it." 7/2/21 Hearing Tr. at 22. The systems are the same as discussed above. ████████████

███████████████████████████████████████████████████████

█████████████████████████████████ ██████████████

---

[1] Lightbox Ads were created **through** the DAB, making Google's suggestion to split these apart all the more nonsensical. *See* Ex. 9, ¶ 154.

[2] Google faults Dr. Wicker for not "break[ing] out" his analysis of the "project viewer" into DAB, RDA, and Lightbox Ads. Memo at 5. But Dr. Wicker addressed all three in separately addressing the preview systems for both generations of Google Ads. ████████████████████████████████████

REDACTED

████████████████████████████████████████████████████

█████████████████████████████████████   Google's attempt to exclude Dr. Wicker from testifying to Google Ads or any of the related ad formats is unwarranted.

### C.   Dr. Wicker's Opinions Are Consistent with the Court's Construction

Google's attempt to incorporate by reference **four sections** from its Motion for Summary Judgment into its *Daubert* Motion/Motion to Strike (*see* Memo at 6 (citing Doc. No. 317 at §§ I–IV)) violates the Court's page limit for all *Daubert* motions.  Doc. No. 311.  Doing so is improper and the Court should not consider the arguments raised in Google's Motion for Summary Judgment here.  *See, e.g.*, *D'Agnese v. Novartis Pharms. Corp.*, 952 F. Supp. 2d 880, 885 (D. Ariz. 2013) (rejecting "attempt to incorporate various documents by reference" and declining to "consider[] any of the oppositions that Plaintiffs attempted to 'incorporate by reference.'").

To the extent the Court considers Google's summary judgment arguments here, IE's response is contained in Sections A–D to its Opposition to Google's Motion for Summary Judgment.  Further, the cases Google cites are inapposite.  Unlike in *PersonalWeb*, Dr. Wicker did not make arguments that "construed [a term] more restrictively than the Court's construction" or otherwise contradict any construction. *PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, 2017 WL 8186294, at *4–5 (N.D. Cal. Jul. 25, 2017).  And unlike in *CytoLogix*, where the court left claim construction until the close of trial, Dr. Wicker will not need to "testif[y] before the jury regarding claim construction," and there is no risk of jury confusion.  *CytoLogix Corp. v. Ventana Medical Systems, Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005).

### D.   Dr. Wicker's Opinions on Equivalent Structures and the Doctrine of Equivalents Should Not Be Excluded

Google argues that Dr. Wicker's analysis of equivalent structures and the doctrine of equivalents is "merely boilerplate."  Memo at 6.  Google attempts to preclude all of Dr. Wicker's equivalents opinions, but only addresses a single function of the "project viewer" limitations and a single claim reciting "compiler."  *See id*. at 6–7.  This is

REDACTED

insufficient to demonstrate that the remainder of Dr. Wicker's equivalents opinions "could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). And, with respect to the limitations Google does raise, Google ignores large swaths of Dr. Wicker's report, where he provides thorough explanations of the bases for his opinions.

Infringement under the doctrine of equivalents occurs when "the difference between the claimed invention and the accused product [is] insubstantial." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). One way to demonstrate this is using the "function-way-result" test—if "the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation." *Id*. "An accused device satisfies a means-plus-function element literally if it performs the identical function required by the limitation, and incorporates the structure disclosed in the specification or an equivalent thereof." *Overhead Door Corp. v. Chamberlain Grp., Inc.*, 194 F.3d 1261, 1273 (Fed. Cir. 1999). An accused structure is equivalent "if it is insubstantially different from the disclosed structure." *Id*. One way to determine insubstantial difference is to apply a "reduced" version of the function-way-result test that requires the accused device to "perform[] the identical function in substantially the same way to achieve substantially same result." *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1379 (Fed. Cir. 2000). If the accused products do not include the identical function, they may still satisfy a means-plus-function limitation under the doctrine of equivalents if "the accused and the patented component hav[e] *substantially* the same function." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1382 (Fed. Cir. 2001) (emphasis in original).

Regarding the "rendering" function of the "project viewer," Google claims that Dr. Wicker "concludes that 'equivalent' steps are performed, but does not identify what they are or how they are 'equivalent.'" Memo at 6–7 (citing Ex. A, ¶ 265). But Google ignores **nine paragraphs** where Dr. Wicker describes, in detail, ████████████

REDACTED

1

2                                                                                Dr. Wicker then explains why

3   Google's structures are equivalent to the patent's structures, relying on both the patent

4   and the preceding paragraphs analyzing Google's systems (*id*, ¶¶ 266–273):

5

6

7

8

9

10

11              This is far from "boilerplate."  *Cohlmia*, Google's lone case, is a stark

12   contrast—there, the court struck an expert report that provided a series of 1-sentence

13   conclusions without explanation or basis. *Cohlmia v. Ardent Health Serv*s., *LLC*, 254

14   F.R.D. 426, 432 (N.D. Okla. 2008).  Dr. Wicker's analysis is not remotely comparable.

15              Google's criticism of Dr. Wicker's opinion that the "rendering" function is met

16   under the doctrine of equivalents is similarly flawed.  Memo at 7.  After providing his

17   opinion under literal infringement (Ex. A, ¶¶ 260–264), Dr. Wicker opines under the

18   doctrine of equivalents in the alternative—*i.e.*, explaining that the accused and patented

19   functions are substantially the same.  *Id.*, ¶ 275.  Google argues that he "does not explain

20   the basis" for his opinion.  Memo at 7.  To the contrary, he explains his opinion and

21   identifies Google documents (including in preceding paragraphs), the patent, and the

22   Court's construction as support.  Ex. A, ¶ 275.  Dr. Wicker notes that Google's

23   documents admit

24

25

26

27

28

REDACTED

1 ██████████████████████████████████████████████████████

2 ████████████████████████████████████ Dr. Wicker's basis is that both the

3 patent and the Court "recognizes 'rendering' … and 'serializing' are equivalent." *Id*.;

4 *see* Doc. No. 205 at 2 (construing "Renders/Rendered"). Dr. Wicker's opinions, "which

5 link the accused [products] to a particular claim limitation . . . are not the type of

6 boilerplate [doctrine of equivalents] assertions rejected by courts." *Huawei Techs. Co.,*

7 *Ltd. v. Samsung Elecs. Co., Ltd.*, 340 F. Supp. 3d 934, 958 (N.D. Cal. 2018).

8 Google's argument regarding the term "compiler" is similarly misplaced. Google

9 again asserts that Dr. Wicker "does not explain the basis for []his opinion." Memo at 7

10 (referring to Ex. A, ¶ 394). Google only partially quotes his opinion, however, and

11 ignores the preceding and subsequent paragraphs. In ¶ 394, Dr. Wicker opines under

12 the doctrine of equivalents in the alternative, applying the tripartite test, ***specifically***

13 identifying the shared "function," "way," and "result" of Google's systems and

14 compilers. Ex. A, ¶ 394. The basis for Dr. Wicker's opinion as to the function, way,

15 and result of Google's systems is in the preceding ***nine paragraphs*** analyzing ██████

16 ██████ in detail, citing Google witnesses and the source code analysis of Dr. Krein.

17 *Id*., ¶¶ 385–393; *see also id*., ¶¶ 395–398 (further citing internal documents). The basis

18 for his opinion as to the function, way, and result of a "compiler" is his decades of

19 experience in computer science—expertise Google has never disputed. After applying

20 the function-way-result test—which would have been sufficient alone—Dr. Wicker also

21 cited testimony from Google's own witnesses ████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 Dr. Wicker's analysis is more than sufficient. *See Huawei*, 340 F. Supp. 3d at 958.

25 **E.    IE's Expert Opinions on Secondary Considerations Are Proper**

26 Google argues that IE's experts' opinions as to secondary considerations should

27 be excluded for allegedly failing "to provide a nexus to what is actually claimed."

28 Memo at 8. Google's challenge is unsupported. IE's experts have opined regarding

REDACTED

why an nexus exists, but nevertheless, "under clear Federal Circuit precedent, [IE] may establish th[e] nexus through the presentation of separate evidence at trial" and "exclusion . . . based on failure to establish a nexus would be premature." *Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 2012 WL 1142537, at *7 (N.D. Cal. Mar. 29, 2012) (overruled on other grounds). At bottom, "any [alleged] weaknesses in [Dr. Wicker and Mr. Malackowski's] opinions concerning [secondary considerations] goes to their weight and credibility, rather than their admissibility." *Audionics Sys., Inc. v. AAMP of Florida, Inc.*, 2015 WL 12712288, at *24 (C.D. Cal. Jul. 10, 2015).

### 1.    Commercial Success

Google alleges that IE's experts fail to demonstrate a nexus between Google or IE's success and the patents. *See* Memo at 9–10. Specifically, Google contends that Dr. Wicker does not tie the commercial success "to what the Court has not already found to be known and conventional . . . [or] known [in] the prior art." Memo at 10. But Google misapprehends the law in making its argument, as a "limitation-by-limitation basis" is not required. *See Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1377 (Fed. Cir. 2021). Dr. Wicker identified and described many benefits of the patents, such as automating the process of creating and distributing communications, simplifying the user experience, and reducing time and expense associated with prior art methods. *See, e.g.*, Ex. 9, ¶¶ 48–54; Ex. 13, ¶ 1083. Dr. Wicker also showed how these benefits are tied to the patents and to the cited secondary indicia evidence. *See, e.g.*, Ex. 13, ¶¶ 1101–1106. For example, Dr. Wicker cited Google's own document stating, ████████████████████████████████████ ████—the same benefit served by the template-based approach of the invention. Further, Dr. Wicker explained that he "looked at the entire invention, which did not exist in the prior art, and saw that there was a nexus . . . [to] the use of a project viewer . . . that was clearly part of expanding the market to create added success in the sense of more people able to use the ad creation tools." Ex. E at 341:8–15. Likewise, Mr. Malackowski explained that Dr. Wicker's identified benefits contributed to the

REDACTED

commercial success of IE and Google's products and are tied to the invention.  *E.g.*, Ex. D at 12–17.  For example, a Google employee touted the benefits of ████████ ████████████████████████████████████████████████████████████ ██████

Furthermore, Google cherry-picks Dr. Wicker's testimony to argue that he "admitted that he did not address the 'project viewer' as part of his secondary considerations analysis."  Memo at 9.  Dr. Wicker actually testified that he "talk[ed] about the invention as a whole, which ***does include a project viewer***."  Ex. E at 341:19–20.  Consistent with Dr. Wicker's analysis, "[e]vidence of commercial success [] can be linked to an inventive combination of known elements to show a sufficient nexus." *Chemours*, 4 F.4th at 1378 (internal citation omitted).  Indeed, the Court has not found that the entire invention ***as a whole*** existed in the prior art.  Finally, that Dr. Wicker is not intimately familiar with IE's financials is not a basis to exclude his opinions on commercial success, as this factor can be shown by evidence other than profitability. *See, e.g.*, *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1325–26 (Fed. Cir. 1999) (finding evidence of commercial success where retail chains "wanted to switch from the prior art displays").  Finally, Google misapplies the law by arguing that "[t]he commercial success of Google's accused products . . . has no bearing on whether the asserted claims are obvious."  *Id*. at 9.  The patented invention need not "be solely responsible for the commercial success in order for this factor to be given weight appropriate to the evidence."  *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991).  At this stage, IE "is not required to rebut the possibility that the sales of the accused products are attributable to other features."  *Alarm.com, Inc. v. SecureNet Techs. LLC*, 2019 WL 133228, at *2 (D. Del. Jan. 8, 2019).

## 2. Copying

Google's argument that Dr. Wicker and Mr. Malackowski "provide[] no relevant expert testimony on copying" is incorrect.  Memo at 8–9.  In his rebuttal report, Dr. Wicker references ████████████████████████████████████████

REDACTED

████████████████████████████████████████████████████████████

██████████████████████████████████████████ Google

misstates Dr. Wicker as "admit[ing] that he did not even opine that copying occurred."

Memo at 8.  Instead, Dr. Wicker opined that ████████████████████████ are

"evidence of potential copying."  Ex. E at 301:15–16.  Mr. Malackowski also refers to

████████████████████████████████████  Thus, although Mr.

Malackowski is "not aware of **direct** evidence **confirming** that Google copied [IE]'s

inventions," he is aware of circumstantial evidence tending to show copying.  *Id*.

Google alleges that "any supposed copying of Flash Ad Engine, and any opinion

from IE's experts on it, is legally irrelevant."  Memo at 8.  But copying can be

demonstrated through "access to, and substantial similarity to, the patented product."

*Regents of Univ. of Cal. v. Affymetrix, Inc.*, 2019 WL 1298094, at *4 (S.D. Cal. Mar.

21, 2019).  Google concedes that "the documents and testimony Dr. Wicker cites

indicate [] that IE showed Google aspects of its Flash Ad Engine product."  Memo at 8.

And IE asserted that "Flash Ad Engine was configured in a manner that satisfied . . .

U.S. Patent No. 8,356,253, Claims 3 and 7; U.S. Patent No. 8,930,832, Claims 6, 7, and

18; [and] U.S. Patent No. 9,805,393, Claims 5, 20, and 21."  Ex. 11 at 27.  Thus, Dr.

Wicker and Mr. Malackowski's opinions are relevant and helpful to the trier of fact.

### 3.    Remaining Secondary Considerations

Google concedes that Dr. Wicker identified problems in the prior art that

"hindered the widespread adoption of rich media ads online."  Memo at 10.  Google

incorrectly alleges that "Dr. Wicker fails to explain how the asserted claims allegedly

overcame these obstacles."  *Id*.  Google cites only one paragraph and ignores Dr.

Wicker's description of, with reference to specific claimed limitations and the invention

as a whole, how IE's invention solved the long-felt need.  Ex. 9, ¶¶ 40–54; *see also* Ex.

C, ¶ 1094.  For example, Dr. Wicker explained that, "costs served as a barrier to entry

into the market" prior to IE's invention because "highly skilled professionals . . . were

needed to create media-rich ads," but that IE's invention made the ability "to create

REDACTED

dynamic advertisements available to advertisers of all sizes." Ex. 13, ¶¶ 1091, 1094. And, as explained above, Mr. Malackowski's discussion of Google's commercial success does not fail to establish a nexus. *See supra* § III.E.1. With respect to industry praise, Google argues that Dr. Wicker and Mr. Malackowski do not tie the praised features to the asserted claims. Memo at 11–12. "The law does not require, however, that such praise be directly linked to a particular patent or product." *Nichia Corp v. VIZIO, Inc.*, 2019 WL 1966665, at *5 (C.D. Cal. Mar. 15, 2019) (vacated on other grounds). Google further contends that Dr. Wicker and Mr. Malackowski failed to present evidence of "skepticism that the claimed invention would work as intended." Memo at 12. Google ignores, for example, Dr. Wicker's reference to an article discussing technical complications in media trafficking. *See* Ex. C, ¶ 1120. Dr. Wicker identified "technical reasons," so Google's reliance on *In re Nilssen* is misplaced. *In re Nilssen*, 837 F.2d 1098 (Fed. Cir. 1987). And unlike *Ortophedic Equip Co.*, on which Google relies, the articles Dr. Wicker cited demonstrate that "skilled persons in the art felt that there was some technological incompatibility that prevented their combination." *Ortophedic Equip Co., Inc. v. U.S.,* 702 F.2d 1005, 1013 (Fed. Cir. 1983); Ex. C, ¶ 1120 (citing article referring to incompatibility between technologies in the prior art). Likewise, Mr. Malackowski's identifies technical compatibility issues such as "[g]reater bandwidth requirements, which prevent many viewers from seeing the ad." Ex. D at 25.

### F.    Dr. Wicker's Opinions on Priority Dates Should Not Be Excluded

Google argues that Dr. Wicker's opinions on conception and reduction to practice are different from IE's interrogatory responses. Not true. ***First***, Google argues that the dates of conception and reduction to practice provided by Dr. Wicker are "undisclosed" because they are later than the dates in IE's interrogatory response. Memo at 10. But Dr. Wicker only opines that conception and reduction to practice of claim 9 of the '497 patent and claim 1 of the '6,253 patent occurred "***no later*** than" particular dates. Ex. C, ¶¶ 39–40, 78. Thus, Dr. Wicker's opinions encompass and are consistent with the

REDACTED

*earlier* dates in the Impact Engine's interrogatories.  Notably, Dr. Wicker was also not required to demonstrate the earliest possible priority date.  His report was a *rebuttal* report responding to Dr. Jansen.  Dr. Jansen relied on just one reference ("Kline") that IE could legally antedate by showing earlier invention—every other reference qualifies as prior art under 35 U.S.C. § 102(b).  Kline's priority date is only 6 months before IE's priority date.  *See* Ex. C, ¶¶ 38–39.  Accordingly, there was no reason for Dr. Wicker to analyze as far back as 2002 to rebut Kline's qualification as prior art.

> **Second**, Google argues that Dr. Wicker improperly relied on two documents as evidence of conception.  But both documents were cited in IE's interrogatory response as "relevant to conception, diligence, and reduction to practice."  Ex. H at 17.  Accordingly, Google's reliance on *Ingenco Holdings* is not persuasive.  *See Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 2016 WL 4703758, at *4 (W.D. Wash. Sep. 7, 2016) (precluding party from presenting any evidence of damages for failing to "disclose any evidence supporting their claim for [] damages until the eve of discovery").  Google also argues that Dr. Wicker improperly relied on IE00000047 as evidence of conception because it was cited as evidence for reduction to practice in IE's interrogatory response.  Memo at 13.  But nothing prohibits a party from using evidence of reduction of practice as evidence of conception.  *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1064 (Fed. Cir. 2005) (recognizing "under some conditions conception is delayed until a reduction to practice").  Google also argues that Dr. Wicker cannot rely on IE00000106, because it was not specifically cited for either claim in IE's interrogatory response, and that his "narrative explanation" of these documents is improper because it provides more detail than the interrogatory.  But "expert reports are expected to provide more information" than discovery responses, including to further "specif[y] application of a disclosed theory."  *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, 2014 WL 1653131, at *5 (N.D. Cal. Apr. 24, 2014).  And IE's interrogatory response cited only "*exemplary* documents supporting th[e] dates" therein.  Ex. H at 18.

> Google also argues Dr. Wicker's priority date opinions should be excluded with

REDACTED

1   respect to the claimed "interactive interview" in the '497 Patent because he relies in part

2   on a conversation with Mr. Greer.  Memo at 14.  But Dr. Wicker did an independent

3   analysis, relying on Mr. Greer only for context about documents that he had a hand in

4   authoring.  Ex. C, ¶ 55.  Google suggests Mr. Greer's testimony was contrary, but Mr.

5   Greer properly identified the ███████████████████████████████████████████

6   ████████████████████████████████████████ as examples of conception.  Ex. I

7   at 161:15–20.  Indeed, Google never asked Mr. Greer to define or explain ████████

8   ██████████ instead asking him to perform expert and legal analysis by tying the contents

9   of a document to a specific claim.  *See id*. at 161:21–22; Ex. 12 at 163:8–10, 163:17–

10  19.  Google's failure to ask proper questions does not make Mr. Greer an "unprepared"

11  witness as Google suggests, and the *Moriarty* case is inapplicable.  *See* Memo at 14.

### G.   IE's Experts Should Not Be Precluded from Providing Opinions on the Comparability of Google's Acquired and Licensed Technology

12  Google does not contest that Dr. Wicker's opinions on the technical

13  

14  comparability of DoubleClick are reliable, relevant, and satisfy *Daubert*, only that he

15  "did not include the details of his analysis."  Memo at 15.  Google ignores the numerous

16  paragraphs in Dr. Wicker's opening report comparing the DoubleClick technology to

17  the asserted patents.  *See* Ex. 9, ¶¶ 40–57.  Google similarly disregards that its own

18  expert, Dr. Jansen, asserted the DoubleClick technology as invalidating prior art to the

19  asserted patents, and Dr. Wicker's corresponding in-depth, limitation-by-limitation

20  analysis in his rebuttal report.  *See* Ex. 13, ¶¶ 88–245, 602–720.  Dr. Wicker confirmed

21  that he assessed the technical comparability of "the DoubleClick that was . . . acquired

22  by Google and ***also asserted as prior art***."  Ex. E at 307:10–20.  Dr. Wicker did not

23  

24  "admit[] that he did not include the details of his analysis of the technical comparability

25  of the DoubleClick technology" (Memo at 15), but rather stated that "[t]he ***conclusions***

26  [of his comparability analysis] are in [¶] 57" of his opening report and that ¶ 57 itself

27  "did not provide the details of the analysis."  Ex. E at 309:8–12.  Google also extensively

28  questioned Dr. Wicker at his deposition regarding the basis for this opinion.  *E.g.*, Ex.

E at 306:25–309:7.   Accordingly, Google has no basis to prevent Dr. Wicker from "providing greater detail and elaborating on this disclosed" comparability, particularly because it is aware of all the bases for his opinion based on his report and subsequent deposition.  *See Thermolife Int'l, LLC v. Myogenix Corp.*, 2016 WL 3952128, at *2 (S.D. Cal. Jul 22, 2016).  Nor can Google preclude Mr. Malackowski from relying on those opinions.  *Odyssey Wireless, Inc. v. Apple, Inc.*, 2016 WL 7644790, at *5 (S.D. Cal. Sep. 14, 2016) (permitting damages expert to rely on technical expert's opinion of "technological comparability").  Because Google provides no basis for striking Mr. Malackowski's opinions independent of its meritless arguments for Dr. Wicker, Mr. Malackowski should not be precluded from testifying for the same reasons.

Google also seeks to preclude Dr. Wicker and Mr. Malackowski from testifying to "the comparability of Google's [non-DoubleClick] patent license or purchase agreements." Memo at 15.  Mr. Malackowski performed his own independent analysis. *See* Ex. B at 83–88; Ex. 14.  His reliance on a conversation with Dr. Wicker regarding the technical content of the licensed patents does not render that opinion unreliable.  *See Interwoven, Inc. v. Vertical Computer Sys.*, 2013 WL 3786633, at *7 (N.D. Cal. Jul 18, 2013) (reliance on hearsay evidence is permitted "so long as an expert in the field would reasonably rely on that information.").  "Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field when . . . valuing the importance of the specific, infringing features in a complex device." *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) (overruled on other grounds).  Nor should Dr. Wicker be precluded, as Google "questioned [him] about these topics at [his] deposition" (*see* Ex. E at 309:17–311:14), will not be surprised about the contents of his testimony, "and [will have] an opportunity to cross examine him at trial." *Lewer v. Boiron, Inc.*, 2017 WL 11631961, at *7 (C.D. Cal. Sep. 22, 2017).

## IV.   CONCLUSION

For the foregoing reasons, IE respectfully requests that the Court deny Defendant's *Daubert* Motion and Motion to Strike Portions of IE's Expert Reports.

REDACTED

DATED:  March 11, 2022                 Respectfully submitted,

                                       KIRKLAND & ELLIS LLP

                                       */s/ Garret A. Leach*
                                       Garret A. Leach, P.C.

                                       Attorneys for Plaintiff
                                       IMPACT ENGINE, INC.

1

**CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that a true copy of the foregoing document has

3     been served on March 11, 2022 to all counsel of record who are deemed to have

4     consented to electronic service via the Court's CM/ECF system per Civil Local Rule

5     5.4.  Any other counsel of record will be served by electronic mail, facsimile, and/or

6     overnight delivery.

7

8     DATED:  March 11, 2022            By:  */s/* Garret A. Leach

9
                                       Attorneys for Plaintiff
10                                     IMPACT ENGINE, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28