QUINN EMANUEL URQUHART & SULLIVAN, LLP
David A. Perlson (Ca. Bar No. 209502)
davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David A. Nelson (Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
191 N. Wacker Drive Suite 2700
Chicago, IL 60606
Telephone:   (312) 705-7400
Facsimile:   (312) 705-7401

PAUL HASTINGS LLP
Christopher H. McGrath (Ca. Bar. No. 149129)
chrismcgrath@paulhastings.com
695 Town Center Drive, 17th Floor
Costa Mesa, CA 92626-1924
Telephone: (714) 668-6200
Facsimile: (714) 979-1921

Attorneys for Defendant,
GOOGLE LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPACT ENGINE, INC.,<br><br>   Plaintiff,<br><br> vs.<br><br>GOOGLE LLC,<br><br>   Defendant. | CASE NO. 19-CV-1301-CAB-DEB<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>Hon. Bencivengo,<br>Courtroom: 1510<br><br>Complaint Filed: July 15, 2019 |

# TABLE OF CONTENTS

**Page**

I. IE FAILS TO RAISE AN ISSUE OF FACT AS TO PROJECT VIEWER ........................................................................................................ 1

    A. IE Ignores the Court's Structural Finding as to the Project Viewer. ............................................................................................. 1

    B. IE Fails to Demonstrate a Genuine Issue of Material Fact as to Any of Dr. Wicker's "Categories" ........................................ 2

II. IE RAISES NO FACT ISSUES REGARDING BROADCAST. .................... 4

III. THERE IS NO ISSUE OF FACT AS TO COMPILING. ............................. 5

IV. IE FAILS TO RAISE A MATERIAL ISSUE OF FACT AS TO SLIDES, LAYERS, AND CONTENT CONTAINERS. .................................. 6

V. THERE IS NO DISPUTE OF FACT AS TO SHOPPING ADS .................... 8

VI. CLAIM 30 OF THE '898 PATENT IS INVALID FOR LACK OF ENABLEMENT AND WRITTEN DESCRIPTION. ..................................... 10

# TABLE OF AUTHORITIES

**Page**

CASES

*Apple v. MPH Tech.*,
    No. 21-1532 (Fed. Cir. Mar. 7, 2022) .............................................................. 6

*Caterpillar Inc. v. Deere & Co.*,
    224 F.3d 1374 (Fed. Cir. 2000) ....................................................................... 3

*Odetics, Inc. v. Storage Tech. Corp.*,
    185 F.3d 1259 (Fed. Cir. 1999) ....................................................................... 3

*Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*,
    15 F.4th 1121 (Fed. Cir. 2021) .................................................................... 2, 3

*University of Pittsburgh of Commonwealth System of Higher Educ. v. Varian Medical Systems, Inc.*,
    561 F. App'x 934 (Fed. Cir. 2014) .................................................................. 1

**NOTE ON ASSERTED PATENTS AND CITATIONS**

1. Google's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment of Noninfringement, Dkt. 317-1, is referred to as "Br."

2. Impact Engine's Opposition to Google's Motion for Summary Judgment, Dkt. 336, is referred to as "Opp."

3. Google's Response to Impact Engine's Motion to Exclude Certain Expert Testimony of Jacob Wobbrock, Dkt. 332, is referred to as "*Daubert* Opp."

4. References to the patents-in-suit are indicated by column and line number, or by claim number. Unless otherwise noted, all references to the specifications are to the '497 patent, which was attached as Exhibit A of Google's Motion. A reference to "3:15," therefore, means column 3, line 15 of the '497 patent.

5. The Opening Expert Report of Stephen B. Wicker Regarding Infringement and Alleged Non-Infringing Alternatives, submitted on November 5, 2021, is attached as Exhibit A of this Reply and referred to as "Wicker Rep."

6. The Rebuttal Expert Report of Stephen B. Wicker Regarding Validity and Secondary Considerations of Nonobviousness, submitted on December 17, 2021, is attached as Exhibit B of this Reply and referred to as "Wicker Reb. Rep."

7. The January 19, 2022 deposition of Dr. Wicker is attached as Exhibit C of this Reply and referred to as "Wicker 1/19/22".

8. The January 14, 2022 deposition of Dr. Krein is attached as Exhibit D of this Reply and referred to as "Krein Tr."

9. The Expert Report of Dr. Jonathan L. Krein Regarding Source Code and Related Matters is attached as Exhibit E of this Reply and referred to as "Krein Rep."

10. The Expert Report of Dr. Bernard J. Jansen Regarding the Invalidity of the Asserted Claims in U.S. Patent Nos. 7,870,497; 8,356,253; 8,930,832; 9,361,632; 10,068,253; 10,565,618; and 10,572,898 is attached as Exhibit F of this Reply and referred to as "Jansen Rep."

11. The Court's Claim Construction Order, Dkt. 148, is referred to as "CC Order."

12. The Court's Supplemental Claim Construction Order, Dkt. 205, is referred to as "Supp. CC Order."

13. The Court's Order on Motion to Dismiss Pursuant to Rule 12(c) for Patent Ineligibility, Dkt. 268, is referred to as "101 Order."

14. The transcript of the proceedings held on 5/20/21 regarding the parties' motions to strike, Dkt. 210, is referred to as "5/20/21 Tr."

15. The transcript of the claim construction proceedings held on 4/28/2021, Dkt. 199, is referred to as "Supp. CC Tr."

All emphases to the above are added unless otherwise noted.

Impact Engine repeatedly ignores the Court's orders to try to create the appearance of a genuine issue of material fact. None exists.

## I. IE FAILS TO RAISE AN ISSUE OF FACT AS TO PROJECT VIEWER.

### A. IE Ignores the Court's Structural Finding as to the Project Viewer.

As the Court stated: "Applying §112, ¶6, the Court **must** determine what structure, if any, disclosed in the specification corresponds to the claimed functions. *Williamson*, 792 F.3d at 1351." Supp. CC Order, 6. The Court did so explicitly: "The structures disclosed to perform the functions of the Project Viewer are described at Col. 4:27 through Col. 9:19, and the Project Viewer is limited to those disclosed structures and their equivalents." *Id.*; *see also* Br. 3-4 (collecting Court cites); Wicker Rep. ¶ 147 (Court construed "project viewer" as "Subject to §112, ¶6 [] Structure: **limited** to the disclosed structures, and their equivalents, described at 4:27-9:29.")

Nevertheless, IE incredibly asserts the "Court did not set forth any 'required structure' for project viewer" and that "the Court left it to the parties—and their experts—to determine which of those disclosed structures are necessary to perform each claimed function." Opp. 2-3; *see also id.* at 4-5 ("Dr. Wicker determined that structures 1, 2, 3, 5, and 8 or 9 correspond to perform the claimed functions."). As in its *Daubert* Motion, IE is actually asking the Court to **reconsider** its explicit and clear claim construction of project viewer. Opp. 3-4; *Daubert* Opp. 7-10 (addressing IE's arguments and violation of the CivLR 7.1(i) regarding motions for reconsideration). Like its other cites, IE's new cite to *University of Pittsburgh of Commonwealth System of Higher Educ. v. Varian Medical Systems, Inc.*, 561 F. App'x 934 (Fed. Cir. 2014), an appellate claim construction case, only further shows that IE is seeking reconsideration. IE's tardy attempt at reconsideration under the guise of a summary judgment opposition (or *Daubert* (Dkt. 321)) should be rejected.[1]

---

[1] IE's claim construction arguments are also baseless. For example, IE argues categories 7, 4 and 6 are not required for the recited functions, including
 (footnote continued)

**B.    IE Fails to Demonstrate a Genuine Issue of Material Fact as to Any of Dr. Wicker's "Categories"**

There is no dispute that the algorithm of IE's category 7 includes numerous design files, objects, and components in almost four columns of text. Br. 6-7 (detailing structure in columns 5:7-8:59). IE does not even attempt to rebut that Dr. Wicker failed to show the structure of these numerous and specific design files, objects, and components in the ***single paragraph*** for each of "Google Ads", Ad Canvas, and YouTube Video Builder that Dr. Wicker includes for category 7. *Id.* 6-7 (collecting cites). Indeed, IE only purports to address about six lines—7:30-34 and 8:37-39—of the nearly four columns of required structure. Opp. 9. Instead, like Dr. Wicker (Br. 7 (collecting cites)), IE again points to the purported function of category 7: "Despite the length of the passage, the purpose of the disclosed structure is straightforward: conveying information that can be used for rendering the communication project." Opp. 9. But it is the required structure that must be shown in the Accused Products, not just its corresponding purpose or function.[2] *Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1128–29 (Fed. Cir. 2021) ("Showing identical function is not enough for literal infringement of a means-plus-function claim— Traxcell must also provide evidence of identical or equivalent *structure*. Here it did not, and so summary judgment was proper.") (emph. orig.)

IE also repeats Dr. Wicker's unsupported conclusion that "there is an insubstantial difference between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Opp. 9. This

---

"rendering." Opp. 7-8. But the Court explicitly said this same structure is required for rendering/serializing: "***the rendering*** which is described starting at ***column 4*** of the patent and I think continuing ***through column 9 describes how the viewer provides the function of the serializing*** of the slides. And that is somewhat at the heart of this whole invention." Supp. CC Tr. 14:19-24.

[2] That Google does not to address all of IE's arguments within its page-limited briefing does ***not*** indicate that Google agrees with them as IE contends. Opp. 5, 8.

boilerplate on its face shows that Dr. Wicker ignored nearly all of the four columns of required category 7 structure. This is fatal whether or not Dr. Wicker applied the function-way-result or insubstantial differences tests. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999); *Traxcell*, 15 F.4th at 1128-29 (SJ granted because patentee "neglected to address a significant fraction of that structure"). And while IE cites to Dr. Wicker's supposed analysis of "ad data structures" (Opp. 10), Dr. Wicker does not cite to *any* of that "analysis" for his category 7 boilerplate equivalents opinions. Wicker Rep. ¶¶ 287, 520, 754.

As for categories 6 and 4, IE does not dispute that Dr. Wicker failed to make any equivalence argument as to either. And while IE argues Dr. Wicker showed the "simple concept" of a "communication interface," IE does not refute that Dr. Wicker failed to show where the specific "Slide Layer Interface" described in category 6 was in the Accused Products. Br. 7-8; Opp. 8. Google also showed that Dr. Wicker failed to point to the required structure in his discussion of category 4. Br. 8-9. IE does not refute this either, instead relying on paragraphs in Dr. Wicker's report discussing *other* limitations without any connection to the required structure. Opp. 8.

Moreover, as Google demonstrated, and IE fails to rebut, Dr. Wicker at most sought to apply his brief **characterization** of the structure in categories 5, 8, and 9 as opposed to the **actual** structure in the specification. Br. 9-10. This required structure is not "minutiae" as IE puts it in response. Opp. 5. And IE's own determination that certain structure is somehow not required (*id*.) should be rejected. IE's assertion that the requirement in categories 8 and 9 that the project viewer "open and render these files in a layered manner so that the content 'stacks' according to the layer on which it is located" (8:61-64) need not be treated as a "limitation" for equivalents should be rejected. IE and Dr. Wicker were required to consider the "overall structure" in the specification, as even IE's cited case shows. *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed. Cir. 2000); *Traxcell*, 15 F.4th at 1128-29.

Further, the "opinion and evidence" from Dr. Wicker that IE says Google

supposedly "overlooked" for categories 8 and 9 were not even cited by Dr. Wicker (or IE) for those categories. And as for category 5, IE points to paragraph 64 of Dr. **Krein**'s report relating to ███████████████. Opp. 6. But Dr. Wicker did not opine that ███████████ met the category 5 structure, and Dr. Krein did not offer opinions on infringement. And the paragraph IE cites for category 5 does not provide any equivalents analysis at all. Wicker Rep. ¶ 285; *quoted at* Opp. 6-7.

## II.   IE RAISES NO FACT ISSUES REGARDING BROADCAST.

IE contends Google makes "the incorrect premise that the applicants disclaimed 'serial unicasting….,'" which IE asserts the Court "rejected." Opp. 12-13. IE is just again seeking untimely reconsideration. The Court held: broadcasting is not "sending things out to a list of people *one at a time as long as it's multiple people* because *that's just serial Unicasting*, and that is *not what broadcasting is about*."[3] Br. 12-13 (quoting 10/21/20 Hearing Tr. at 53:15-23, and 54:3-7, 63:20-24). IE does not dispute that what it points to in the Asserted Products is serial unicasting. Rather, IE itself asserts Google submits the same ad to multiple recipients "over a period of time" and that "if I want to send [a Google ad] to ten people, then I'm going to send it… across the wire ten times." Opp. 11 (quoting Wicker Rep. ¶ 892; Krein Tr. 116:11–117:8). This also shows IE is incorrect that there is a factual issue as to "whether two instances of an advertisement" with "unique metadata" comprise the "transmission" of the same ad. Opp. 10-11, 14. Even if they somehow could be considered the same ad, there is no dispute that they are individually and separately (*i.e.* serially) transmitted to recipients. IE also has no response to Dr. Wicker's assertion that prior art using HTTP

---

[3] IE's new claim construction argument that the '393 applicants distinguished prior art based on "targeted" rather than "broadcasting" (Opp. 13) similarly ignores the applicants' explicit statement distinguishing unicasting. Br. 12 (quoting '393 File History, 12/20/2016 Amendment (Ex. G) at 9). Ads sent to a single recipient or an email list are still targeted to those recipients. And while IE now argues that the Court's construction "exclude[s] all HTTP communication," it concedes that "other network protocols may satisfy the construction." Opp. 12; *id*. at 12 n.3.

does not broadcast for the same reason that Google asserts the Accused Products do not broadcast. Br. 15 (citing Wicker Reb. Rep. ¶ 492).

IE's reference to Dr. Krein's deposition testimony regarding "mini transmissions" that supposedly "get effectively treated as a single transmission at a higher layer up the stack," also shows nothing. Opp. 10-11. Dr. Krein provided no opinion of infringement (Krein Tr. 22:2-8), and simply discussed the basics of how Internet communications are split into packets in a packet switched network. IE points to nothing in **Dr. Wicker's** report (much less its infringement contentions) that this basic Internet functionality is a "broadcast."

### III.   THERE IS NO ISSUE OF FACT AS TO COMPILING.

IE and its expert repeatedly argued that the "plain and ordinary meaning" of compiler and compiling engine was "integrating" or "combining." Br. 15-16. It is that meaning that the Court rejected in construing these terms as "back-end processing of source code into machine or object code." CC Order at 6-7. IE fails to rebut that Dr. Wicker is applying that very same rejected construction for infringement as clearly shown by the numerous citations to Dr. Wicker's (and even Dr. Krein's) report and testimony quoted and cited by Google. Br. 16. These citations also show Dr. Wicker was not simply addressing the claim's separate requirement of "integrating." Opp. 15-16. While IE again points to **Dr. Krein's** deposition testimony (Opp. 17), Dr. Krein provided no opinion of infringement (Krein Tr. 22:2-8) and admittedly did not even consider the Court's construction of "compiler." *Id.*, 132:25-133:15.

IE also attempts to dramatically expand the definitions of "source code" and "machine or object code" in the same manner as it interprets "compiler," with various arguments trying to create an issue of fact where there is none. Opp. 15-17. But as Google showed through Dr. Wicker's admissions, and as IE does not dispute, IE's expansive interpretations result in absurdities such as HTML web pages being both "source code" and "machine code," URL web addresses and JPEG images being "source code," and video and music files being machine or object code. Br. 17 n.8

(collecting cites). Any interpretation of the Court's construction that would allow such absurdities would make the terms "source code" and "machine or object code" boundless and meaningless and gut the Court's construction altogether. None of IE's scattershot of arguments shows otherwise.

## IV. IE FAILS TO RAISE A MATERIAL ISSUE OF FACT AS TO SLIDES, LAYERS, AND CONTENT CONTAINERS.

IE yet again seeks to reargue claim construction in asserting that a "collection of slides" can somehow be a single slide. Opp. 17-18. As Google showed, the Court already rejected these same arguments defying the specification, the English language, and common sense. Br. 18-19.

IE does not dispute that ads created by Display Ad Builder and Responsive Display Ads do not contain more than one slide. Opp. 18. While IE asserts that Dr. Wicker opined that the "storyboard" in the user interface of YouTube Video Builder shows multiple slides, IE does not and cannot show that this UI component is a part of the generated video ad as would be required to meet this limitation. Opp. 18; Br. 20. And while IE raises Lightbox/Carousel ads (Opp. 18), Google is not seeking summary judgment as to these ads for the slides element. Br. 20.

For layers, IE again seeks to reargue claim construction, asserting that the plural of layer can somehow be one layer. Opp. 19. Google's argument that "layer**s**" require more than one layer, however, is hardly "remarkable" as IE contends. *Id.* It is simply what the Court said, as Google quotes in its brief.[4] Br. 21. And the Court's comments were in no way cabined as simply "embodiments" as IE asserts. Opp. 19. Nor does IE even attempt to explain away its repeated statements to the Court that using multiple

---

[4] IE's late claim construction arguments misapply the law. "In accordance with common English usage, we presume a plural term refers to two or more items." *Apple v. MPH Tech.*, No. 21-1532 (Fed. Cir. Mar. 7, 2022) (Ex. G) at 10. While "[t]hat presumption can be overcome when the broader context shows a different meaning applies" (*id.*), IE fails to address, let alone overcome, the presumption. Opp. 19-20.

layers was a critical component of the claimed invention. Br. 17-18. IE's further attempt at reconsideration should be rejected.

Further, in contending that Dr. Wicker did show ads with multiple layers, IE altogether ignores Dr. Wicker's admission that "I have not distinguished between ads having one layer or multiple layers." Br. 21 (quoting Wicker 1/19/22, 129:25-30:4). While IE tries to parse the language of Dr. Wicker's admission (Opp. 20 n.7), IE does not and cannot point to any example of a Google ad created with multiple layers in Dr. Wicker's report. IE also points to the use of z-indexes, but as Dr. Wicker's own evidence shows, a z-index is simply a number that corresponds to a vertical position. Wicker Rep ¶ 239 (*citing* Lawrence Tr. at 254 *and* GOOG-IMPE-00150773-76). As Dr. Wicker conceded, "the z-index has to do with position and size. It is part of what constitutes the design of a layer, but ***it is not in and of itself indicative of anything beyond that***." Wicker 1/19/2022, 54:24-55:4. Z-indexes thus are not and do not show any use of the purportedly inventive "layers" of the claimed invention.[5]

Moreover, IE does not refute that Dr. Wicker testified that a "content container" must actually store content. Br. 21 (discussing Wicker 1/21/22, 197:15-17). Nor does IE refute that, as to all the Accused Tools, Dr. Wicker points to "placeholders" and/or "spaces" as the required containers. *Id.* (citing Wicker Rep. ¶¶ 209, 486, 522, 702, 723, 755, 761). IE also does not refute that these placeholders do not contain anything, and in fact concedes they simply indicate where something will go. Opp. 21. This alone shows summary judgment is appropriate. While IE argues the placeholders and spaces Dr. Wicker points to have the same "function" as the containers in the patent (Opp. 21), even though incorrect,[6] that would still not show they are in fact the

---

[5] As both of IE's experts admitted, z-indices predate the claimed invention. Wicker 1/19/2022, 16:1-11; Krein Tr. 103:7-14.

[6] For instance, 7:11-13 states "The image component is a multimedia module that is used inside the core design files to load and display images and/or .swf files."; *see also* 7:36-37. Spaces are neither "multimedia modules" nor can they "load and display" anything themselves.

1  "containers" as required. *Id*.

2  Further, IE's attempt to explain away Dr. Wicker's nose of wax opinion regarding the prior art makes no sense. Opp. 21. The metadata that Dr. Wicker distinguished in the prior art includes the "name of the content" and the place the content will go, which is also how IE characterizes the supposed "containers" of the Accused Products. Wicker Reb. Rep. ¶ 94 ("Dr. Jansen further points to a 'placeholder for the filename of a creative' [name of the content] in the 'rich media templates' [place it will go] as disclosing a 'content container.'") (brackets added).

## V.   THERE IS NO DISPUTE OF FACT AS TO SHOPPING ADS

IE argues that the Court's rulings that Shopping Ads is not an accused product are irrelevant because they were made in connection with IE's Motion to Compel as opposed to a motion to strike. Opp. 21. This is a distinction without a difference. IE does not dispute, nor could it, that the Court denied IE's Motion to Compel for technical documents regarding Shopping Ads because it was not one of the five accused tools. Br. 22-23 (*citing* Dkt. 231 at 22:4-18). That the Court did not further "strike" references to Shopping Ads in IE's infringement contentions is of no import. It found Shopping Ads was not separately accused. Again, ***the Court's Orders have meaning*** and IE must comply with them.

IE is careful not to directly assert that "Shopping Ads" are created with any of the Accused Tools and points to nothing in Dr. Wicker's report showing they are. Again, Dr. Wicker admitted that he did not show an example of any Shopping Ad being created by any of these five Accused Tools. Wicker 1/19/22, 27:1-28:11 (*discussed at* Br. 23). While IE asserts there is other "evidence" that Shopping Ads are created by the Accused Tools (Opp. 21-22), nothing IE cites actually shows that at all, much less raises any issue of fact. For example, IE states that Dr. Krein found references to "shopping" templates in the source code. Opp. 22. But as Dr. Krein conceded, this simply referred to "that concept that you have an ad that centers around the idea of shopping." Krein Tr. 178:9-17. He said nothing about the "Shopping Ads"

product for which IE seeks ▮▮▮▮▮▮▮▮▮▮ in that section. Krein Rep ¶¶ 68-72. In fact, Dr. Krein conceded that he did not know whether Shopping Ads are created with any of the five Accused Tools. Krein Tr. 179:2-11. The other documents that IE cites (Exs. 14-16) simply mention the word "shopping" with no connection to any "Shopping Ads" ad or tool. *Id.*

Nor does the fact that Shopping Ads may share some infrastructure with some Accused Tools show that Shopping Ads are created by the Accused Tools. Opp. 22. Indeed, IE's own description of these documents and testimony cites shows on its face that Shopping Ads is ***not*** the same as any of the five Accused Tools. *Id.* IE's complaint that Google did not identify what tools are used to create the unaccused Shopping Ads (Opp. 22) makes no sense, especially given the Court's denial of IE's motion to compel such documents. The same is true for IE's complaint that Google's witness Mark Schadler was not disclosed or deposed. *Id*. There was no reason to disclose a witness on unaccused products. IE also has no real response to the substance of Mark Schadler's declaration, other than to oddly state that his declaration that he has personal knowledge from being an engineer working on Google Ads and its system is somehow insufficient. In any event, it was ***IE's*** burden to show that Shopping Ads was used by the five Accused Tools, and it has failed to raise a genuine issue of fact.

Moreover, IE does not meaningfully dispute that Dr. Wicker failed to show how Shopping Ads met each and every element of each asserted claim as required. Patent L.R. 3.1.c; 5/20/21 Tr., 4:25-5:4 (IE must "[s]how how each element of each claim you're asserting is present in every device or system that you're asserting infringes" in its infringement contentions). Instead, IE asserts that Dr. Wicker included only evidence "as relevant," for some elements. Opp. 23. But IE must show how the creation of Shopping Ads meets every element of the asserted claims; it did not even try to do so, and thus summary judgment is proper.

## VI. CLAIM 30 OF THE '898 PATENT IS INVALID FOR LACK OF ENABLEMENT AND WRITTEN DESCRIPTION.

IE acknowledges the Court stated "there's nothing in the patent [that] describes a compiler *rendering in the concept of serializing*" (Opp. 24), as required by Claim 30. IE's only retort is to conclude the Court read the claim wrong. Indeed, IE does not even try to show how the "compiling engine" performs the rendering of the claim. IE also contends the Court's statements related only to the "capable of being rendered" claim language, and not the "grouping" and "integrating" attributed to the compiler in the claim. Opp. 24-25. Not so: the Court said "[t]here is zero information in this patent to explain how a compiler does *any* of those steps.... there is nothing in this patent that would teach a compiler doing *all* these steps of creating these slides, which is the step rendering them." Supp. CC Tr. 8:18-19, 8:25-9:2 (emph. added); Jansen Rep. ¶ 1905 (quoting same). IE fails to rebut this as well. Instead, IE points to places in the specification that describe the compiler, and separate places that describe the "integrating" and "grouping." Opp. 25. But IE does not and cannot point to any indication that the compiler—as opposed to the project viewer—performs the "integrating" and "grouping." And Dr. Wicker's opinion that "work[ing] with a communication project that is structured as a collection of slides comprising a grouping of design layers (etc.)" would have been obvious to a person of skill in the art (*id.* (quoting Wicker Reb. Rep. ¶ 1192)) cannot be reconciled with the Court's 101 Order, which found that same functionality "provides inventive concept." 101 Order at 12.

With no meaningful response on the merits, IE asserts that Google "waived" this enablement and written description argument. Opp. 23-24. But IE was obviously on notice of this theory from the moment *the Court* detailed it. Unlike IE's repeated violations of this Court's Rules and Orders that Google has detailed throughout this case, there is zero prejudice to IE to the extent Google needed to copy what the Court already stated explicitly in its invalidity contentions.

| | | |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | DATED: March 25, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 4 | | |
| 5 | | |
| 6 | | By  */s/ David A. Perlson* |
| 7 | | David A. Perlson<br>Attorneys for Defendant, |
| 8 | | GOOGLE LLC |