QUINN EMANUEL URQUHART & SULLIVAN, LLP
David A. Perlson (Ca. Bar No. 209502)
davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David A. Nelson (Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
191 N. Wacker Drive Suite 2700
Chicago, IL 60606
Telephone:  (312) 705-7400
Facsimile:   (312) 705-7401

PAUL HASTINGS LLP
Christopher H. McGrath (Ca. Bar. No. 149129)
chrismcgrath@paulhastings.com
695 Town Center Drive, 17th Floor
Costa Mesa, CA 92626-1924
Telephone: (714) 668-6200
Facsimile: (714) 979-1921

Attorneys for Defendant,
GOOGLE LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| IMPACT ENGINE, INC., | CASE NO. 19-CV-1301-CAB-DEB |
|---|---|
| Plaintiff, | **GOOGLE LLC'S RESPONSE TO IMPACT ENGINE'S BRIEFING FOLLOWING SUMMARY JUDGMENT HEARING** |
| vs. | |
| GOOGLE LLC, | |
| Defendant. | Hon. Bencivengo, Courtroom: 15A |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND .................................................................................................. 1

    A. The Court Points to the Distinction Between Project Builder and Project Viewer as Construed as Saving the '832 Patent and '632 Patent from Invalidity under § 101. ........................................................ 1

    B. Google Moves for Summary Judgment of Non-Infringement Based on the Court's Project Viewer Construction. ............................... 3

    C. The Court Grants IE's Request to Brief § 101 and § 112 Invalidity of the '832 and '632 Patents if Project Viewer's Render Structure Is Not Required. ........................................................ 3

III. CLAIM 1 OF THE '832 PATENT AND CLAIM 1 OF THE '632 PATENT ARE INVALID UNDER § 101 IF THEY DO NOT REQUIRE THE PROJECT VIEWER RENDERING ALGORITHM ............. 6

    A. The Court's Prior Rulings Show the '832 and '632 Patents Have No Inventive Step without the Project Viewer Rendering Structure. ............................................................................................... 6

    B. IE Raises No Material Factual Dispute Regarding Non-Infringement of the Project Viewer Transmission Structure. ................. 8

    C. Google's "Interpretation" of Project Viewer and Other Terms Does Not Resolve the § 101 Issue. ...................................................... 9

IV. IE DOES NOT REBUT THAT CLAIM 1 OF THE '832 PATENT AND CLAIM 1 OF THE '632 PATENT ARE INVALID FOR LACK OF WRITTEN DESCRIPTION. ............................................................... 10

    A. The Court's Prior Rulings Show the '832 and '632 patents Are Invalid Under § 112. ............................................................................. 10

    B. "Google's Interpretation" of Project Viewer Does Not Resolve the § 112 Issue. ..................................................................................... 11

CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alice Corp. Pty. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ............................................................................... 1, 2

*Haynes v. Home Depot U.S.A., Inc.*,
    No. 15-CV-1038-CAB-JLB, 2021 WL 4460649
    (S.D. Cal. Sept. 29, 2021) ......................................................................... 9

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007) .................................................................... 9

**Statutory Authorities**

35 U.S.C. § 101 ............................................................... 1, 2, 3, 4, 5, 6, 7, 8, 9

35 U.S.C. § 112 ................................................................................ 1, 3, 6, 10, 11

**NOTE ON ASSERTED PATENTS AND CITATIONS**

1. References to the patents-in-suit are indicated by column and line number, or by claim number. Unless otherwise noted, all references to the specifications are to the '497 patent, which was attached as Exhibit A of Google's Motion (Dkt. 317-3). A reference to "3:15," therefore, means column 3, line 15 of the '497 patent. All emphases are added.

2. The transcript of the summary judgment hearing held on 6/16/2022, Dkt. 420, is referred to as "Tr."

3. Impact Engine's Briefing Following Summary Judgment Hearing, Dkt. 418, is referred to as "Br."

4. Google's Memorandum in Support of its Motion for Summary Judgment of Noninfringement, Dkt. 317-1, is referred to as "MSJ Br."

5. Google's Reply in Support of its Motion for Summary Judgment of Noninfringement, Dkt. 348, is referred to as "MSJ Rep."

6. The Court's Claim Construction Order, Dkt. 148, is referred to as "CC Order."

7. The Court's Supplemental Claim Construction Order, Dkt. 205, is referred to as "Supp. CC Order."

8. The Court's Order on Motion to Dismiss Pursuant to Rule 12(c) for Patent Ineligibility, Dkt. 268, is referred to as "101 Order."

9. The transcript of the proceedings on Google's Motion to Dismiss Pursuant to Rule 12(c) for Patent Ineligibility, Dkt. 42, is referred to as "101 Tr."

10. The transcript of the claim construction proceedings held on 4/28/2021, Dkt. 199, is referred to as "Supp. CC Tr." All emphases are added.

## I.  INTRODUCTION

There is no path under the Court's Orders by which IE can prevail in this case as to claim 1 of the '832 patent and claim 1 of the '632 patent.

If these claims do not require the specialized rendering structure of the project viewer, as IE contends, then they "broadly encompass collecting user preference information and making an advertisement to be distributed on the Internet using known conventional computer software and hardware" and are thus invalid under *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014). § 101 Order at 9 n.6. If instead the project viewer in these claims requires that rendering structure, then they are not infringed. IE has not even attempted to show—nor can it show—that this specialized structure or its equivalent is present in the accused systems. In fact, even if IE is somehow correct that these claims pass muster under § 101 without the project viewer's rendering structure, summary judgment would still be appropriate because IE fails to raise a genuine issue of material fact of infringement as to the structure for the transmission of communications that even IE agrees is required in these claims.

Further, as IE does not rebut either, the specification does not disclose the project builder, as construed by the Court, generating a communication as required in claim 1 of the '832 patent and claim 1 of the '632 patent. Indeed, ignoring the Court's direct inquiry, IE does not even try to show the specification discloses the project builder generating an ad. This is yet another reason these claims are invalid. And here too, even if the § 112 issue could somehow be avoided, then summary judgment of non-infringement is appropriate. In all events, summary judgment in Google's favor as to claim 1 of the '832 patent and claim 1 of the '632 patent is appropriate.

## II.  BACKGROUND

### A.  The Court Points to the Distinction Between Project Builder and Project Viewer as Construed as Saving the '832 Patent and '632 Patent from Invalidity under § 101.

In opposing Google's First Motion to Dismiss under 35 U.S.C. § 101 (Dkt. 21), IE argued that the claims' incorporation of a "project builder" constituted both

1

"particular improvements in the functioning of earlier computer-based systems" under *Alice* step 1 and "inventive concepts" under *Alice* step 2. Dkt. 28, 12–13, 22–23. The Court referred to both arguments in denying Google's motion at that time without prejudice. 101 Tr. 31:2–25. At claim construction, however, IE argued that the project builder was actually "a known program construct that would be familiar to one of skill in the art." Dkt. 87-1, 44; Dkt. 108, 12-17. The Court largely agreed, construing "project builder" as "server-side software and hardware that obtains user information, selects appropriate template(s) and asset(s) and obtains user formatting and transmission information" and finding that "[s]uch program constructs to provide this function of the system would be tools familiar to one of skill." CC Order at 9.

The Court subsequently found that the project viewer, which sits between the project builder and the compiler, "renders or serializes the communication project slides and provides them with functionality." Supp. CC Order at 3. Because there were no "known 'viewer' applications to render or serialize the communication project slides and provide them with functionality as described by the patents," the Court ruled that project viewer "is a non-structural place-holder identified only by its functions and is therefore subject to a means-plus-function analysis." *Id*. at 5-6. The Court further ruled that "the functions performed by the Project Viewer include rendering [serializing] the communication [i.e., collection of slides]; displaying slides in auto-play on or auto-play off modes; sending the communication to the client computer; allowing the user to view templates and media assets" and that "[t]he structures disclosed to perform the functions of the Project Viewer are described at Col. 4:27 through Col. 9:19." *Id*. at 6.

The Court highlighted the critical nature of the rendering performed by the project viewer in its § 101 Order, contrasting claims with that rendering from those it dismissed as not passing muster under § 101:

> The Court construed the limitation of the "project viewer" to be a specific and limited component part of the system. Consequently, claims that

contain the project viewer limitation, which discloses a mechanism *for creating communications* that can be easily edited and distributed on the Internet, are distinguished from the claims at issue in Google's present motion. **Without that limitation,** these claims broadly encompass collecting user preference information and making an advertisement *to be distributed on the Internet using known conventional computer software and hardware*.

§ 101 Order at 9 n.6 (emph. added); *see also id.* 6-11 (finding claim 1 of the '497 patent and all asserted claims of the '618 patent invalid because they do not require that specialized "mechanism for creating communications"); 11-12 (finding claim 30 of the '898 patent was valid since it still "requir[es] that the system not just create a customized communication based on user preferences, but create that communication using a particular format, and the patent describes the mechanism to do so" (citing Col. 4:1-9:10)). The Court's prior rulings thus establish that only a specialized rendering algorithm described in the specification can make the claims pass muster under § 101.

**B.  Google Moves for Summary Judgment of Non-Infringement Based on the Court's Project Viewer Construction.**

In its Motion for Summary Judgment, Google demonstrated that IE did not even attempt to show that the Court's required structure for project viewer at Col. 4:27 through Col. 9:19 or its equivalent was present in any of the accused products. Thus, under the Court's project viewer construction, summary judgment of non-infringement is appropriate. MSJ Br. 2-12; MSJ Rep. 1-4. Google's motion also raised the inherent conflict between IE's infringement theory and the Court's 101 rulings. MSJ Br. at 3-4, 17-18, 24-25.

**C.  The Court Grants IE's Request to Brief § 101 and § 112 Invalidity of the '832 and '632 Patents if Project Viewer's Render Structure Is Not Required.**

The Court tentatively agreed with Google on non-infringement of the asserted claims of the '497 and '6,253 patents (Tr. 62:18-25; *see also id*. at 5:24-6:16,16:21-17:11, 28:18-29:8, 29:24-30:11), where "it specifically says in the claim that the

Project Viewer renders the communications." *Id*. at 16:9-16. The Court found that its construction "is not just a single paragraph that says you get information and make a slide." *Id*. at 30:5-6. Rather, the Court's construction requires "columns and columns of information" (*id*. at 30:1-5), which IE's expert did not even attempt to correlate to Google's products. *Id*. at 17:4-9 ("The structure goes, clearly, for rendering at least through column 7. And it's not there. Your expert just cherry picked a phrase saying rendering, okay, they render, and did not apply the description in the specification, the structure that you all set out as to how these slides are made to their system.") Accordingly, any claims requiring the specification's multi-column "rendering" algorithm would not be infringed under the Court's tentative order.

The Court also noted two specific invalidity issues with claim 1 of the '832 patent and claim 1 of the '632 patent if they do not require the Court's required rendering structure of the project viewer, as IE has interpreted them for its infringement theory. Unlike the asserted claims of the '497 and '6,253 patent that recite the project viewer rendering the communication, the Court noted these claims "don't require that the Project Viewer build the communication." Instead, the '832 and '632 claims "have the Project Builder doing it [the building]." *Id*. at 32:6-11. Specifically, claim 1 of the '832 patent recites "the *project builder generating* a communication displaying data specified on the graphical user interface in accordance with the selected communication project template." Claim 1 of the '632 patent similarly recites "the *project builder generating* an online advertisement based on an online advertisement template selected on the graphical user interface."

Thus, at the MSJ hearing, the Court noted that "if [the Project Builder is] generating the advertisement, it's just doing it in the context of what was known in the art." Tr. 34:21-35:2. As there's "nothing about that that teaches anything new," the '832 and '632 claims "fall in th[e] same category" as claim 1 of the '497 patent already invalidated under § 101. Tr. 35:3-9; *see also* 101 Order at 10-11. Indeed, as

the Court noted, the Court had already ruled claim 1 of the '497 patent invalid on that basis:

> And in that construction, which was claim 1 of the '497, the Court said "That's an abstract principle without any additional inventive concept." That's just saying we have a library of stuff and you can look at it and pick something and make a slide from it. And based on this claim [from the '832 and '632 patents], I don't see how that doesn't fall in that same category now that this is not a 101 problem for you.

Tr. 35:3-9. The Court continued:

> [T]he Project Viewer is not making the slide here. It is not the inventive step the Court identified to get you out of 101. It's the Project Builder. And the Project Builder doesn't have a description for doing it. It's just by your own argument and the claim construction that the Court came to on this was the Project Builder is just known-in-the-art-type applications that allow for user selection for user preferences, and that's an abstract idea without inventive concept. There's nothing about that that teaches anything new.

Tr. 35:10-19.

The Court further observed, "the Project Builder, as the Court construed it, does not create the communication."[1] *Id*. at 32:12-13. The Court also found that "the patent doesn't teach the Project Builder generating the ad." *Id*. at 36:10-12. Rather, "[w]hat it teaches is that the Project Builder is your conduit to the user to select templates and

---

[1] *See also* CC Order, 8 ("The specification references to the project builder [Doc. No. 1-3, Col. 3:9-12, Fig. 1 (108)] are rather sparse. Although the claims recite the project builder assembling or generating the communication based on the user's selections, ***the specification does not support the function of the project builder in that process beyond interviewing and selecting the templates and assets from the repository and generating the project viewer component to render the slides that compromise communication based on those selections***.") (emph. added, citations omitted.)

assets to make an ad that is made by the Project Viewer." *Id*. 36:12-14. Accordingly, the Court found that the '832 and '632 claims have "a 112 problem."[2] *Id*.

In light of its observations, the Court granted IE's request for briefing on the claims of the '832 and '632 patents. Tr. 35:20-25. The Court explicitly directed IE to address both the § 101 issue of "how when the description there is that the Project Builder is generating the communication, how that is not the same problem you had with the '497, claim 1, that that's just saying people can select stuff and make an ad" (*id*. at 36:3-8), as well as the § 112 issue that "the patent doesn't teach the Project Builder generating the ad." *Id*. at 36:10-16; *see also id*. at 37:5-7.

### III. CLAIM 1 OF THE '832 PATENT AND CLAIM 1 OF THE '632 PATENT ARE INVALID UNDER § 101 IF THEY DO NOT REQUIRE THE PROJECT VIEWER RENDERING ALGORITHM

#### A. The Court's Prior Rulings Show the '832 and '632 Patents Have No Inventive Step without the Project Viewer Rendering Structure.

IE fails to rebut that, based on the Court's rulings in this case, claim 1 of the '832 and '632 patents would be invalid under § 101 if the project viewer in these claims does not include the rendering structure required by the Court. As shown above, the Court has consistently found that it is the rendering functionality of the project viewer that provides the inventive concept that allows the claims reciting a project viewer to pass muster under § 101. *Supra*., § II.A. Again, the Court explicitly stated at the MSJ Hearing that because the project viewer "is not ***making the slide*** here. It is not the inventive step the Court identified to get you out of 101." Tr. 35:10-

---

[2] The Court separately granted Google's Motion of invalidity of the '898 patent, claim 30 under § 112 because "[t]he claim says that this Compiling Engine is going to integrate the assets and group them into all these layers and design elements" yet "there is no Compiling Engine described in this patent anywhere that can do those functions." MSJ Tr. 43:9-14. The Court also ruled claim 1 of the '8,253 patent invalid under § 112, as it imposes analogous requirements on the recited compiler. Tr. 7:6-13, 37:5-7, 43:15-22. The Court also noted the "tremendous problem I see with these continuation patents throughout" whereby "[t]erms are just getting switched and changed and redefined" even though "that is not taught in the patent." *Id*. at 44:16-45:2.

12 (emph. added); Tr. 36:10-37:4 (the '832 and '632 claims recite a "Project Viewer [that] is something less than the Project Viewer of the specification," thus triggering the 101 issue). Thus, if, as IE contends, the project viewer in the '832 and '632 patents does not require the rendering structure in the specification, the Court is correct that they are invalid under § 101 for the same reasons stated in the Court's prior rulings.

Contrary to IE's argument, nothing the Court has said shows otherwise. Br. 8-9. IE argues, pointing to the MSJ transcript, that "the Court already found the project viewer limitation to be an inventive concept such that claims containing that limitation are not directed to an abstract idea." Br. 8. But IE cites MSJ Tr. at 35:3–19, which as quoted above, plainly states that the project viewer "making the slide" is the inventive step, not a generic project viewer. Indeed, IE itself acknowledges this elsewhere in its brief: "During the hearing, the Court expressed concern that the Challenged Claims do not recite ***the project viewer rendering the communication, which the Court identified during the hearing as an inventive concept in the Asserted Patents***." Br. 6 (emph. added).

For the same point, IE also cites the entire Order on Google's first renewed § 101 motion (Br. 8: 16-17), but provides no pincite to what supposedly supports its argument. Nor could it. The short Order denies the renewed § 101 motion, noting that "[t]he parties did not have the benefit of the Court's construction in the briefing of this motion and Google's motion assumes a construction not adopted by the Court. The Court did not conclude that the 'project viewer' limitation was a known generic program construct. The Court's construction limits the claim scope to ***structures*** disclosed in the specification ***to create the claimed communications*** (i.e., collections of slides that consist of layers and content containers) and how they function." Dkt. 206 at 2 (emph added).

IE doubles down on its mischaracterization of the Court's statements, stating the Court found earlier in the case that "***sending the communication to the client computer***" is an "inventive" part of the project viewer. Br. 8 (emph. in Brief). IE

similarly contends the "transmission" of the advertisement by the project viewer "is one of the inventive functions identified by the Court." *Id.* 9. But what IE cites for this proposition is the Supplemental Claim Construction Order simply listing this step as one of the functions of the project viewer. *Id.* (*citing* Supp. CC. Order at 6). There is no statement whatsoever in that Order that this transmission functionality alone is sufficiently "inventive" to pass muster under § 101.

IE's argument that the transmission functionally attributed to the project viewer in the '832 and '632 claims constitute an inventive step is also directly contrary to the Court's findings. Br. 8-9. As Google noted, and as IE did not dispute, the "structure" IE used for infringement purposes for the transmission function corresponds to half of a sentence at 9:1-3 in the specification: "One of the project viewers is provided for live playback of the communication project, while the other is embedded within the communication project builder. . ."[3] MSJ Br. at 10; MSJ Opp. at 5-6; MSJ Rep. at 3. As the Court already found, this is "only doing what you originally defined the Project Viewer, and Court has, as something that was just, again, ***another known application in the art to provide a visual of what's going on***." Tr. 36:17-24 (emph. added). IE tellingly does not even attempt to show otherwise.

### B.    IE Raises No Material Factual Dispute Regarding Non-Infringement of the Project Viewer Transmission Structure.

As Google also showed, IE does not even attempt to demonstrate that any of the accused Google products contain the full structure of IE's categories 8 and 9, which purportedly spans 8:60-9:29. MSJ Br. 10; MSJ Rep. 3. Thus, even if IE is somehow correct that the '832 and '632 claims pass muster under § 101 through the project viewer's transmission functionality alone, IE fails to raise a genuine issue of material fact as to infringement of even that admittedly required aspect the project

---

[3] While IE asserts that its categories (8) and (9) cover 8:60-9:29 of the specification (MSJ Br. 5 (collecting cites)), it characterizes components outside of 9:1-3, such as 8:60-63 and 9:10-12, as "minutiae unrelated to the claimed functions" that are "not required" to show infringement. MSJ Opp. 5-6.

viewer structure. IE ignores that its § 101 argument is incompatible with its infringement argument.[4]

### C. Google's "Interpretation" of Project Viewer and Other Terms Does Not Resolve the § 101 Issue.

IE argues that if the "project viewer" limitation of the '832 and '632 claims requires the rendering structure in the Court's project viewer construction, then those claims are valid under § 101. Br. 9. This is of no help to IE either. Again, IE has not and cannot show that any accused product incorporates the rendering structure or its equivalent. *See* Section II.C. Here again, IE ignores that its § 101 argument is incompatible with its infringement argument.

IE further contends the '832 and '632 claims would be valid under "Google's interpretation of the claim terms 'communication' and 'slide'," pointing to the Court's holding that claim 30 of the '898 patent was valid under § 101. Br. 9. But IE again misrepresents what the Court actually said. The Court's Order found that

> Nevertheless, the claim includes the limitation that the communication is not just a collection of slides, but a collection comprised of a grouping of design layers, design elements and content containers. ***The description of how these layered slides with content containers are created, managed, and populated is disclosed in great detail in the specification. [Id. at Col. 4:1 - Col 9:10]*** This limitation as part of the claim provides inventive concept ***by requiring that the system not just create a customized communication based on user preferences, but create that communication using a particular format, and the patent describes the mechanism to do so***.

§ 101 Order at 12 (emph. added). IE omits the emphasized portions above, which make clear that '898 claim 30 requires "creat[ing] that communication using a

---

[4] Any attempt by to IE to address this and other issues it ignored in its Brief should be not be considered. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Haynes v. Home Depot U.S.A., Inc.*, No. 15-CV-1038-CAB-JLB, 2021 WL 4460649, at *1 (S.D. Cal. Sept. 29, 2021) ("Plaintiff waived these arguments by raising them for the first time in his reply brief.").

particular format" as "disclosed in great detail in the specification" at "Col. 4:1 - Col 9:10." *Compare* Br. 9. So here too, IE's argument is self-defeating. To the extent IE argues that '832 claim 1 also requires that same disclosed mechanism as '898 claim 30—*i.e.*, the mechanism recited at Col. 4:1 – Col 9:10—IE cannot prevail on infringement as it has not even attempted to show that any of the accused products contain the vast majority of the recited disclosure. *See* Section II.C.

### IV. IE DOES NOT REBUT THAT CLAIM 1 OF THE '832 PATENT AND CLAIM 1 OF THE '632 PATENT ARE INVALID FOR LACK OF WRITTEN DESCRIPTION.

#### A. The Court's Prior Rulings Show the '832 and '632 patents Are Invalid Under § 112.

IE's brief does not even attempt to address the actual § 112 issue for which the Court ordered briefing. IE never points to any place where the specification discloses any communication or ad being "generated" by the project builder.

Instead, IE cites cases for the unremarkable proposition that claims do not need to recite all functionality described in the specification. Br. 6-7. And IE notes that the '832 and '632 claims do not require that the project viewer "render" the communication. Br. 4-6. According to IE, this means there is no § 112 issue because nothing recited in the claims does the "rendering" ascribed to the project viewer in the specification. Br. 4-7. But this just sidesteps the issue. The problem the Court asked IE to address is the challenged claims' requirement that the *project builder* generate the communication or advertisement, when there is no support in the specification for the project builder performing this step. Tr. 32:9-11, 36:10-13. IE's complete failure to address the actual written description issue the Court actually identified shows that the '832 and '632 claims are invalid.[5]

IE also attempts to sidestep the § 112 issue by arguing the "generating" by the project builder recited in the '832 and '632 patents is "consistent" with the "assembling" done by the project builder in claim 1 of the '497 patent. Br. 5-6. This

---

[5] Nor can IE remedy its failure on reply. *See* FN 4.

argument is of no help to IE either. As IE itself acknowledged, "[d]ifferent claim terms are presumed to have different meanings." Br. 5. Here, the plain meaning of "assemble"[6] merely requires bringing components together in one place, *e.g.* the templates and assets selected by the user through the project builder. In contrast, the plain meaning of "generate"[7] requires actually creating the communication or advertisement from the assembled components. While IE is correct that under the Court's constructions, the '832 and '632 claims do not require that the project builder implement the specialized rendering algorithm, unlike claim 1 of the '497 patent, they do still require that the project builder actually generate the communication or ad. Thus, IE's reference to the '497 patent shows nothing.

### B. "Google's Interpretation" of Project Viewer Does Not Resolve the § 112 Issue.

IE again argues that there is no § 112 issue under "Google's interpretation" of the Court's project viewer construction, because the rendering structure ascribed to the project viewer would be present in the claim. Br. 7-8. But again, whether the project viewer performs rendering in the '832 and '632 claims is irrelevant to the Court's question. The claims of the '832 and '632 claims require the *project builder* generate the ads, which is why the Court asked for IE to point to any support in the specification for the *project builder* generating a communication, which IE failed to do.

IE's argument is also again self-defeating. Under what IE refers to as "Google's interpretation" of project viewer, the project viewer requires the specialized rendering algorithm in the specification. Here too, IE ignores that it cannot prevail on infringement under "Google's interpretation" for the same reasons as set forth in

---

[6] *See, e.g.,* Ex. A, Dictionary.com definition of "assemble": "to bring together or gather into one place, company, body, or whole."

[7] *See, e.g.,* Ex. B, Dictionary.com definition of "generate": "to bring into existence; cause to be; produce."

Google's Motion and as tentatively found by the Court with regard to '497 claim 9 and '6,253 claim 1, as discussed above.

## CONCLUSION

For the all the reasons stated in Google's Motion for Summary Judgment and Reply, at the June 16, 2022 MSJ Hearing, and herein, summary judgment in Google's favor is appropriate as to claim 1 of the '832 and claim 1 of '632 patent.

DATED: August 1, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ David A. Perlson*
David A. Perlson
Attorneys for Defendant,
GOOGLE LLC