UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPACT ENGINE, INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>　　　　　　　　　　Defendant. | Case No.: 19-CV-1301-CAB-DEB<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 317, 319, 321, 367, 369, 371, 421] |

　　　Before the Court is Defendant Google, LLC's motion for summary judgment against all the patent claims asserted by Plaintiff Impact Engine, Inc. [Doc. No. 317, 318.][1]  At the hearing on the motion,[2] the Court *sua sponte* raised concerns that certain of the asserted claims appeared to be subject to a 35 U.S.C. § 101 unpatentability finding based on the Court's previous ruling [Doc. No. 268] related to similar claims of this patent family.  As this issue was not briefed by the parties, the Court ordered supplemental briefing.[3]  Having

---

[1] Impact Engine's opposition is filed at Doc. No. 336.  Google's reply is filed at Doc. No. 348.
[2] Hearing Transcript, Doc. No. 420.
[3] See Doc. Nos. 418, 422, 427, 430.

1

now considered the initial submissions of the parties, the arguments at the hearing. and the supplemental submissions on the section 101 issue, the Court grants Google's motion.

## I.     Background

This case initially involved the assertion of eight patents[4] all flowing from the same specification[5] directed at a Multimedia Communications System and Method for creating, editing, sharing, and distributing high-quality, media-rich web-based communications. Impact Engine represented to the Court that its patented system revolutionized the creation and distribution of advertising on the Internet.  By allowing a client user to interact with the server-based components of the system over the Internet, the user can create, edit, and distribute customized communications to a select audience, replacing the need to employ professional graphic designers or advertising agencies and computer programmers.

Over the course of this litigation, however, Impact Engine has advocated that the components of the patented system are less than revolutionary, and rather a collection of programming constructs, i.e., software (applications) running on hardware (the server computer), operating in ways that were readily known to those of skill in the art in 2005. Having adopted Impact Engine's proposed constructions[6] for many components of the server-side system as known program constructs operating in a manner familiar to one of skill in the art, the Court subsequently granted in part Google's motion to dismiss some of the asserted claims as patent ineligible.  [Doc. No. 268.]

The dismissed claims provided for a user to make individualized selections from a library of materials, and the components of the system would generate, format, and distribute a communication (i.e., advertisement) based on those user preferences with no restrictions on how that was accomplished or any description of the mechanism to do so.

---

[4] The following patents were initially asserted in this litigation: U.S. Patent Nos. 7,870,497; 8,356,253; 8,930,832; 9,361,632; 9,805,393; 10,068,253; 10,565,618; and 10,572,898. [Doc. Nos. 1-3 to 1-8, 53-14 and 53-15, respectively.]
[5] As the patents all share a common specification, all references to drawings, columns and lines of the patent specification are based on the '497 patent [Doc. No. 1-3.] unless otherwise indicated.
[6] Court's Claim Construction Orders are at Doc. Nos. 148 and 205.

The limitations of the dismissed claims, by Impact Engine's own constructions, were simply components operating in their known conventional manner to create and distribute customized communications with no identifiable improvement over their function, interactions, or mechanisms.

The Court found one component of the system to be a significant exception to "known programming construct" definition that Impact Engine advanced for the component parts of its system: the limitation of the project viewer. Although Impact Engine strenuously asserted that the project viewer claim limitation was also simply a known programming construct that provided for viewing of the created communication or advertisement by the user, the language of the claims and the description in the specification dictated a different construction. The Court's analysis is set forth in its Supplemental Claim Construction Order [Doc. No. 205] and will not be repeated here. In summary, the Court concluded that the claimed functions of the component identified as the project viewer dramatically exceeded Impact Engine's assertion that it was limited to a known function of displaying a file to the user. The Court therefore found that the project viewer limitation was subject to construction under 35 U.S.C. §112, ¶6.

The Court determined that structures disclosed in the patent to perform the functions of the project viewer which included rendering or serializing the communication project slides and providing them with functionality were set forth at Col. 4:27 through Col. 9:19 of the '497 patent specification. Consequently, to establish infringement for those claims in which the project viewer renders the communication, Impact Engine must demonstrate that the accused systems function in accordance with the project viewer structure for rendering communications disclosed in the patent or its equivalent. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015).

## II.     Legal Standard

The familiar standard for summary judgment applies. Summary judgment is authorized if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

A patent infringement analysis involves two steps: (1) claim construction and; (2) application of the properly construed claim to the accused product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). If a reasonable jury cannot find that every limitation or its equivalent of a properly construed claim is found in the accused product, the court may enter summary judgment of noninfringement. *Medgraph Inc. v. Medtronic, Inc*., 843 F.3d 942, 949 (Fed. Cir. 2016).

### III.  Discussion

Google moves for summary judgment on the remaining asserted claims in this litigation. Google contends that (1) Impact Engine's infringement analysis does not apply the Court's claim construction of the project viewer limitation to the accused systems and therefore a reasonable jury cannot find infringement, and (2) certain asserted claims are either unpatentable subject matter or are invalid for lack of enablement and written description and therefore cannot be infringed. The Court agrees.

### A. Impact Engine's Infringement Analysis does not apply the Court's Claim Construction for the Project Viewer Limitation.

For those claims that include the limitation that the project viewer render the communications, Impact Engine's infringement analysis does not apply the Court's claim construction. Impact Engine's infringement analysis is premised on the contention that the Court's §112, ¶6 construction did not "set forth any required structure" and left it to the parties to determine the structures necessary to perform the claimed functions. [Doc. No. 340, at 8-9.] The Court however identified a significant portion of the specification that describes how the project viewer renders a communication based on the user's selections, starting at Col. 4:27 through Col. 9:19 of the '497 patent. [Doc. No. 1-3.] Within these columns, the specification discloses in detail how the project viewer loads the content and design elements selected by the user into containers at various layers to render a communication. [Col. 5:7-Col.8:59.]

Impact Engine's expert did not apply any of this detailed description of how the project viewer uses the information it is provided to render a communication. Rather he

concluded that the structure disclosed for the project viewer to render a communication is simply receipt by the project viewer of the "project object," the information necessary for the project viewer to render the communication as configured by the end user. [Col. 4:27-38.] The receipt of the information to render a communication as configured by the end user is not the structure for the actual rendering of the communication as required by the claims and the Court's construction. Having based its infringement analysis on a construction that does not comport with the Court's claim construction, Impact Engine cannot sustain its burden to prove infringement of claim 9 of the '497 patent (requiring a communication system in which the project viewer renders an assembled communication) or claim 1 of the '6253 patent (requiring a project viewer that renders a communication that is a collection of slides comprising a grouping of design layers, design elements and content containers).

Google's motion for summary judgment of non-infringement of these patents is therefore granted.

## B. Claims that Identify the Project Builder Limitation as the Generator of the Communications Claim Unpatentable Subject Matter

Impact Engine asserts claim 12 of the '8253 patent.[7] The asserted claims of the '832 patent all depend from its independent claim 1 and the asserted claims of the '632 patent all depend from its independent claim 1. In these independent claims, the communication, or advertisement, is generated by the project builder component of the system. Although the project viewer component is a limitation of these claims, its function is narrowly drawn to sending the generated communication or advertisement to the user's computer. This limited function of the project viewer is the specific function Impact Engine advanced in claim construction when it advocated that the Court construe the project viewer component

---

[7] Impact Engine also asserts claim 1 of the '8253 patent. Court finds this claim substantively indistinguishable from claim 14 of the '618 patent previously found to claim unpatentable subject matter and therefore invalidates claim 1 of the '8253 patent on the same grounds.

as a known programming construct operating in a manner familiar to one of skill in the art. [Doc. No. 205.]

Consequently, in the scope of these asserted claims, the function of the project viewer is to operate in its known and familiar capacity—to display a file in the same way as the application that created the file, and not to render the communication. In these claims the communication is generated by the project builder component. In accordance with the specification, the project builder selects appropriate templates and assets from the media library based on user preferences to create a customized communication applying known program constructs to do so. The Court has previously determined that claims directed at a system of known software applications to provide for the selection of user preferences to create a communication based on these selections and to format and distribute the communication according to the user's directions, claim an abstract idea without inventive concept. [Doc. No. 268.]

The Court applies the same analysis here and finds that claim 12 of the '8253 patent, claim 1 of the '832 patent and claim 1 of the '632 patent are directed at an abstract idea of generating customized communications based on user preferences using unspecified, generic computer applications in their known capabilities to automate functions previously performed by professional graphic designers or advertising agencies and computer programmers. The actual mechanisms of how the communications are generated, complied, formatted, and distributed is not disclosed other than by reference to known methods.

The Court therefore grants Google's motion for summary judgment based on its finding that the asserted claims of the '8253 patent, '832 patent and '632 patent are not patent eligible under 35 U.S.C. §101.

### C. The Patent Specification Does Not Disclose How the Compiler Component of the System Generates a Communication as Required by the '898 Patent

Impact Engine asserts claim 30 of the '898 patent, which requires in part a compiling engine for integrating the selected media asset with the selected advertisement template and grouping the design layers, design elements and content containers into the collection of slides so as to generate the communication capable of being rendered in manner so as to be content specific to the user data. [Doc. No. 53-15, Col. 20:11-17.] The specification's limited references to the compiler component of the system are (i) a box in Figure 1 labeled compiler (116) with no corresponding reference in the text of the specification as to the purpose and function of the compiler, and (ii) Fig. 3, a flow chart depicting a method for template customization and media asset usage which teaches that the customized project is received from the user and compiled into a format suitable for transmission. [Fig. 3 (306), Col. 12:9-11.]

A compiler in the computer arts at the time the patent was filed was a program that translates source code into machine or object code. [Court's Claim construction, Doc. No. 148 at 67.] The '898 patent does not disclose any information or mechanism that would inform a person of skill in the art how a compiler as construed in this patent would group the claimed design layers, design elements and content containers into a collection of slides to generate a communication. The patent discloses at length how the project viewer limitation of the system performs these tasks but it does not teach how a compiling program at the time of the filing of the original patent would do so. This claim does not comply with 35 U.S.C. § 112, as the patent does not contain the enablement and written-description requirements of patentability to support this claim.[8]

---

[8] The Court notes that throughout this litigation, Impact Engine and its experts have treated various claim terms representing separate component parts of the patented system as interchangeable and advocated for interpretations that broadly substitute individual parts of the system for each other in ways not supported by the teaching of the specification. Additionally, new claim terms appear over the course of the issuance

The Court therefore grants Google's motion for summary judgment of invalidity of the only asserted claim of the '898 patent.

### IV. Conclusion

For the reasons set forth above, it is hereby **ORDERED** as follows:

1. Google's motion for summary judgment as to all the remaining claims asserted in this litigation [Doc. No. 317-318] is **GRANTED**;

2. All other pending motions [Doc. Nos. 319, 321, 367, 369, 371, 421] are **DENIED AS MOOT**; and,

3. The Clerk of Court shall enter **JUDGMENT** in favor of the Defendant and against Plaintiff and **CLOSE** this case.

It is **SO ORDERED.**

Dated: August 31, 2022

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

of continuation patents in this family tree that have no reference whatsoever in the specification.  While the Court is mindful of not limiting claims to examples in the specification, the claims must be interpreted in light of the specification and the substituting and switching of the labels for components without anchor to the disclosure has caused much frustration for the Court in understanding the claims, the proper construction of the limitations, and the scope of the patents.